# 24-2918-cv

## United States Court of Appeals

*for the*

## Second Circuit

DIVISION 5, LLC,

*Plaintiff-Appellee,*

– v. –

FORA FINANCIAL ADVANCE LLC,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK (NEW YORK CITY)

## BRIEF AND SPECIAL APPENDIX FOR DEFENDANT-APPELLANT

CHRISTOPHER R. MURRAY
MURRAY LEGAL PLLC
*Attorneys for Defendant-Appellant*
170 Old Country Road, Suite 608
Mineola, New York 11501
(516) 260-7367

CP COUNSEL PRESS · (800) 4-APPEAL • (334824)

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Fora Financial Advance, LLC, states that its sole corporate parent is Fora Financial Holdings LLC, a privately held company, and that it has no publicly held parent corporation.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ........................................i

TABLE OF AUTHORITIES ................................................. iii

PRELIMINARY STATEMENT ............................................1

JURISDICTIONAL STATEMENT ......................................3

QUESTIONS PRESENTED...............................................4

STATEMENT OF FACTS ................................................5

    A.   THE PARTIES. ...................................................5

    B.   THE AGREEMENT...............................................5

    C.   THE MOTION FOR A PRELIMINARY INJUNCTION AND THE TRIAL COURT'S DECISION...........................6

STANDARD OF REVIEW ...............................................7

SUMMARY OF THE ARGUMENT ...................................8

ARGUMENT ..................................................................9

    I.   THE TRIAL COURT'S HOLDING THAT DIVISION 5 HAD ESTABLISHED IRREPARABLE HARM WAS A CLEAR ERROR OF LAW .................................................9

    II.   THE TRIAL COURT'S HOLDING THAT APPELLEE'S USURY CLAIM CAN FORM THE BASIS FOR DECLARATORY RELIEF WAS A CLEAR LEGAL ERROR.........................................................19

    III.   THE TRIAL COURT'S HOLIDNG THAT DIVISION 5 HAD A LIKELIHOOD OF SUCCESS ON MERITS WAS REVERSIBLE ERROR .........................................27

        a.   The Fora Agreement Is Not A Loan Under New York Law...................................................27

        b.   The Trial Court's Decision's Analysis Was Flawed ................35

CONCLUSION ...........................................................46

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*118 E. 60th Owners, Inc. v. Bonner Props., Inc.*,
  677 F.2d 200 (2d Cir. 1982) ..........................................................26

*A&A Fabrication and Polishing Corp. v. Funding Metrics, LLC*,
  2021 N.Y. Misc. LEXIS 2317 (Sup. Ct. Westchester Cty. 2021)........... 22-23

*Abir v. Malky, Inc.*,
  873 N.Y.S.2d 350 (2d Dep't 2009) .............................................36

*AF Trucking Inc. v. Oxford Capital Funding, LLC*,
  2020 N.Y. Misc. LEXIS 8811 (Sup. Ct. Orange Cty. 2020).......................30

*American Passage Media Corp. v. Cass Communications*,
  750 F.2d 1470 (9th Cir. 1985) ...................................................18

*American Water Restoration, Inc. v. AKF Inc.*,
  74 Misc. 3d 1203(A) (Sup. Ct. Ontario Cty. 2022)...............................29

*Atari Games Corp. v. Nintendo of Am., Inc.*,
  897 F.2d 1572 (Fed. Cir. 1990) ..................................................18

*Atari Interactive, Inc. v. Printify, Inc.*,
  714 F. Supp. 3d 225 (S.D.N.Y. Jan. 25, 2024)..................................11

*Auto Sunroof of Larchmont, Inc.*,
  639 F. Supp. 1492 (S.D.N.Y. 1986) .............................................13

*Brickstone Group LLC v. Arizona Native Bldrs., LLC*,
  2022 N.Y. Slip. Op. 34260(U) (Sup. Ct. N.Y. Cnty. 2022) ........................29

*Bright Kids NYC, Inc. v. Quarterspot, Inc.*,
  2021 U.S. Dist. LEXIS 178867 (S.D.N.Y. Sept. 20, 2021) ........................22

*Carrera Int'l Corp. v. Carrera Jeans Ltd.*,
  481 F. Supp. 820 (S.D.N.Y. 1979) .............................................17

*Cavalry LLC v. Funding Metrics, LLC*,
  2021 N.Y. Slip Op. 32017(U) (Sup. Ct. Orange Cty. 2021) ........................29

*CFG Merchant Solutions, LLC v. Fromley LLC*,
  2022 N.Y. Misc. LEXIS 7317 (Sup. Ct. Kings Cty. 2022)...........................29

*Champion Auto Sales, LLC v. Pearl Beta Funding, LLC*,
2017 N.Y. Misc. LEXIS 5355 (Sup. Ct. N.Y. Cty. 2017), *aff'd*,
69 N.Y.S.3d 798 (1st Dep't 2018)....................................................29

*Chartock v. National Bank of California*,
2017 N.Y. Slip Op. 30357(U) (Sup. Ct. Queens Cty. 2017)........................30

*Christine D. Collins, P.C. v. MCA Receivables, LLC*,
No. 23-cv-353 (AT) (S.D.N.Y. Jan. 14, 2023)................................17

*Cloudfund LLC v. Tamam Meat LLC*,
2022 N.Y. Misc. LEXIS 4179 (Sup. Ct. Queens Cty. 2022) ......................29

*Collins v. MCA Receivables, LLC*,
2024 U.S. Dist. LEXIS 11505 (S.D.N.Y. 2024) ................................... 22, 24

*Colonial Funding Network, Inc. v. Davincitek Corp.*,
2021 N.Y. Slip Op. 30026(U) (Sup. Ct. N.Y. Cty. 2021) ............................30

*Colonial Funding Network, Inc. v. Epazz, Inc.*,
252 F. Supp. 3d 274 (S.D.N.Y. 2017) ................................... 22, 30

*Comer v. Advanced Capital, Inc.*,
2020 N.Y. Misc. LEXIS 9101 (Sup. Ct. Queens Cty. 2020) ......................30

*Commodity Futures Trading Comm'n v. Incomco, Inc.*,
649 F.2d 128 (2d Cir.1981) ....................................................19

*Convergen Energy WI, LLC v. L'Anse Warden Elec. Co., LLC*,
2020 U.S. Dist. LEXIS 184252 (S.D.N.Y. 2020) ........................................12

*Courchevel 1850 LLC v. Stern*,
2018 U.S. Dist. LEXIS 108394 (E.D.N.Y. 2018) ........................................35

*Davis v. Richmond Capital Grp.*,
150 N.Y.S.3d 2 (1st Dep't 201)....................................................41

*DeVivo Assocs., Nationwide Mut. Ins. Co.*,
2020 U.S. Dist. LEXIS 94511 (E.D.N.Y. May 29, 2020)............................13

*E.B.F. Partners, LLC v. Middleman Mattress Corp.*,
2021 N.Y. Misc. LEXIS 12814 (Sup. Ct. Richmond Cty. 2021)..................29

*E.B.F. Partners, LLC v. OT Aspekt & Chiropractic*,
2021 N.Y. Misc. LEXIS 12815 (Sup. Ct. Queens Cty. 2021) ......................29

*E.B.F. Partners, LLC v. Yaz & Yash LLC*,
    2017 N.Y. Slip Op. 31600(U) (Sup. Ct. Westchester Cty. 2017) ................30

*Effort, 1000% of the Time LLC v. High Roller Rentals LLC*,
    2021 N.Y. Slip Op. 32678(U) (Sup. Ct. Kings Cty. 2021) ..........................29

*Faiveley Transp. Malmo AB v. Wabtec Corp.*,
    559 F.3d 110 (2d Cir. 2009) ..............................................................9

*FCI Enters. Inc. v. Richmond Capital Group, LLC*,
    2019 N.Y. Slip Op. 30711(U) (Sup. Ct. Kings Cty. 2019) ..........................42

*Fengler v. Numismatic Americana, Inc.*,
    832 F.2d 745 (2d Cir. 1987) ........................................................19

*Fireman's Ins. Co. v. Keating*,
    753 F. Supp. 1146 (S.D.N.Y. 1990) ..................................................9

*Fleetwood Servs., LLC v. RAM Capital Funding, LLC*,
    2022 N.Y. Misc. LEXIS 4478 (Sup. Ct. 2022) ..................................... 43, 44

*Fleetwood Servs., LLC v. Richmond Capital Grp., LLC*,
    2023 U.S. App. LEXIS 14241 (2d Cir. 2023) .........................................45

*Fora Fin. Advance, LLC v. Cortis Prop. Servs. LLC*,
    2019 N.Y. Misc. LEXIS 10963 (Sup. Ct. Nassau Cty. 2019) .....................28

*Fora Fin. Advance, LLC v. Doorectory Inc*,
    2024 N.Y. Misc. LEXIS 1285 (Sup. Ct. Nassau Cty. 2024).......................28

*Fora Fin. Asset Securitization 2021, LLC v. Elite TXP Servs. LLC*,
    2024 N.Y. Slip Op. 32249(U) (Sup. Ct.).............................................27

*Fora Fin. Asset Securitization 2021, LLC v. Grill on 2nd LLC*,
    2024 N.Y. Slip Op. 34101(U) (Sup. Ct. New York Cty.) ...........................35

*Fora Fin. Asset Securitization 2021, LLC v. Hialeah FL Parts Inc.*,
    2024 N.Y. Slip Op. 31503(U) (Sup. Ct.)......................................... 27-28

*Fora Fin. Asset Securitization 2021, LLC v.
Ideal Comfort Heating & Cooling Corp.*,
    2023 N.Y. Slip Op. 32185(U) (Sup. Ct. Nassau Cty. 2023) .......................28

*Fora Fin. Funding, LLC v. Aunt Mary's Soul Food Kitchen LLC*,
    2023 N.Y. Slip Op. 30260(U) (Sup. Ct. Nassau Cty. 2023) .......................28

*Fora Fin. Funding, LLC v. Nathan's Realty, LLC*,
   2024 N.Y. Misc. LEXIS 3005 (Sup. Ct. Nassau Cty. 2024)........................27

*Fora Fin. Funding, LLC v. Reel Appeal Sport Fishing L.L.C*,
   2024 N.Y. Misc. LEXIS 1616 (Sup. Ct. Nassau Cty. 2024).......................27

*GCM Prime, LLC v. MM Dynamic of NY, Inc.*,
   2024 N.Y. Misc. LEXIS 24728
   (Sup. Ct. Albany Cty. Nov. 21, 2024) .......................................................1, 25

*Global Merchant Cash, Inc. v. Mainland Ins. Agency Inc.*,
   2022 N.Y. Misc. LEXIS 1473 (Sup. Ct. Kings Cty. 2022)...........................29

*Green Capital Funding v. TSG Fitness LLC*,
   2022 N.Y. Misc. LEXIS 2370 (Sup. Ct. Nassau Cty. 2022)........................29

*Haymount Urgent Care PC v. GoFund Advance*,
   2022 WL 2297768 (S.D.N.Y. 2022) .................................................... 40, 41

*Honest Funding Llc v. Power Logistics Servs. Corp*,
   2023 N.Y. Misc. LEXIS 636 (Sup. Ct. Westchester Cty. 2023)..................29

*IBIS Capital Group, LLC v. Fletcher*,
   2018 N.Y. Slip. Op. 30829(U) (Sup. Ct. Rockland Cty. 2018) ...................30

*IBIS Capital Grp., LLC*,
   2017 N.Y. Slip Op. 30477(U)................................................................ 31, 32

*Intima-Eighteen, Inc. v. A.H. Schreiber Co.*,
   568 N.Y.S.2d 802 (1st Dep't 1991).......................................................21, 22

*Inventory Generation Inc. v. Proventure Capital Funding LLC*,
   2023 U.S. Dist. LEXIS 49862 (S.D.N.Y. Mar. 23, 2023)...................... 38, 39

*Inventory Generation Inc. v. Proventure Capital. Funding LLC*,
   No. 22-CV-10529, 2023 WL 2609344 (S.D.N.Y. Mar. 23, 2023) ... 37, 38-39

*Inventory Generation Inc. v. Silverline Services, Inc.*,
   No. 22-CV-10529 (PAE) (S.D.N.Y. Dec. 13, 2022)..............................15-16

*JTH Tax, LLC v. Agnant*,
   62 F.4th 658 (2d Cir. 2023) .............................................................. 7, 8, 15

*K9 Bytes, Inc. v. Arch Capital Funding, LLC*,
   56 Misc. 3d 807 (Sup. Ct. Westchester Cty. 2017).........................22, 31, 32

*Kamerling v. Massanari,*
  295 F.3d 206 (2d Cir 2002) ............................................................9

*Kennard Law P.C.,*
  2020 N.Y. Misc. LEXIS 10407, *aff'd*, 199 A.D.3d 1406...................... 28-29

*Kern v. Clark,*
  331 F.3d 9 (2d Cir. 2003) ..............................................................19

*Kodiak Funding, LLC v. Golden Hospitality LLC,*
  2022 N.Y. Misc. LEXIS 3782, 2022 N.Y. Slip Op. 32703(U)
  (Sup. Ct. Monroe Cty. 2022) ........................................................29

*LG Funding, LLC v. Balsamo,*
  2017 N.Y. Slip Op. 32686(U) (Sup. Ct. Nassau Cty. 2017) ........................30

*LG Funding, LLC v. Branson Getaways, Inc.,*
  2017 N.Y. Slip Op. 32387(U) (Sup. Ct. Nassau Cty. 2017) ........................30

*LG Funding, LLC v. Christenbury Eye Ctr., P.A.,*
  2017 N.Y. Slip Op. 32609(U) (Sup. Ct. Nassau Cty. 2017) ........................30

*LG Funding, LLC v. City N. Grill Corp.,*
  2018 N.Y. Slip Op. 30372(U) (Sup. Ct. Nassau Cty. 2018) ........................30

*LG Funding, LLC v. Filton LLC,*
  2018 N.Y. Slip. Op. 33289(U) (Sup. Ct. Nassau Cty. 2018) ........................30

*LG Funding, LLC v. Garber,*
  2018 N.Y. Slip. Op. 33135(U) (Sup. Ct. Nassau Cty. 2018) ........................30

*LG Funding, LLC v. Grace Plastics, Inc.,*
  2017 N.Y. Slip Op. 32750(U) (Sup. Ct. Nassau Cty. 2017) ........................30

*LG Funding, LLC v. Island Flavor LLC,*
  2017 NYLJ LEXIS 3426 (Sup. Ct. Nassau Cty. 2017) ................................30

*LG Funding, LLC v. Snowstar, Inc.,*
  2017 N.Y. Slip Op. 32741(U) (Sup. Ct. Nassau Cty. 2017) ........................30

*LG Funding, LLC v. United Senior Props. of Olathe, LLC,*
  181 A.D.3d 664 (2d Dep't 2020)........................................................ *passim*

*Lost Lake Holdings LLC v. Town of Forestburgh,*
  No. 22- CV-10656, 2023 WL 8947154 (S.D.N.Y. Dec. 28, 2023)...............14

*Lost Lake Holdings Ltd. Liab. Co. v. Town of Forestburgh*,
2023 U.S. Dist. LEXIS 230517 (S.D.N.Y. Dec. 28, 2023) ........................... 15

*Malarkey v. Texaco, Inc.*,
794 F. Supp. 1248 (S.D.N.Y. 1992) ............................................................. 10

*Mayes v. Summit Entertainment Corp.*,
287 F. Supp. 3d 200 (E.D.N.Y. 2018) .......................................................... 35

*McA Master Fund v. Universal Scrap Motors*,
2021 N.Y. Slip Op. 30097(U) (Sup. Ct. Nassau Cty. 2021) ........................ 30

*Merchant Cash & Capital, LLC v. Avtar Trucking, Inc.*,
2017 N.Y. Slip Op. 31123(U) (Sup. Ct. Nassau Cty. 2017) ........................ 30

*Merchant Cash & Capital, LLC v. Ethnicity Inc.*,
2016 N.Y. Slip Op. 32593(U) (Sup. Ct. Nassau Cty. 2016) ........................ 31

*Merchant Cash & Capital, LLC v. Fire Suppression Servs., Inc.*,
2016 N.Y. Slip Op. 32590(U) (Sup. Ct. Nassau Cty. 2016) ................. 30-31

*Merchant Cash & Capital, LLC v. Frederick & Cole, LLC*,
2016 N.Y. Slip Op. 32730(U) (Sup. Ct. Nassau Cty. 2017) ........................ 30

*Merchant Cash & Capital, LLC, v. Hobby Horse Welding, Inc.*,
2016 N.Y. Misc. LEXIS 4894 (Sup. Ct. Nassau Cty. 2016) ........................ 30

*Merchant Cash & Capital, LLC v. Liberation Land Co., LLC*,
2016 N.Y. Slip Op. 32589(U) (Sup. Ct. Nassau Cty. 2016) ........................ 31

*Merchant Cash & Capital, LLC v. Sogomonyan*,
2017 N.Y. Slip Op. 31111(U) (Sup. Ct. Nassau Cty. 2017) ........................ 30

*Merchant Cash & Capital, LLC v. South Jersey Speed LLC*,
2016 N.Y. Slip Op. 32591(U) (Sup. Ct. Nassau Cty. 2016) ........................ 31

*Merchant Cash & Capita, LLCl v. Wett Plumbing*,
55 Misc. 3d 1220(A) (Sup. Ct. Nassau Cty. 2017) ...................................... 30

*ML Factors v. Surveillance*,
2018 N.Y. Misc. LEXIS 10085 (Sup. Ct. Erie Cty. 2018) ........................... 30

*MPAK Inc. v. Merchant Funding Servs., LLC*,
2020 N.Y. Misc. LEXIS 7022 (Sup. Ct. Orange Cty. 2020) ........................ 30

*National Risk Experts, LLC et al. v. GHI Funding, et al.*,
2022 N.Y. Misc. LEXIS 4478 (Sup. Ct. 2022) ............................................. 43

*NY Capital Asset Corp. v. F & B Fuel Oil Co., Inc.*,
    58 Misc. 3d 1229(A) (Sup. Ct. Westchester Cty. 2018) ..............................30

*OriginClear Inc. v. GTR Source, LLC*,
    2021 U.S. Dist. LEXIS 239013 (W.D.N.Y. 2021)................................. 29, 41

*Ortega's Mexican Rest., LLC v. Happy Rock Merchant Solutions, LLC*,
    597 B.R. 442 (Bankr. D. Conn. 2019) ............................................................30

*OT Aspekt & Chiropractic PLLC v. Fox Capital Group, Inc.*,
    73 Misc. 3d 1208(A) (Sup. Ct. Queens Cty. 2021) ......................................30

*Pearl Delta Funding, LLC v. Ill. Collection Serv., Inc.*,
    No. 2:23-cv-01153 (FB) (ST), 2023 U.S. Dist. LEXIS 206803
    (E.D.N.Y. Nov. 17, 2023)...............................................................................37

*Pearl Delta Funding, LLC v. Illinois Collection Serv., Inc.*,
    2023 U.S. Dist. LEXIS 206803 (E.D.N.Y. 2023) .........................................41

*Pearl Delta Funding, LLC v. Superior Contr. & Restoration, Inc.*,
    2022 N.Y. Misc. LEXIS 6038 (Sup. Ct. Nassau Cty. 2022).......................34

*Pirs Capital, LLC v. D & M Truck, Tire & Trailer Repair Inc.*,
    69 Misc. 3d 457 (Sup. Ct. N.Y. Cty. 2020) ................................................30

*Platinum Rapid Funding Group, Ltd. v. H D W of Raleigh, Inc.*,
    2018 N.Y. Slip Op. 32500(U) (Sup. Ct. Nassau Cty. 2018) ........................34

*Platinum Rapid Funding Group, Ltd. v. Robinson & Robinson Inv. Group*,
    2020 N.Y. Misc. LEXIS 12940 (Sup. Ct. Nassau Cty. 2020)......................30

*Platinum Rapid Funding Group, Ltd. v. Uncle Jimmy's*,
    2018 N.Y. Slip Op. 30396(U) (Sup. Ct. Nassau Cty. 2018) ........................30

*Plymouth Venture Partners, II, L.P. v. GTR Source, LLC*,
    163 N.Y.S.3d 467 (2021)................................................................................41

*Power Up Lending Grp., Ltd. v. Cardinal Energy Grp., Inc.*,
    2019 WL 1473090 (E.D.N.Y. 2019) .............................................................30

*PrecisionWorks MFG, LLC v. Union Funding Source, Inc.*,
    No. 22-CV-8290, 2022 WL 16857360 (S.D.N.Y. Oct. 25, 2022) ... 16, 38, 39

*Principis Capital LLC v. 3148521 Canada Inc.*,
    2018 N.Y. Misc. LEXIS 1616 (Sup. Ct. N.Y. Cty. 2018).............................30

*Principis Capital LLC v. Gold*,
    2021 N.Y. Misc. LEXIS 9265 (Sup. Ct. Nassau Cty. 2021) ................... 29-30

*Principis Capital LLC v. I Do, Inc.*,
    201 A.D.3d 752 (2d Dep't 2022) ................................................................28

*Principis Capital LLC v. Team Van Eyk, Inc.*,
    2021 N.Y. Slip. Op. 30664(U) (Sup. Ct. N.Y. Cty. 2021) ...........................30

*Principis Capital LLC v. WTC Victor, LLC*,
    2019 N.Y. Slip. Op. 33678(U) (Sup. Ct. N.Y. Cty. 2019) ...........................30

*Progressive Water Treatment Inc. v. Yellowstone Capital, LLC*,
    2021 N.Y. Misc. LEXIS 5 (Sup. Ct. Erie Cty. 2021) ............................ 23, 29

*Purgess v. Parauda*,
    2021 WL 2269540 (S.D.N.Y. 2021) .............................................................9

*Quicksilver Capital LLC v. Obioha*,
    2020 N.Y. Misc. LEXIS 19832 (Sup. Ct. N.Y. Cty. 2020) ..........................30

*Quicksilver Capital v. All Around Off. Installation*,
    2021 N.Y. Slip. Op. 31929(U) (Sup. Ct. Queens Cty. 2021) .......................30

*Rapid Capital Fin., LLC, v. Natures Mkt. Corp.*,
    57 Misc. 3d 979 (Sup. Ct. Westchester Cty. 2017) ...................................1, 30

*Retail Capital, LLC v. Spice Intentions Inc.*,
    2016 N.Y. Slip Op. 32614(U) (Sup. Ct. Queens Cty. 2016) ........................31

*Rodriquez ex rel. Rodriquez v. DeBuono*,
    175 F.3d 227 (2d Cir. 1999) .........................................................................9

*Royal Bus. Group, LLC v. Cloud Acct. LLC*,
    2022 N.Y. Misc. LEXIS 3785, 2022 N.Y. Slip Op. 32704(U)
    (Sup. Ct. Monroe Cty. 2022) ......................................................................29

*Rubenstein v. Small*,
    273 A.D. 102 (1st Dep't 1947) ...................................................................33

*Samson MCA LLC v. Joseph A. Russo M.D. P.C./IV Therapeutics PLLC*,
    219 A.D.3d 1126 (4th Dep't 2023) ....................................................... 28, 34

*Samson MCA LLC v. Joseph A. Russo MD P.C.*,
    2022 N.Y. Misc. LEXIS 1127 (Sup. Ct. Ontario Cty. 2022) .......................29

*Sarwil Assoc., L.P. v. Steinbach Stores*,
    1996 WL 280829 (N.D.N.Y. 1996)................................................................10

*Scantek Med., Inc. v. Sabella*,
    582 F. Supp. 2d 472 (S.D.N.Y. 2008) ..........................................................22

*SEC v. Frank*,
    388 F.2d 486 (2d Cir. 1968) .........................................................................18

*Semmes Motors, Inc. v. Ford Motor Co.*,
    429 F.2d 1197 (2d Cir. 1970) ............................................................... 17, 18

*Singh v. LCF Group, Inc.*,
    2023 N.Y. Slip Op. 33014(U) (Sup. Ct. Nassau Cty. 2023) ............ 41, 44, 45

*Snowbridge Advisors LLC v. Soho Sq. Capital LLP*,
    2023 WL 8368630 (2d Cir. 2023) ...................................................................6

*Spartan Bus. Solutions, LLC v. AVA Mfg., LLC*,
    2023 N.Y. Misc. LEXIS 225 (Sup. Ct. Monroe Cty. 2023)...........................29

*Spartan Bus. Solutions, LLC v. Expert Packaging Inc.*,
    2022 N.Y. Misc. LEXIS 4005 (Sup. Ct. Monroe Cty. 2022).........................29

*Spin Capital, LLC v. Golden Foothill Ins. Servs., LLC*,
    2023 N.Y. Slip Op. 30594(U) (Sup. Ct. N.Y. Cty. 2023) .............................29

*Stellar Beach Rentals, LLC v. Redstone Advance, Inc.*,
    No. 23-CV-955, 2023 WL 4421809 (S.D.N.Y. July 8, 2023) ... 16, 17, 37, 39

*Streamlined Consultants, Inc. v. EBF Holdings, LLC*,
    2022 U.S. Dist. LEXIS 171085 (S.D.N.Y. 2022) .........................................22

*Strategic Funding Source v. Steenbok, Inc.*,
    2021-00877 (1st Dep't June 22, 2021)................................................. 29, 34

*Sunni, LLC v. Edible Arrangements, Inc.*,
    2014 U.S. Dist LEXIS 40258 (S.D.N.Y. March 25, 2014).................... 12-13

*Swiderek v. Cont'l Micro, Inc.*,
    680 F.2d 37 (7th Cir. 1981) .........................................................................18

*Tate v. National Bank of California*,
    2016 N.Y. Slip Op. 32396(U) (Sup. Ct. Nassau Cty. 2016) ........................31

*Tender Loving Care Homes Inc. v. Reliable Fast Cash, LLC*,
    2022 N.Y. Slip Op. 22196 (Sup. Ct. Richmond Cty. 2022)..........................29

*Thryve Capital Funding, LLC v. Dilshaan LLC*,
2022 N.Y. Misc. LEXIS 282 (Sup. Ct. Queens Cty. 2022) .........................29

*TK Servs. v. RWD Consulting, LLC*,
263 F. Supp. 3d 64 (D.D.C. 2017).......................................................... 11, 12

*Tucker Anthony Realty Corp. v. Schlesinger*,
888 F2d 969 (2d Cir 1989) .......................................................................12

*U.S. Postal Serv. v. Brennan*,
579 F.2d 188 (2d Cir. 1978) .........................................................................9

*UMG Recs., Inc. v. OpenDeal Inc.*,
2022 U.S. Dist. LEXIS 117998 (S.D.N.Y. July 5, 2022).............................11

*Unique Funding Solutions LLC v. A-Z Imports Exports LLC*,
2023 N.Y. Slip Op. 50188(U) (Sup. Ct. Nassau Cty. 2023) ........................29

*United States v. Forrest*,
2010 US Dist. LEXIS 118229 (W.D. La. Oct. 7, 2010)...............................16

*Univ. of Tex. v. Camenisch*,
451 U.S. 390 (1981)............................................................................... 14, 16

*Vernon Capital Group LLC v. Walnut Spring Farms L.L.C.*,
2022 N.Y. Misc. LEXIS 4004 (Sup. Ct. Kings Cty. 2022)..........................29

*Visual Sciences, Inc. v. Integrated Communications, Inc.*,
660 F.2d 56 (2d Cir. 1981) .........................................................................19

*Wilkinson Floor Covering, Inc. v. Cap Call, LLC*,
2018 N.Y. Slip Op. 50709(U) (Sup. Ct. N.Y. Cty. 2018) ...........................30

*Wisconsin Gas Co. v. Federal Energy Regulatory Comm.*,
758 F.2d 669 (D.C. Cir. 1985)....................................................................10

*Womack v. Capital Stack, LLC*,
2019 WL 4142740 (S.D.N.Y. 2019) ...........................................................30

*Wyldewood Cellars v. Yellowstone Capital, LLC*,
2018 N.Y. Misc. LEXIS 14093 (Sup. Ct. Bronx Cty. 2018) .......................30

*Yellowstone Capital LLC v. Cent. USA Wireless LLC*,
60 Misc. 3d 1220(A) (Sup. Ct. Erie Cty. 2018) ..........................................30

*Zervos v. Verizon New York, Inc.*,
252 F.3d 163 (2d Cir. 2001) .........................................................................7

**Statutes & Other Authorities:**

22 U.S.C. § 2201 .................................................................26

28 U.S.C. § 1292(a)(1) .........................................................4

28 U.S.C. § 1332(a)(1) .........................................................3

28 U.S.C. § 2201 ..................................................................6

42 U.S.C. § 1983 ................................................................39

Conn. Gen. Stat. Ann. § 52-278f .......................................39

UCC § 9-406 .............................................................. 1, 10, 25

## PRELIMINARY STATEMENT

Defendant-Appellant Fora Financial Advance, LLC ("Fora," or "Appellant"), respectfully submits this brief in support of its appeal, which seeks reversal and vacatur of the Decision and Order of the Hon. J. Paul Oetken, dated November 4, 2024 (the "Decision") which granted the Motion for a Preliminary Injunction filed by Plaintiff-Appellee Division 5, LLC ("Division 5," or "Appellee").

On September 11, 2024, Appellee Division 5 filed a Complaint captioned *Division 5, LLC vs. Fora Financial Advance LLC* (the "Action"), and a Motion for a temporary restraining order and for a preliminary injunction (the "Motion"). Essentially, and as is relevant here, the Motion sought to immediately void any and all UCC § 9-406 Assignment Notices (the "UCC Notices") issued by Fora to Division 5's account-debtors – despite Fora having both a statutory right via the UCC, and a contractual right based on the parties' agreement for the purchase and sale of future receivables,[1] to send such notices to account debtors.[2] Appellant Fora argued that the Motion should be denied because, *inter alia*, it did not come close to

---

[1] "Purchases and sales of future receivables and sales proceeds are common commercial transactions expressly contemplated by the Uniform Commercial Code." *Rapid Capital Fin., LLC, v. Natures Mkt. Corp.*, 57 Misc. 3d 979, 982 (Sup. Ct. Westchester Co. 2017)

[2] The UCC, as enacted by the New York legislature, provides Fora, as purchaser of accounts receivable, the statutory right to issue UCC §9-406 notices to the Appellee's account-debtors, directing that payments be made directly to Fora (with or without a declaration of default). *GCM Prime, LLC v. MM Dynamic of NY, Inc.*, 2024 N.Y. Misc. LEXIS 24728 (Sup. Ct. Albany Co. Nov. 21, 2024) (noting that "UCC Notices of lien permissibly were sent following the default under UCC 9-406").

satisfying Appellee's burden to demonstrate, by clear and convincing evidence, that it met all the requirements for the drastic remedy of injunctive relief. At the outset, Appellant argued that Appellee had failed to demonstrate irreparable harm because, in support of its application, Appellee submitted, in the Declaration of Appellee's Managing Member Conrad Barker, a mere two paragraphs of conclusory assertions as to a threat to its business. This complete lack of any detailed testimony, evidence or proof whatsoever is fatal to any request for injunctive relief. Appellant also argued that the Motion failed to satisfy the requirement that Appellee demonstrate a likelihood of success on the merits, with respect to each of its three claims: (1) for declaratory relief, namely for a declaration that the UCC Notices were void because the parties' underlying Agreement was not a true receivables purchase agreement but was in fact a usurious loan; (2) for fraud; and (3) for breach of contract.

The trial court granted Appellee's Motion. In doing so, it explicitly did not address arguments as to Appellee's fraud or breach of contract claims. (SPA-5) ("The Court rests its decision to issue a preliminary injunction on Division 5's usury claim and therefore does not address its contract and fraud claims at this time."). Accordingly, the issues relevant to this appeal are the trial court's rulings that (1) Appellee had adequately demonstrated irreparable harm; and (2) Appellee can bring an affirmative claim for declaratory relief that is based on usury allegations, and thus had raised serious questions on the merits of that claim.

Both rulings are based on clear errors of law and require reversal of the Decision. First, as courts in this Circuit have held time and again, to sufficiently demonstrate irreparable harm a party must tender at least some modicum of factual detail and evidence; because Appellee had offered none, its Motion should have been denied. Second, Appellee's claim for declaratory relief based on usury allegations is meritless as a matter of law because: a) business entities are barred from asserting usury as the basis for any affirmative claim under New York law, and may assert violations of New York's usury statutes only as an affirmative defense to a pending claim; and b) notwithstanding Appellee's misrepresentations regarding New York law, and the trial court's rejection of it, it is well settled that under New York law the parties' Agreement is not a loan. The trial court's holding, that despite the foregoing the Appellee had raised serious questions on the merits of its claim for declaratory relief, was a clear error of law and requires reversal of the Decision.

For the reasons explained herein, the trial court's Decision should be reversed.

## JURISDICTIONAL STATEMENT

Appellee alleged that the District Court had jurisdiction "over this dispute pursuant to 28 U.S.C. § 1332(a)(1) as [Appellee] is a Connecticut citizen while [Appellant] is a New York citizen, and the matter in controversy is in excess of $75,000.00." (A9, ¶ 21). On November 4, 2024, the District Court issued its Decision granting Plaintiff's Motion (SPA-1 – SPA-15). Appellant timely filed its notice of appeal on November 5, 2024 (A-542). This Court has jurisdiction pursuant

to 28 U.S.C. § 1292(a)(1), which provides that courts of appeals shall have jurisdiction of appeals from interlocutory orders of the district courts of the United States granting injunctions.

## QUESTIONS PRESENTED

**QUESTION #1**: Did the trial court err in granting Plaintiff-Appellee's Motion for a Preliminary Injunction where the Plaintiff-Appellee did not establish irreparable harm by clear and convincing evidence?

**ANSWER #1**: Yes, the trial court erred as a matter of law because Plaintiff-Appellee failed to demonstrate irreparable harm because, in support of its application, Appellee submitted a mere two paragraphs of conclusory assertions devoid of any detailed facts or evidence as to a threat to its business, wholly insufficient to satisfy the high bar for injunctive relief.

**QUESTION #2**: Did the trial court err in granting Plaintiff-Appellee's Motion for a Preliminary Injunction based on its finding that Plaintiff-Appellee had raised serious questions as to the merits of a cause of action for declaratory relief which was based on allegations of usury?

**ANSWER #2**: Yes, the trial court erred because it is black letter law in New York that business entities are barred from bringing any affirmative claim – including those for declaratory relief – based on usury allegations, as New York law only permits usury allegations as an affirmative defense to a pending claim.

**QUESTION #3**: Did the trial court err in granting Plaintiff-Appellee's Motion for a Preliminary Injunction based on its finding that Plaintiff-Appellee had

raised serious questions as to the merits of a cause of action for declaratory relief which was based on allegations of usury?

**ANSWER #3**: Yes, the trial court erred because pursuant to binding New York law, the parties' Agreement is not a usurious loan, as a matter of controlling New York law.

## STATEMENT OF FACTS

### A. THE PARTIES.

Appellant Fora Financial Advance, LLC is a New York limited liability company with its principal place of business in the State of New York. (A-9, ¶ 18). Appellee Division 5, LLC is a Connecticut limited liability company with its principal place of business located in Stafford Springs, CT. (A-8, ¶ 16).

### B. THE AGREEMENT

On June 29, 2023, the parties entered into a Purchase and Sale of Future Receivables Agreement (the "Agreement"). (A-76 – A-97). Pursuant to the Agreement, Fora purchased $502,964 of Division 5's future receivables for a Purchase Price of $354,200. (A-76). Division 5 has not disputed that Fora paid the purchase price, less fees, for a total disbursement of $343,574.00 in June 2023, pursuant to the terms of the Agreement. (A-7 – A-36). As of the present, there remains $190,222.49 outstanding, because Fora and its Assignee[3] have collected

---

[3] Fora assigned its ownership of the transaction over a year ago to Fora Financial Warehouse, LLC ("FFW"). D.E. 17-3 (Assignment). It is axiomatic that FFW stands in the shoes of its assignor,

only $312,741.51. (A-113 – A-115).  The relevant terms of the Agreement are explained below in connection with Point II, in which Appellant addresses the trial court's flawed usury analysis.

### C. THE MOTION FOR A PRELIMINARY INJUNCTION AND THE TRIAL COURT'S DECISION

On September 11, 2024, Appellee Division 5 filed the Complaint and the Motion for a temporary restraining order and for a preliminary injunction.  The Complaint contains three causes of action. The first seeks declaratory relief pursuant to 28 U.S.C. § 2201 and is fundamentally premised on the allegation that the Agreement is a usurious loan and thus Appellant's UCC Notices are void. (A-31 – A-33). The second is for breach of contract, and the third is for fraudulent inducement. (A-33 – A-35).  As is relevant here, Appellee's Motion sought an order restraining Appellant from any collection efforts, directing Appellant to withdraw any UCC Notices that had been issued to Appellee's account-debtors, and "[d]irecting that during the pendency of this action, any UCC lien letter sent by [Appellant] or that has already been sent by [Appellee] shall be null and void and of no force or effect[.]"  (A.43).

---

subject to all the same rights and liabilities. *Snowbridge Advisors LLC v Soho Sq. Capital LLP*, 2023 WL 8368630, at *10 (2d Cir. 2023) ("Under New York law, 'an assignee stands in the shoes of its assignors,' . . .").

The trial court granted Appellee's Motion. In doing so, it explicitly did not address arguments as to Appellee's fraud or breach of contract claims, and "rest[ed]its decision to issue a preliminary injunction on Division 5's usury claim." (SPA-5). For avoidance of doubt, what the trial court termed the "usury claim" is Appellee's cause of action for a declaratory judgment – which the Appellee strenuously asserted below is *not* a claim asserting usury (A-453), in an attempt to wriggle out from under the black-letter law in New York that parties may not bring affirmative claims based on usury allegations. Nonetheless, the trial court held that Appellee had raised serious questions on the merits of that claim and had otherwise established irreparable harm based on its assertion of a threat to its business. (SPA-1 – SPA-15).

## STANDARD OF REVIEW

This Court "'review[s] a district court's decision on a motion for preliminary injunction for abuse of discretion.'" *JTH Tax, LLC v. Agnant,* 62 F.4th 658, 666 (2d Cir. 2023) (*quoting Zervos v. Verizon New York, Inc.*, 252 F.3d 163, 167 (2d Cir. 2001)). "A district court abuses — or more precisely, exceeds — its discretion when its decision rests on an 'error of law' or a 'clearly erroneous factual finding,' or 'cannot be located within the range of permissible decisions.'" *Id.*[4]

---

[4] "[T]he term 'abuse' simply describes circumstances where a district court commits an error of law — a quite common and unavoidable [occurrence] in a system of adjudication - or takes a clearly erroneous assessment of the evidence or renders a decision outside the range of reasonable ones — which is an unquestionably 'serious matter,' but not one that involves 'abuse' in the

## SUMMARY OF THE ARGUMENT

The Court should reverse the Opinion and Order of the District Court granting the preliminary injunction. First, to the extent the trial court's decision held that Appellee had established irreparable harm, the Decision must be reversed because it is based on a clear error of law, wherein the trial court disregarded the law of this Circuit which holds that, in cases where a party alleges that the existence of its business is threated, the 'irreparable harm' standard is not met by conclusory assertions in an affidavit, and that actual evidence is required. Second, to the extent the trial court's decision held that Appellee had raised serious questions on the merits of its claim for declaratory relief, that holding is based on a clear error law and the Decision must be reversed because (1) it is contrary to black-letter law of the State of New York which holds that parties cannot bring affirmative claims based on usury allegations, and (2) under controlling New York law, the underlying Agreement is not a loan as a matter of law.

---

ordinary sense of the word. Thus, the word 'exceeded' [is] both a more felicitous and correct term." *JTH Tax,* at 666, fn. 1 (internal citations and quotations omitted).

## ARGUMENT

### I. THE TRIAL COURT'S HOLDING THAT DIVISION 5 HAD ESTABLISHED IRREPARABLE HARM WAS A CLEAR ERROR OF LAW.

The trial court's holding rests upon a clear error of law and, as such, should be reversed. As this Court has explained, "[i]rreparable injury is the *sine qua non* for the grant of preliminary injunctive relief." *U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 191 (2d Cir. 1978). Irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009); *Rodriquez ex rel. Rodriquez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999); *Fireman's Ins. Co. v. Keating*, 753 F. Supp. 1146, 1150 (S.D.N.Y. 1990) ("The Second Circuit has repeatedly stressed the importance of a showing of irreparable harm by the movant."). Moreover, "the moving party must show that [irreparable] injury is likely before the other requirements for an injunction will be considered." *Kamerling v Massanari*, 295 F3d 206, 214 (2d Cir 2002). "If the movant does not carry his burden to establish that he will suffer irreparable harm absent the issuance of an injunction, a court need not consider the other factors, such as likelihood of success on the merits." *Purgess v Parauda*, 2021 WL 2269540, at *8-9 (SDNY 2021).

Of particular relevance here, "[r]ecoverable monetary loss may constitute irreparable harm only where the loss threatens the very existence of the movant's

business." *Malarkey v Texaco, Inc.*, 794 F Supp 1248, 1250 (SDNY 1992) (*quoting Wisconsin Gas Co. v. Federal Energy Regulatory Comm.,* 758 F.2d 669, 674 (D.C. Cir. 1985)).  As this Court has made clear, even in cases where a party asserts a threat of bankruptcy, "the movant [must] ***provide[ ] evidence*** of damage that cannot be rectified by financial compensation." (emphasis added); *see also Sarwil Assoc., L.P. v Steinbach Stores*, 1996 WL 280829, at *8 (NDNY 1996) ("Even in such cases [where a party alleges "a threat to business viability"] the movant ***must show*** that the alleged threat of harm is 'actual and imminent' rather than remote or speculative.") (emphases added).

Fora argued to the trial court that these standards were fatal to Appellee's application for injunctive relief because Appellee's motion hinged upon the conclusory assertion, in the Declaration of Conrad Barker, Appellee's managing member, that unless Appellee received $90,000 from its account debtors, its business would be forced to close:

> Since [Defendant issued UCC 9-406 notices], Plaintiff has not received a single payment from these customers, and there is approximately $90,000 in outstanding revenue that our customers have not paid to us. Unless this money is immediately released to us, this will be the last week that Plaintiff will be in business, as we have no money to pay our employees or vendors[.].

(A-72, ¶¶ 12-13).  Fora noted that

> Noticeably absent from the ninety pages of Plaintiff's papers is anything whatsoever to substantiate these

conclusory assertions. Absent from Plaintiff's motion, for instance, are a balance sheet or a profit and loss statement showing the financial state of Plaintiff's business. Further, there is not even a description in Barker's testimony of Plaintiff's assets versus liabilities. Further, there is no explanation as to why $90,000 is essential – what are Plaintiff's payroll obligations? What are its other obligations? Why are these obligations immediately necessary to remain in business? Does Plaintiff have access to credit or capital infusion from its shareholders or other equity investors and/or investments? What prior attempts has Plaintiff made to pay these unidentified expenses? Can these expenses be delayed? In sum, Plaintiff's submissions identify no particular receivables, assets, liabilities, expenses – nothing.

(A-393).

The trial court referenced Fora's argument in passing,[5] but essentially refused to meaningfully address it, or *any* of the many cases Fora cited in support of its argument, i.e., that two paragraphs of *ipse dixit* testimony was woefully insufficient to meet the high bar for establishing irreparable harm by clear and convincing evidence. For instance, Fora noted that the burden to demonstrate irreparable harm is not satisfied by "a few conclusory paragraphs in [a] declaration"[6] and that "conclusory statements . . .will not justify an irreparable harm finding."[7] Fora noted specifically the holding in *TK Servs. v. RWD Consulting, LLC,* where the Court held

---

[5] "Fora responds that this claim is 'conclusory,' as it is unaccompanied by financial documentation and does not show why the $90,000 covered by the liens is essential to Division 5's solvency." (SPA-6).

[6] *Atari Interactive, Inc. v Printify, Inc.*, 714 F. Supp. 3d 225, 238 (S.D.N.Y. Jan. 25, 2024).

[7] *UMG Recs., Inc. v OpenDeal Inc.*, 2022 U.S. Dist. LEXIS 117998, at *25 (SDNY July 5, 2022).

that the declaration of Plaintiff's CEO, which contained conclusory predictions that "TSK will be forced to go out of business," "did little to make the necessary showing of a threat to the company's very existence." *TK Servs.,* 263 F. Supp. 3d 64, 72 (D.D.C. 2017).[8] Fora argued correctly that sufficiently demonstrating irreparable harm would require some modicum of *evidence,* and because Appellee had offered none, its motion must be denied. *See* Opp. Mem., at 9 (*citing Convergen Energy WI, LLC v L'Anse Warden Elec. Co., LLC*, 2020 U.S. Dist. LEXIS 184252, at \*18 (SDNY 2020) ("Plaintiff's evidence does not approach the quality of the evidence . . . that is necessary to support preliminary injunctive relief. Plaintiff has not . . . presented evidence that the loss will be so great as to threaten the existence of its business"); *Tucker Anthony Realty Corp. v Schlesinger*, 888 F2d 969, 975 (2d Cir 1989) ("movant [must ***provide[ ] evidence*** of damage that cannot be rectified by financial compensation") (emphasis added).

The kind of evidence required to even arguably meet the movant's burden when arguing about potential business failure is well known to the Courts. Where the movant submits "no evidence regarding their current capitalization, their annual or monthly profits, or their ability to withstand a significant loss in business, or even closure, for a short period of time," the movant cannot meet its burden. *Sunni, LLC*

---

[8] *Compare with* (A-72, ¶13) ("[u]nless this money is immediately released to us, this will be the last week thatr Plaintiff will be in business").

*v. Edible Arrangements, Inc.*, 2014 U.S. Dist LEXIS 40258, 38 (S.D.N.Y. March 25, 2014). For decades, the law has been that the movant claiming business failure as a basis for seeking injunctive relief must present "concrete data" on how much of its business is from the effected source and "how close it already is to business failure." *Auto Sunroof of Larchmont, Inc.,* 639 F. Supp. 1492, 1494 (S.D.N.Y. 1986). A declaration claiming a business will be destroyed from the loss of a particular sum of money is not sufficient. *DeVivo Assocs.*, Nationwide Mut. Ins. Co., 2020 U.S. Dist. LEXIS 94511, *15-16 (E.D.N.Y. May 29, 2020) ("Plaintiffs simply argue that the effect of the restrictive covenant in the exclusive agent agreement, combined with Plaintiffs' loss of approximately $692,000 in Extended Earnings, will destroy their business.").

Barker's declaration in support showed no evidence of business capitalization, no concrete data about how close the business is to failure, no data about revenues from various sources, and no data supporting his conclusory assertion that "[u]nless this money is immediately released to us, this will be the last week that Plaintiff will be in business..." (A-72, ¶ 13). Barker's submission in support of the motion was precisely the kind of submission that the law deems insufficient as a matter of law. Appellee's reply brief relied upon claims about making payroll while simultaneously lacking any evidence about how much they owe for payroll and whether they have any other means of paying it. (A-450).

13

The trial court did not even mention *any* of these points, or decisions cited by Appellant, and wholly failed to address the actual burden for injunctive relief. Instead, the trial court set up strawmen and attacked those. For instance, the trial court asserted

> To the extent Fora is suggesting that the Court cannot consider Plaintiff's sworn declarations, it is wrong. See, e.g., *Lost Lake Holdings LLC v. Town of Forestburgh*, No. 22- CV-10656, 2023 WL 8947154, at *1 n.1 (S.D.N.Y. Dec. 28, 2023) (rejecting the same argument). While Fora might have a persuasive objection at trial, "a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). Barker's declaration provides sufficient details of the business's circumstances to convince the Court at this stage. It states that Division 5's customers received lien notices and stopped paying, provides an amount of outstanding revenue, and states a timeframe for the business' shutdown. (Barker Dec. ¶¶ 11-13; .).

(SPA-6).

But Fora didn't argue that "the Court cannot consider Plaintiff's sworn declarations"; rather, Fora argued that bare testimony in a declaration, *unsupported by any actual facts or evidence whatsoever,* is incapable of establishing irreparable harm as a matter of law. Unsurprisingly, the trial court's citation to *Lost Lake* is similarly misguided. The *Lost Lake* footnote stands for the limited proposition that declarations involving hearsay testimony may be considered on a motion for a

14

preliminary injunction.  It, like the trial court's decision on which it relies, does not address the substance of Appellant's argument.

There are, of course, numerous cases that do, as demonstrated by Fora in its submissions to the trial court. *See* (A-392 – A-395); *supra*.  But consider, too, the trial court's own citation to *Lost Lake,* which itself cites to this Court's decision in *JTH Tax, LLC v. Agnant,* 62 F.4th 658 (2d Cir. 2023) for the proposition that irreparable harm can be found where "potential economic loss is so great it threatens to put a party out of business."  *Lost Lake Holdings Ltd. Liab. Co. v. Town of Forestburgh,* 2023 U.S. Dist. LEXIS 230517, at *19 (S.D.N.Y. Dec. 28, 2023).  In *JTH,* Plaintiff JTH had sought a preliminary injunction based on alleged violations of non-compete and non-solicit agreements with former franchisees. *JTH,* 62 F.4th at 661 (2d Cir. 2023). With regard to the irreparable harm factor, this Court affirmed the district court's holding that JTH had not demonstrated irreparable harm where, despite the testimony in its declaration, JTH had otherwise "presented no evidence that Agnant's continuing operations would irreparably harm its goodwill, client relationships, or ability to compete in the geographic area."  *Id.* at 672.  This Court reaffirmed the requirement that "a plaintiff must present the district court with actual evidence" to meet the irreparable injury requirement for injunctive relief.  *Id.* at 673.

As for the trial court's observation that "a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that

is less complete than in a trial on the merits" – this is another strawman. (SPA-6)

(*quoting Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)). Fora does not

quibble with this general proposition; what Fora takes issue with is that, while a

preliminary injunction may be granted on the basis of less formal procedures, it must

*still* be based on actual **evidence** – as the quoted decision of the Supreme Court in

*Camenisch* plainly says.

The trial court Decision then proceeds in similar fashion, asserting that

> Numerous "courts in this district have found that asset
> freezes imposed by defendants in MCA cases which
> threaten a plaintiff's business with collapse show
> irreparable harm." *Stellar Beach Rentals, LLC v. Redstone
> Advance, Inc*., No. 23-CV-955, 2023 WL 4421809, at *3
> (S.D.N.Y. July 8, 2023) (collecting cases); s*ee also
> PrecisionWorks MFG, LLC v. Union Funding Source,
> Inc*., No. 22-CV-8290, 2022 WL 16857360, at *1
> (S.D.N.Y. Oct. 25, 2022) (granting a TRO).

(SPA-7). Unsurprisingly, *Stellar Beach and PrecisionWorks MFG, LLC* do not

provide the robust support the trial court ascribes to them – they essentially say

nothing about the actual evidentiary requirements for such relief.[9]

For instance, *Stellar Beach* relies for the quoted proposition on *Inventory

Generation Inc. v. Silverline Services, Inc.* There the Court granted a preliminary

---

[9] It seems clear that the trial court is citing to threadbare decisions to justify a kind of "woozle effect" argument to suggest that injunctive relief should always be granted where accounts receivable are being collected directly by the purchaser – a position that finds no actual legal support. *See United States v Forrest*, 2010 US Dist. LEXIS 118229 (W.D. La. Oct. 7, 2010) (a woozle is a kind of confirmatory bias in which people repeatedly cite a flawed source and never consider the issue again).

injunction after "[]having received no opposition papers from the MCA defendants, and the MCA defendants having failed to appear for the January 3, 2023 hearing[.]" No. 22-cv-10529 (PAE) (S.D.N.Y. Dec. 13, 2022), D.E. 23. *Stellar Beach*'s reliance on *Christine D. Collins, P.C. v. MCA Receivables, LLC* fares no better as support – there, the referenced docket entry for the "Decision" merely refers to "reasons stated on the record." No. 23-cv-353 (AT) (S.D.N.Y. Jan. 14, 2023) (D.E. 32). Finally, to the extent that the decisions in *Stellar Beach* and those cases cited therein may have granted preliminary injunctions based merely on conclusory affidavits that provided little to no factual detail, nor any evidentiary support, those decisions, Appellant respectfully submits, should not be followed because they are wrong. It should go without saying that the evidentiary standards for a preliminary injunction in cases involving receivables purchase agreements are the same as the evidentiary standards for all cases and this Court should not fall prey to the "woozle effect."

Simply put, those standards required denying the Appellee's Motion. "[T]he Second Circuit has [ ] repeatedly cautioned against issuing preliminary restraints solely on the basis of affidavits where relevant factual issues exist." *Carrera Int'l Corp. v. Carrera Jeans Ltd*, 481 F. Supp. 820, 822 (S.D.N.Y. 1979) *citing to Semmes Motors, Inc. v. Ford Motor Co.,* 429 F.2d 1197, 1204 (2d Cir. 1970). In *Semmes Motor,* for instance, this Court noted "the undesirability of issuing temporary injunctions solely on the basis of affidavits, particularly in 'cases where everything

17

turns on what happened and that is in sharp dispute.'" *Semmes,* at 1204. This is, of course, precisely such a case, and one where a more drastic remedy of a preliminary injunction has now been entered. Notably, this Court's skepticism of injunctions granted solely on the basis of affidavits is widely shared. *See, e.g., Atari Games Corp. v. Nintendo of Am., Inc., 897* F.2d 1572, 1575 (Fed. Cir. 1990) ("As a general rule, a preliminary injunction should not issue on the basis of affidavits alone. Moreover, a district court should be wary of issuing an injunction based solely upon allegations and conclusory affidavits submitted by plaintiff."); *Swiderek v. Cont'l Micro, Inc*., 680 F.2d 37, 38 (7th Cir. 1981) ("It is well established that, in general, a motion for a preliminary injunction should not be resolved on the basis of affidavits alone. Normally, an evidentiary hearing is required to decide credibility issues."); *American Passage Media Corp. v. Cass Communications*, 750 F.2d 1470, 1473 (9th Cir. 1985) (reversing grant of preliminary injunction of alleged antitrust violations where allegations of irreparable harm were supported only by two executives "affidavits [that were] conclusory and without sufficient support in facts").

Here, then, the trial court should have required at least a modicum of actual evidence in connection with Appellee's submissions, or at the very least held an evidentiary hearing where the same could have been presented. *SEC v. Frank,* 388 F.2d 486, 491 (2d Cir. 1968) (with regard to "cases where everything turns on what happened and that is in sharp dispute; in such instances, **the inappropriateness of**

**proceeding on affidavits attains its maximum** and, even if the plaintiff's need is great, it will normally be possible for the judge within the allotted time to conduct a hearing that will illuminate the factual issues") (emphasis added).[10] It must be noted that evidence of the types identified by Fora was surely available to Appellee, both when it moved for injunctive relief, and when it submitted its reply in response to Fora's arguments. Appellee's failure to provide any evidence is telling, its refusal to provide any should have been fatal its motion for injunctive relief, and the trial court's failure to require any evidence constitutes reversible error.

## II. THE TRIAL COURT'S HOLDING THAT APPELLEE'S USURY CLAIM CAN FORM THE BASIS FOR DECLARATORY RELIEF WAS A CLEAR LEGAL ERROR.

Notwithstanding the fact that black letter law holds that business entities and their guarantors are barred as a matter of law from asserting usury as the basis for a claim, the trial court held that "[t]he Court rests its decision to issue a preliminary injunction on Division 5's usury claim...." (SPA-5). Thus, the trial court's entire decision stems from a clear error of law. Appellee sought a declaration that UCC

---

[10] "It is settled law in this Circuit that motions for preliminary injunctions should not be decided on the basis of affidavits when disputed issues of fact exist." *Kern v. Clark,* 331 F.3d 9, 12 (2d Cir. 2003) (quoting *Commodity Futures Trading Comm'n v. Incomco, Inc.,* 649 F.2d 128, 131 (2d Cir.1981)). "The existence of factual disputes necessitates an evidentiary hearing … before a motion for a preliminary injunction may be decided." *Commodity Futures,* 649 F.2d at 131; *see also Fengler v. Numismatic Americana, Inc.,* 832 F.2d 745, 747 (2d Cir. 1987) ("On a motion for preliminary injunction, where 'essential facts are in dispute, there must be a hearing … and appropriate findings of fact must be made") (quoting *Visual Sciences, Inc. v. Integrated Communications, Inc.,* 660 F.2d 56, 58 (2d Cir. 1981)).

Notices are void, and premised this request explicitly on the assertion that the parties' Agreement was in reality a usurious loan. The plain language of Appellee's Complaint demonstrates this. Paragraphs 128-146 of the Complaint, comprising the cause of action for declaratory relief, are an explicit usury argument. Specifically, in paragraphs 128-145, Appellee makes generic allegations about usury law in New York, followed by allegations about the terms of the parties' agreement (e.g., A-32, ¶140, "Defendant's reconciliation provision was nothing more than a sham …"; *id.,* ¶143, alleging a "de facto fixed term"; *id.* ¶ 144, alleging that "the agreement provided that Defendant had full recourse in the event of bankruptcy").[11] Thus, Appellee asserts, "this transaction was really a usurious loan..." (A-33, ¶ 146); *see also* A-32, ¶ 138 ("Plaintiff's MCA Agreement is void *ab initio*."). Then, the Complaint make its rhetorical move, alleging that "[b]ecause the transaction was really a usurious loan and not a legitimate merchant cash advance, the UCC lien is void and without effect." (A-33, ¶147). Thus, Appellee concludes, "[a] declaratory judgment is required" with respect to the UCC Notices which Appellee asserts are "void," "and that [Fora] is barred from enforcing the [ ] illegal interest rates on the sham loan through any future UCC lien letters." (*Id.,* ¶150). The conclusion is unavoidable: the declaration Appellee seeks – that Fora's UCC notices are void –

---

[11] As described below, these allegations are without merit based on the plain terms of the parties' Agreement.

*necessarily requires* that a court first declare that the Agreement is usurious.[12]
Moreover, the Complaint's allegations make clear that the *ultimate* relief it seeks is
that the underlying debt goes uncollectable, end-stop, based on a determination – a
declaration – that the agreement is usurious and void. *Id,* ¶ 150. Looked at from
another angle, it is clear that should Appellee obtain the *ultimate* relief it seeks – that
Fora be "barred from enforcing the [ ] illegal interest rates on the sham loan through
any future UCC lien letters" (*id.*) – it necessarily follows that Fora will be barred
from enforcing its rights under the Agreement *at all,* because the Court will
*necessarily* have had to find that the Agreement is void.

This, Fora argued, is fatal to Appellee's Motion because it is black letter law
in New York that business entities are barred from asserting usury as the basis for
any affirmative claim, and may assert violations of New York's usury statutes only
as an affirmative defense to a pending claim. *LG Funding, LLC v. United Senior
Props. of Olathe, LLC*, 181 A.D.3d 664 (2d Dept. 2020) (explaining that defendant
"may not assert criminal usury as the basis for a counterclaim"); *Intima-Eighteen,*

---

[12] In fact, the trial court has already tipped its hand in the Order it entered which granted Appellee's
Motion, prior to issuing a full written decision. In that Order, the trial court ordered that "[d]uring
the pendency of this action, or any arbitration proceedings, Defendant is enjoined from issuing any
UCC lien letters to any of Plaintiffs customers or to any other third party that might be holding
assets belonging to or owed to Plaintiff, and Defendant is directed to withdraw any lien letter
previously sent, **any such lien letter being null and void**." (A-152) (emphasis added). Of course,
the *ultimate* relief Appellee seeks below on its claim for a declaratory judgment is just that – a
declaration that the UCC Notices are "null and void." So, it seems, the trial court has already made
up its mind as to the outcome of this action, before it has hardly begun.

*Inc. v. A.H. Schreiber Co.*, 568 N.Y.S.2d 802 (1st Dept. 1991) (explaining that while usury can be raised as an affirmative defense, it cannot be employed as a basis to seek affirmative relief); *K9 Bytes, Inc. v. Arch Capital Funding, LLC*, 56 Misc. 3d 807, 815 (Sup. Ct. Westchester Co. 2017) ("It has long been settled in this state that criminal usury may only be asserted as a defense by a corporation, and never as a means to seek affirmative relief."); *Bright Kids NYC, Inc. v. Quarterspot, Inc.*, 2021 U.S. Dist. LEXIS 178867 (S.D.N.Y. Sept. 20, 2021) (finding no authority in New York permitting corporate borrower to affirmatively sue lender for usury even if the goal is defensive); *Scantek Med., Inc. v. Sabella*, 582 F. Supp. 2d 472, 474 (S.D.N.Y. 2008); *Colonial Funding Network, Inc. v. Epazz, Inc.*, 252 F. Supp. 3d 274, 280 (S.D.N.Y. 2017); *Collins v MCA Receivables, LLC*, 2024 U.S. Dist. LEXIS 11505, *10-11 (S.D.N.Y. 2024); *Streamlined Consultants, Inc. v. EBF Holdings, LLC*, 2022 U.S. Dist. LEXIS 171085, *12 (S.D.N.Y. 2022) (collecting cases). The law is equally clear that a party cannot circumvent the prohibition against asserting a claim for usury by affixing different labels to its claims – whether declaratory or otherwise – while relying upon the same usury allegations and arguments. *Intima-Eighteen, Inc.*, 568 N.Y.S.2d at 804 (rejecting Complaint's use of usury allegations to support an affirmative claim, holding that "[a] party may not accomplish by indirection what is directly forbidden to it."); *A&A Fabrication and Polishing Corp. v. Funding Metrics, LLC*, 2021 N.Y. Misc. LEXIS 2317 (Sup. Ct.

Westchester Co. 2021) (rejecting plaintiffs' attempt to circumvent statute of limitation by calling their usury claim a defense); *Progressive Water Treatment Inc. v. Yellowstone Capital, LLC,* 2021 N.Y. Misc. LEXIS 5 (Sup. Ct. Erie Co. 2021) (rejecting plaintiffs' attempt to circumvent statute of limitation by calling their usury claim a defense).

Despite the foregoing, the trial court somehow concluded that "Division 5 does not seek a declaratory judgment invalidating the agreement, but rather a judgment invalidating Fora's UCC liens." (SPA-11). But, of course, as a matter of logic, if the Agreement is not void because of usury, the UCC liens are not void. The trial court asserts a distinction without a difference. Indeed, the trial court's Decision itself acknowledges that the claim for declaratory relief is a "usury claim." (SPA-5) (the trial court stating it "rests its decision to issue a preliminary injunction on Division 5's usury claim."). The trial court's refusal to apply New York law as required to that "usury claim" is a clear error of law.

The trial court went on to assert that "[a]llowing Division 5 to use the criminal usury law to void Fora's UCC liens fits well with [New York's usury] statutory scheme." (SPA-13). Perhaps that is the trial court's opinion; unfortunately, it is at direct loggerheads with black-letter law of New York state. It is also at loggerheads with at least one other decision of the Southern District, which rejected the argument made by the plaintiff that "because the cause of action is only in response to

Defendants' prior actions of trying to enforce the collection of its usurious loans outside of the court system," a claim for declaratory relief based on usury allegations was viable. *See Collins v. MCA Receivables, LLC,* 2024 U.S. Dist. LEXIS 11505, at *11 (S.D.N.Y. Jan. 23, 2024).[13] Of course, the situation is the same here: Appellee's cause of action for declaratory relief is "in response to [Fora's] prior actions of trying to enforce collection [of Appellee's obligations] outside of the court system." The same result should follow here as in *Collins*.

Similarly misguided is the trial court's policy-based assertion that "[w]hile strictly speaking, a UCC lien is not a legal action, it accomplishes the same end while allowing the issuer to bypass the courts. To condone such practices would create the very kind of loophole that the New York legislature sought to eliminate." (SPA-13). Simply put, this is a strawman; there is no 'loophole' to "bypass the courts." The assertion that a party in Appellee's position could not – absent the trial court's holding that affirmative declaratory relief based on usury allegations is available – obtain the relief Appellee seeks here is particularly specious given that it is the trial court itself that declined to perform analysis regarding Appellee's claims for fraud and breach of contract. The trial court, could, of course, just as easily based its Decision on a merits analysis as to one or both of those claims.

---

[13] Appellant cited to this decision in its opposition below. (A-396).

This, at bottom, is the crux of the matter – the UCC, as enacted by the legislature, provides Fora, as purchaser of accounts receivable, the statutory right to issue UCC §9-406 notices to the Appellee's account-debtors, directing that payments be made directly to Fora (with or without a declaration of default).[14] *GCM Prime, LLC v. MM Dynamic of NY, Inc.*, 2024 N.Y. Misc. LEXIS 24728 (Sup. Ct. Albany Co. Nov. 21, 2024) (noting that "UCC Notices of lien permissibly were sent following the default under UCC 9-406"). The law also provides parties like the Appellee the opportunity to seek injunctive relief related to the issuance and operation of those notices, as Appellee has done here. Which is to say: Appellee's fears – which are those adopted by the trial court's Decision – are unfounded. That the trial court chose not to perform a comprehensive analysis of all claims, and instead ran head long into direct conflict with settled New York State law on the availability of declaratory relief based on usury allegations, is no reason to disregard the clear directive of New York State courts as to this issue.[15]

Finally, it must be noted that Appellee's claim for declaratory relief is brought pursuant to the specific federal statute that empowers federal courts to grant

---

[14] UCC 9-406 also provides a mechanism for any such account-debtor to seek clarification as to the basis for the assignee/purchaser's purported right to payment.

[15] More broadly, if Appellee believes that there is a gap in the UCC statutory scheme, and/or in the interaction of that scheme with the law of New York state, Appellee's remedy is with the New York legislature, not the federal courts. New York law is clear: courts cannot issue declaratory relief based on usury allegations – end-stop.

declaratory judgments: the Federal Declaratory Judgment Act (22 U.S.C., § 2201, "FDJA"). But that statute cannot support Appellee's claim. Because Appellee seeks a declaratory judgment as to usury – an issue of policy traditionally left to the States, aside from specific statutory provisions/schemes such as, e.g., RICO and certain laws relating to national banks – the trial court should have applied New York's law on the availability of a declaratory judgment as to the usury question. Instructive here is an opinion of this Court in *118 E. 60th Owners, Inc. v. Bonner Props., Inc.* There, considering the question of "whether the federal procedural device of the Declaratory Judgment Act permits a diversity court to reach a result that could not be obtained in the courts of the forum state," the Second Circuit held that "[i]n the absence of a direct conflict between a federal statute or rule and the state policy, we need not override the state substantive policy and can thus minimize friction in the federal-state relationship, curtail forum shopping possibilities, and prevent inequitable administration of the law resulting from the fortuity of diversity of citizenship." *118 E. 60th Owners,* 677 F.2d 200, 204-205 (2d Cir. 1982) (noting that "[s]urely, it would be inappropriate to use the federal statute in a diversity action when declaratory relief would 'needless(ly) obstruct( ) … the domestic policy of the states,'" and denying request for a declaratory judgment that would directly conflict with New York's substantive law of limitations). The case at bar presents the same situation – the Decision countenances declaratory relief that is in direct conflict with

New York state law – and the same result should have followed. The trial court's refusal to follow settled New York law, and the Decision's reliance on that holding to find merit in the cause of action for declaratory relief, constitute reversible error.

## III. THE TRIAL COURT'S HOLIDNG THAT DIVISION 5 HAD A LIKELIHOOD OF SUCCESS ON MERITS WAS REVERSIBLE ERROR.

### a. The Fora Agreement Is Not A Loan Under New York Law

Fora offered extensive argument to the trial court regarding New York's usury law as applied to the Fora Agreement at issue in this action. *See* (A-396-398). (incorporating by reference ten pages of analysis from Fora's motion to dismiss at A-166 – A-174). Fora's preliminary injunction opposition brief detailed that:

> Applying [controlling New York appellate] law to Fora's contracts, New York's courts have consistently held that Fora's Agreements are not loans subject to New York's usury laws. *Fora Financial Funding, LLC v. Nathan's Realty, LLC*, 2024 N.Y. Misc. LEXIS 3005, at *2 (Sup. Ct. Nassau Co. 2024) ("... the plaintiff has established as a matter of law that the agreement is a 'revenue purchase agreement' or 'merchant cash advance agreement' rather than a loan ... conclusory assertions of [defendants'] counsel, who lacks personal knowledge of the facts, are of no probative or evidentiary significance.") (citations omitted); *Fora Fin. Asset Securitization 2021, LLC v. Elite TXP Servs. LLC*, 2024 NY Slip Op 32249(U) (Sup. Ct.), at *10-11 (Sup. Ct. Nassau Co. 2024) ("Defendants' argument that the agreement at issue is a usurious, unenforceable loan is unavailing ... as the agreement is not a loan, defendants' argument that it is unenforceable is without merit.") (citations omitted); *Fora Fin. Funding, LLC v. Reel Appeal Sport Fishing L.L.C*, 2024 N.Y. Misc. LEXIS 1616, at *3 (Sup. Ct. Nassau Co. 2024) ("The law is clear in New York that a Purchase and Sale of Future Receivables Agreement (Revenue Advance) is not a loan and the usury laws do not apply."); *Fora Fin. Asset Securitization 2021, LLC v. Hialeah FL Parts Inc.*, 2024 NY Slip Op 31503(U), ¶ 3 (Sup.

Ct.) (Sup. Ct. Nassau Co. 2024) (". . . the transaction set forth in the parties' agreement is not a loan . . .") (citations omitted); *Fora Financial Advance, LLC v. Doorectory Inc*, 2024 N.Y. Misc. LEXIS 1285, at *3-4 (Sup. Ct. Nassau Co. 2024) (". . . the Agreement does not contain an interest rate scheduled, there is no fixed time by which the defendants are required to remit payments, there is a clause stating that bankruptcy does not constitute a breach of the Agreement and the Agreement contains an express reconciliation clause. As such, dismissal of the defendants' affirmative defenses is warranted under these circumstances.") (citations omitted); *Fora Fin. Asset Securitization 2021 LLC v. Ideal Comfort Heating & Cooling Corp.*, 2023 NY Slip Op 32185(U), at *7-8 (Sup. Ct. Nassau Co. 2023) (". . . the Court finds that the Agreement is not a usurious loan . . ."). In short, the Plaintiff's Agreement has been consistently upheld as an enforceable purchase and sale of receivables, not a loan subject to any defense based on usury. Plaintiff's motion and pleading submit nothing that would suggest this Court would, could, or should depart from settled law rejecting their usury argument.

(A-397 – A-398); *see also Fora Fin. Funding, LLC v Aunt Mary's Soul Food Kitchen LLC*, 2023 N.Y. Slip. Op. 30260[U] (Sup. Ct. Nassau Cnty. 2023); *Fora Fin. Advance v Cortis Prop. Servs. Llc*, 2019 N.Y. Misc. LEXIS 10963 (Sup. Ct. Nassau Cnty. 2019).

Fora argued that these decisions were in accord with a long line of New York state appellate authority holding that agreements with materially identical terms are *not* loans, as a matter of law. Purchase and sale of future accounts receivable transactions, substantially identical to the Agreement in this case, are not usurious loans. *Samson MCA LLC v Joseph A. Russo M.D. P.C./IV Therapeutics PLLC*, 219 A.D.3d 1126 (4th Dept. 2023); *Principis Capital, LLC v I Do, Inc.*, 201 A.D.3d 752 (2d Dept. 2022); *Kennard Law P.C.*, 2020 N.Y. Misc. LEXIS 10407, *aff'd*, 199

A.D.3d 1406; *Strategic Funding Source v. Steenbok, Inc.*, Case No.: 2021-00877

(1st Dept. June 22, 2021) (underlined). *Champion Auto Sales, LLC v. Pearl Beta*

*Funding, LLC*, 2017 N.Y. Misc. LEXIS 5355 (Sup. Ct. N.Y. Cty. 2017) *aff'd* 69

N.Y.S.3d 798 (1st Dept. 2018).  Moreover, the foregoing authorities are not outliers,

but part of a broad judicial consensus spanning many years on a heavily developed

body of law for an industry that provides hundreds, if not thousands of jobs in New

York.[16]  The footnoted string cite is not even close to comprehensive, but merely

illustrative of the sheer volume of decisions.

---

[16] *Spin Capital, LLC v Golden Foothill Ins. Servs., LLC*, 2023 N.Y. Slip. Op. 30594[U] (Sup. Ct. N.Y. Cty. 2023); *Honest Funding Llc v Power Logistics Servs. Corp*, 2023 N.Y. Misc. LEXIS 636 (Sup. Ct. Westchester Cty. 2023); *Unique Funding Solutions LLC v A-Z Imports Exports LLC*, 2023 N.Y. Slip. Op. 50188[U] (Sup. Ct. Nassau Cnty. 2023); *Spartan Bus. Solutions, LLC v AVA Mfg., LLC*, 2023 N.Y. Misc. LEXIS 225 (Sup. Ct. Monroe Cnty. 2023); *Brickstone Group LLC v Arizona Native Bldrs., LLC*, 2022 N.Y. Slip. Op. 34260[U] (Sup. Ct. N.Y. Cnty. 2022); *Vernon Capital Group LLC v Walnut Spring Farms L.L.C.*, 2022 N.Y. Misc. LEXIS 4004 (Sup. Ct. Kings Cty. 2022); *CFG Merchant Solutions, LLC*, v. *Fromley LLC*, 2022 N.Y. Misc. LEXIS 7317 (Sup. Ct. Kings Cnty. 2022); *Spartan Bus. Solutions, LLC v Expert Packaging Inc.*, 2022 N.Y. Misc. LEXIS 4005 (Sup. Ct. Monroe Cty. 2022); *Cloudfund LLC v Tamam Meat LLC*, 2022 N.Y. Misc. LEXIS 4179 (Sup. Ct. Queens Cty. 2022); *Royal Bus. Group, LLC v Cloud Acct. LLC*, 2022 N.Y. Misc. LEXIS 3785, 2022 NY Slip Op 32704(U) (Sup. Ct. Monroe Cty. 2022); *Kodiak Funding, LLC v Golden Hospitality LLC*, 2022 N.Y. Misc. LEXIS 3782, 2022 NY Slip Op 32703(U) (Sup. Ct. Monroe Cty. 2022); *Tender Loving Care Homes Inc. v Reliable Fast Cash, LLC*, 2022 N.Y. Slip. Op. 22196 (Sup. Ct. Richmond Cty. 2022); *Green Capital Funding v TSG Fitness LLC*, 2022 N.Y. Misc. LEXIS 2370 (Sup. Ct. Nassau Cty. 2022); *Global Merchant Cash, Inc. v Mainland Ins. Agency Inc.*, 2022 N.Y. Misc. LEXIS 1473 (Sup. Ct. Kings Cty. 2022); *Samson MCA LLC v Joseph A. Russo MD PC*, 2022 N.Y. Misc. LEXIS 1127 (Sup. Ct. Ontario Cty. 2022); *Thryve Capital Funding, LLC v Dilshaan LLC*, 2022 N.Y. Misc. LEXIS 282 (Sup. Ct. Queens Cty. 2022); *American Water Restoration, Inc. v. AKF Inc.*, 74 Misc.3d 1203(A) (Sup. Ct. Ontario Cty. 2022); *Cavalry LLC v Funding Metrics, LLC*, 2021 NY Slip Op 32017[U] (Sup. Ct. Orange Cty. 2021); *EBF Partners, LLC, v. OT Aspekt & Chiropractic*, 2021 N.Y. Misc. LEXIS 12815 (Sup. Ct. Queens Cty. 2021); *E.B.F. Partners, LLC v. Middleman Mattress Corp.*, 2021 N.Y. Misc. LEXIS 12814 (Sup. Ct. Richmond Cty. 2021); *OriginClear Inc. v GTR Source, LLC*, 2021 U.S. Dist. LEXIS 239013 (W.D.N.Y. 2021); *110% Effort, 1000% of the Time LLC v High Roller Rentals LLC*, 2021 N.Y. Slip. Op. 32678[U] (Sup. Ct. Kings County 2021); *Progressive Water Treatment Inc. v. Yellowstone Capital LLC*, 2021 N.Y. Misc. LEXIS 5 (Sup. Ct. Erie Cty. 2021); *Principis Capital*

---

*Llc v Gold*, 2021 N.Y. Misc. LEXIS 9265 (Sup. Ct. Nassau Cty. 2021); *OT Aspekt & Chiropractic PLLC v Fox Capital Group, Inc.*, 73 Misc 3d 1208[A] (Sup. Ct. Queens Cty. 2021); *Colonial Funding Network, Inc. v. Davincitek Corp.*, 2021 NY Slip Op 30026(U) (Sup. Ct. N.Y. Cnty. 2021); *McA Master Fund v. Universal Scrap Motors*, 2021 NY Slip. Op. 30097(U) (Sup. Ct. Nassau Cty. 2021); *Principis Capital LLC v Team Van Eyk, Inc.*, 2021 N.Y. Slip. Op. 30664[U] (Sup. Ct. N.Y. Cty. 2021); *Quicksilver Capital v All Around Off. Installation*, 2021 N.Y. Slip. Op. 31929[U] (Sup. Ct. Queens Cty. 2021); *Pirs Capital, LLC v. D & M Truck, Tire & Trailer Repair Inc.*, 69 Misc. 3d 457 (Sup. Ct. N.Y. Cnty. 2020); *MPAK Inc v Merchant Funding Servs., LLC*, 2020 N.Y. Misc. LEXIS 7022 (Sup. Ct. Orange Cty. 2020); *Comer v. Advanced Capital, Inc.*, 2020 N.Y. Misc. LEXIS 9101 (Sup. Ct. Queens Cty. 2020); *Quicksilver Capital Llc v Obioha*, 2020 N.Y. Misc. LEXIS 19832 (Sup. Ct. N.Y. Cty. 2020); *AF Trucking Inc. v Oxford Capital Funding, LLC*, 2020 N.Y. Misc. LEXIS 8811 (Sup. Ct. Orange Cty. 2020); *Platinum Rapid Funding Group v Robinson & Robinson Inv. Group*, 2020 N.Y. Misc. LEXIS 12940 (Sup. Ct. Nassau Cty. 2020); *Womack v. Capital Stack, LLC*, 2019 WL 4142740 (S.D.N.Y. 2019); *Principis Capital LLC v WTC Victor, LLC*, 2019 N.Y. Slip. Op. 33678[U] (Sup. Ct. N.Y. Cty. 2019); *Power Up Lending Grp., Ltd. v. Cardinal Energy Grp., Inc.*, 2019 WL 1473090 (E.D.N.Y. 2019); *Ortega's Mexican Rest., LLC v Happy Rock Merchant Solutions, LLC*, 597 B.R. 442 (Bankr. D. Conn. 2019); *Yellowstone Capital LLC v Cent. USA Wireless LLC*, 60 Misc. 3d 1220[A] (Sup. Ct. Erie Cty. 2018); *LG Funding, LLC v Filton LLC*, 2018 N.Y. Slip. Op. 33289[U] (Sup. Ct. Nassau Cty. 2018); *LG Funding LLC v Garber*, 2018 N.Y. Slip. Op. 33135[U] (Sup. Ct. Nassau Cty. 2018); *Wilkinson Floor Covering, Inc. v Cap Call*, LLC, 2018 NY Slip Op 50709(U) (Sup. Ct. N.Y. Cty. 2018); *Principis Capital LLC, v. 3148521 Canada Inc.*, 2018 N.Y. Misc. LEXIS 1616 (Sup. Ct. N.Y. Cty. 2018); *NY Capital Asset Corp. v F & B Fuel Oil Co., Inc.*, 58 Misc. 3d 1229(A) (Sup. Ct. Westchester Cty. 2018); *IBIS Capital Group, LLC v Fletcher*, 2018 N.Y. Slip. Op. 30829[U] (Sup. Ct. Rockland Cty. 2018); *ML Factors v Surveillance*, 2018 N.Y. Misc. LEXIS 10085 (Sup. Ct. Erie Cty. 2018); *Platinum Rapid Funding Group Ltd. v Uncle Jimmy's*, 2018 NY Slip Op 30396(U) (Sup. Ct. Nassau Cty. 2018); *LG Funding, LLC v City N. Grill Corp.*, 2018 NY Slip Op 30372(U) (Sup. Ct. Nassau Cty. 2018); *Wyldewood Cellars v Yellowstone Capital, LLC*, 2018 N.Y. Misc. LEXIS 14093 (Sup. Ct. Bronx Cty. 2018); *LG Funding, LLC v Balsamo*, 2017 NY Slip Op 32686(U) (Sup. Ct. Nassau Cty. 2017); *Colonial Funding Network, Inc. v Epazz, Inc.*, 252 F. Supp. 3d 274 (S.D.N.Y. 2017); *LG Funding, LLC v Grace Plastics, Inc.*, 2017 NY Slip Op 32750(U) (Sup. Ct. Nassau Cty. 2017); *LG Funding, LLC v Snowstar, Inc.*, 2017 NY Slip Op 32741(U) (Sup. Ct. Nassau Cty. 2017); *LG Funding, LLC v Christenbury Eye Ctr., P.A.*, 2017 NY Slip Op 32609(U) (Sup. Ct. Nassau Cty. 2017); *Lg Funding Llc v. Island Flavor Llc*, 2017 NYLJ LEXIS 3426 (Sup. Ct. Nassau Cty. 2017); *LG Funding, LLC v Branson Getaways, Inc.*, 2017 NY Slip Op 32387(U) (Sup. Ct. Nassau Cty. 2017); *Rapid Capital Fin., LLC v Natures Mkt. Corp.*, 57 Misc. 3d 979 (Sup. Ct. Westchester Cty. 2017); *EBF Partners, LLC v Yaz & Yash LLC*, 2017 NY Slip Op 31600(U) (Sup. Ct. Westchester Cty. 2017); *Merchant Cash & Capital, LLC v Avtar Trucking, Inc.*, 2017 NY Slip Op 31123(U) (Sup. Ct. Nassau Cty. 2017); *Merch. Cash & Capital v. Wett Plumbing*, 55 Misc. 3d 1220(A) (Sup. Ct. Nassau Cty. 2017); *Merchant Cash & Capital, LLC v Sogomonyan*, 2017 NY Slip Op 31111(U) (Sup. Ct. Nassau Cty. 2017); *Chartock v National Bank of California*, 2017 NY Slip Op 30357(U) (Sup. Ct. Queens Cty. 2017); *Merchant Cash & Capital, LLC v Frederick & Cole, LLC*, 2016 NY Slip Op 32730(U) (Sup. Ct. Nassau Cty. 2017); *Merchant Cash And Capital, LLC, v. Hobby Horse Welding, Inc.*, 2016 N.Y. Misc. LEXIS 4894 (Sup. Ct. Nassau Cty. 2016); *Merchant Cash & Capital, LLC v Fire Suppression Servs., Inc.*, 2016 NY Slip Op 32590(U)

As Fora argued to the trial court, New York Courts consistently look at three common contract provisions to determine if an agreement was a purchase of future receivables as opposed to a usurious loan. *LG Funding, LLC*, 181 A.D.3d at 666; *IBIS Capital Grp., LLC*, 2017 NY Slip Op 30477(U); *K9 Bytes, Inc. v. Arch Capital Funding, LLC*, 56 Misc. 3d 807 (Sup. Ct. Westchester Cty. 2017). Specifically, the Courts look to whether the agreement: 1) contains a reconciliation provision; 2) contains an absolute payment schedule or date certain by which payment in full is due; and 3) mandates that business failure and/or bankruptcy in the ordinary course of business is an event of default. *Id.* The presence of two or more contingency factors is fatal as a matter of law to a usurious loan argument because they establish that the buyer has accepted sufficient risk to dismiss the usury theory.

It is helpful to consider the reconciliation provision first, as the inclusion of a reconciliation provision is a factor that is "cited by each and every court that found that [a sale of future receivables] transaction was not a loan." *K9 Bytes,* 56 Misc. 3d at 816. A reconciliation provision "allow[s] the merchant to seek an adjustment of the amounts being taken out of its account based on its cash flow (or lack thereof)."

---

(Sup. Ct. Nassau Cty. 2016); *Merchant Cash & Capital, LLC v South Jersey Speed LLC*, 2016 NY Slip Op 32591(U) (Sup. Ct. Nassau Cty. 2016); *Merchant Cash & Capital, LLC v Liberation Land Co., LLC*, 2016 NY Slip Op 32589(U) (Sup. Ct. Nassau Cty. 2016); *Retail Capital, LLC v Spice Intentions Inc.*, 2016 NY Slip Op 32614(U) (Sup. Ct. Queens Cty. 2016); *Merch. Cash & Capital, LLC v. Ethnicity Inc.*, 2016 NY Slip Op 32593(U) (Sup. Ct. Nassau Cty. 2016); *Tate v National Bank of California*, 2016 NY Slip Op 32396(U) (Sup. Ct. Nassau Cty. 2016).

*Id.* at 817. The parties' Agreement here unequivocally contains an express, detailed, and ***mandatory*** reconciliation provision. (A-180 – A-181, § 1.3). The Agreement provides that both the buyer and seller can request reconciliations. (A-180, § 1.3(a)). Moreover, it provides a maximum time-period of five days for buyer to complete the entire reconciliation and limits the buyer's ability to request documents to material allowing for "reasonable verification" of the reconciliation information. (*Id.* § 1.3(b)). The reconciliation agreement uses mandatory language "shall" when it comes to the buyer's obligation to adjust the remittance amount to more closely match the merchant's actual receivables. *Id.* ("Within five days after Purchaser's reasonable verification of the Reconciliation Information, Purchaser ***shall*** adjust the Remittance Amount on a going-forward basis to more closely reflect the Seller's actual Future Sales Proceeds times the Purchased Percentage.") (emphasis added).

Second, if there is no provision mandating payment in full by a date certain or absolute payment schedule, then that weighs heavily against a usurious loan argument. *IBIS Capital Grp., LLC*, 2017 NY Slip Op 30477(U) at *6; *K9 Bytes,* 56 Misc. 3d at 817. The Agreement mandates that "There is no interest rate or payment schedule and no time period during which the Purchased Amount must be collected by Purchaser." (A-80, § 1.1(d)). Indeed, that there is no finite term to the Agreement is inherent in the presence of the mandatory adjustment provision – because if the

amount of the remittances may decrease, then by logical necessity the term of the Agreement may lengthen.

Third, if bankruptcy or business failure are not, in and of themselves, events of default, that will demonstrate that the buyer has accepted sufficient risk of loss, and refute any argument that the agreement could be construed as a loan. Here, the Agreement unequivocally provides that "Seller going bankrupt or going out of business, in and of itself, does not constitute a breach of this Agreement." (A-80, § 1.1(d)). This is fatal to any usury argument, because if the merchant failed or went bankrupt, neither the merchant nor the guarantor would be liable for anything to the buyer.

The Agreement in this case goes still further and contains other contingency provisions that are independently fatal to Plaintiff's usury theory. As explained by the New York's Second Appellate Department, the ultimate test for the court is whether the buyer is "absolutely entitled to repayment under all circumstances." *LG Funding, LLC*, 181 A.D.3d at 666. "Unless a principal sum advanced is repayable absolutely, the transaction is not a loan." *Id.* (*citing Rubenstein v. Small*, 273 A.D. 102, 104 (1st Dept. 1947)). Thus, if there is *any* fact pattern or circumstance outside the alleged lender's control that will serve as a complete bar to further repayment, that will be fatal to a usury challenge. *Rubenstein*, 273 A.D. at 104. Obviously, the fact that bankruptcy in the ordinary course relieves the merchant of its obligations is

one such condition. Moreover, a contract provision conditioning payment to the buyer on the seller actually generating and collecting receivables is, as a result, independently fatal to a usurious loan theory. *Strategic Funding Source*, Case No.: 2021-00877; *Pearl Delta Funding, LLC v. Superior Contr. & Restoration, Inc.*, 2022 N.Y. Misc. LEXIS 6038 (Sup. Ct. Nassau Cnty. 2022). Indeed, if the contract mandates that "the obligation to repay is conditioned upon the receipt by the merchant receiving receivables," there can be no dispute that the transaction was not a loan subject to usury laws. *Platinum Rapid Funding Group, Ltd. v H D W of Raleigh, Inc.*, 2018 N.Y. Slip. Op. 32500[U] (Sup. Ct. Nassau Cnty. 2018).

The Agreement unequivocally provided that the buyer has accepted sufficient risk:

> Purchaser is entering this Agreement knowing the risks that Seller's business may slow down or fail, and Purchaser assumes these risks based on Seller's representations, warranties and covenants in this Agreement, which are designed to give Purchaser a reasonable and fair opportunity to Purchaser to receive the benefit of its bargain.

(A-80, § 1.1(d)). A nearly identical provision was highlighted by the Fourth Department in *Samson MCA LLC,* 219 A.D.3d 1126 (4th Dept. 2023). This is in line with settled authority because, as mentioned, "[u]nless a principal sum advanced is repayable absolutely, the transaction is not a loan." *LG Funding, LLC*, 181 A.D.3d at 666. Here, the buyer accepted risk of loss in the event of business failure and

bankruptcy. In sum, Fora's agreement satisfies all three-factors applied by New York courts conducting usury analysis, and, in all respects, satisfies the conditions required for holding that an agreement is *not* a loan, which is why New York courts have repeatedly held that this agreement is not a usurious loan, as a matter of law. *See supra.*

### b. <u>The Trial Court's Decision's Analysis Was Flawed</u>

The trial court blithely dismissed the New York state court decisions adjudicating the Fora agreement as "a string of Nassau County Supreme Court cases"[17] and then pronounced that "[s]uch authority is not binding on this Court, and in any event conflicts with the limited precedent available from the Second Circuit and New York appellate courts." (SPA-13). First, New York state's interpretation of its own usury law *is* binding on the Southern District[18], and New York state courts' application of that controlling state law to the exact contract provisions at bar should have held great weight with the trial court.[19] Moreover, the authority cited by Fora in no way "conflicts with the limited precedent available from the Second Circuit

---

[17] N.B. It is not just the Nassau County Supreme Court that has held the Fora agreement is not a loan. *See, e.g., Fora Fin. Asset Securitization 2021, LLC v. Grill on 2Nd LLC,* 2024 NY Slip Op 34101(U) (Sup. Ct. New York Cnty.).

[18] *Mayes v Summit Entertainment Corp.*, 287 F. Supp. 3d 200 (E.D.N.Y. 2018).

[19] *Courchevel 1850 LLC v. Stern*, 2018 U.S. Dist. LEXIS 108394 (E.D.N.Y. 2018).

and New York appellate courts." *Id.* It is thus unsurprising that the trial court's analysis on this point was so paltry.

First and foremost, the trial court did not actually point to any New York appellate authority that conflicts with the Fora decisions. The trial court cited to the a decision of the Second Department Appellate Division in *Abir v. Malky, Inc.,* a case from 2009[20], before the controlling three-factor usury analysis now employed by New York State Courts was even fully developed – which is to say, *Abir* says nothing that conflicts, or is even practically relevant to, the Fora decisions cited and the analysis above.[21] The trial court otherwise cited to *LG Funding, LLC v. United Senior Props. of Olathe, LLC,* 122 N.Y.S.3d 309, 312 (2d Dep't 2020) ("*LG v. Olathe*"), but did not use it as a lens for analyzing the agreement at issue in this action. This is unsurprising, because an analysis of *LG v. Olathe* actually undermines the trial court's decision. As the Eastern District of New York recently held, construing a similar receivables purchase agreement and addressing essentially the same arguments advanced below and apparently adopted by the trial court's Decision:

> The RPA's Reconciliation Clause is not the type of illusory arrangement considered in *LG Funding [v. Olathe]*, where the withdrawing party could adjust the

---

[20] 873 N.Y.S.2d 350, 354 (2d Dep't 2009).

[21] The trial court's use of *Abir,* as with myriad other citations in the Decision, does not extend beyond the general proposition that substance, not form, controls when a court determines whether a transaction is a loan.

36

amount of payments "at its sole discretion and as it deems appropriate." *Id.* (emphasis omitted). This Reconciliation Clause grants the withdrawing party no such discretion and instead provides for a mandatory decrease in the withdrawal amount if certain other conditions are met.

*Pearl Delta Funding, LLC v. Ill. Collection Serv., Inc.,* No. 2:23-cv-01153 (FB) (ST), 2023 U.S. Dist. LEXIS 206803, at *5 (E.D.N.Y. Nov. 17, 2023). This is exactly the case here. (A-80, § 1.3) ("Within five days after Purchaser's reasonable verification of the Reconciliation Information, Purchaser **shall** adjust the Remittance Amount on a going-forward basis to more closely reflect the Seller's actual Future Sales Proceeds times the Purchased Percentage.") (emphasis added).

Moreover, the trial court's assertion, that the cited New York state authority which holds that the Fora agreement is not a loan, "conflicts with the limited precedent available from the Second Circuit" (SPA-13) is, too, mistaken. In this regard, the trial court, while noting in cursory fashion that "many state trial courts have found that MCA agreements like the one in this case are not loans," asserted that "a number of federal courts have reached the opposite conclusion, including several in this district. *See, e.g., Inventory Generation Inc. v. Proventure Cap. Funding LLC*, No. 22-CV-10529, 2023 WL 2609344, at *5-6 (S.D.N.Y. Mar. 23, 2023) (granting a preliminary injunction where plaintiff challenged an MCA agreement as "criminally usurious, fraudulently induced, unconscionable, and illegal"); *Stellar Beach Rentals,* 2023 WL 4421809, at *1 (granting a preliminary

37

injunction where "[t]he gravamen of the allegations in Plaintiffs' complaint is that Defendants offer MCA contracts that are . . . effectively usurious loans"); *PrecisionWorks,* No. 22-CV-8290, ECF No. 29 (granting a TRO based on similar allegations)." (SPA-10).

Here, once again, the trial court's cases do not, upon inspection, support its position. For instance, the *Inventory Generation* decision cited contains no usury analysis whatsoever; indeed, while the cited decision refers to an earlier order that granted a preliminary injunction, the decision itself pertains to the defendants' motion to compel arbitration, which the court granted. Notably, the court's decision explicitly states that its preliminary injunction was granted unopposed, upon a non-appearance. *Inv. Generation Inc. v. Proventure Capital Funding LLC,* 2023 U.S. Dist. LEXIS 49862, at *11 (S.D.N.Y. Mar. 23, 2023) ("….On January 3, 2023, the Court held the show cause hearing. The MCA Receivables defendants did not appear. The same day, the Court converted the temporary restraining order into a preliminary injunction. Dkt. 23."). Thus, *Inventory Generation* is not, in fact, in any 'conflict' whatsoever with New York state authority holding that **the Fora agreement** is not a loan, for the precise reason that the *Inventory Generation* court performed no usury analysis whatsoever.[22]

---

[22] Indeed, the irony of the trial court's quotation of allegations in *Inventory Generation* is that the *Inventory Generation* Court was referring to those allegations as the basis for its decision to grant the Defendant PCF's motion to compel arbitration. *See Inv. Generation Inc. v. Proventure Capital*

The trial court's reliance on *Stellar Beach* fares no better; the *Stellar Beach* court's holding that there were "serious questions going to the merits of [the] case" did not turn on a usury analysis, but rather that the "Plaintiffs ha[d] presented serious questions on their 42 U.S.C. § 1983 claims, which are based on the misuse of a Connecticut prejudgment attachment statute, Conn. Gen. Stat. Ann. § 52-278f. (Doc. 1 ¶¶ 222-41.)." *Stellar Beach Rentals, LLC v. Redstone Advance, Inc.,* No. 23-CV-955 (VSB), 2023 U.S. Dist. LEXIS 120158, at *9 (S.D.N.Y. July 8, 2023). Similarly, in granting the TRO in *PrecisionWorks,* the Court was not addressed with usury arguments as to the underlying agreements, nor did it rule based on same.[23] Moreover, *PrecisionWorks MFG* was resolved before preliminary injunction proceedings took place, and as such there was no further consideration by the court of any of the relevant issues.  Which is all to say: these cases cited by the trial court do not support its assertion that "federal courts have reached the [ ] conclusion" that "MCA agreements like the one in this case are [ ] loans."  (SPA-10).

---

*Funding LLC*, 2023 U.S. Dist. LEXIS 49862, at *16 (S.D.N.Y. Mar. 23, 2023).  The same result should already have followed here in connection with Fora's Motion to Dismiss and Compel Arbitration, and these arguments could have been – and should still be – addressed by the arbitrator.

[23] *See PrecisionWorks MFG, LLC v. Union Funding Source, Inc.*, No. 22-CV-8290 (S.D.N.Y.), D.E. 29 (signed Order to Show Cause, referring to oppositions at docket entries 13 and 14); D.E. 13 (letter objection of Union Funding Source, Inc., containing no usury or irreparable harm argument); D.E. 14 (letter objection of Fundamental Capital LLC, advancing only an 'irreparable harm' argument).

As for the agreement involved in *this* case, the trial court's analysis of its provisions misses the mark entirely. The trial court claims that

> The reconciliation provision "vests substantial discretion" in the lender, including the ability "to obtain from the merchant further documentation as a procedural pretext for denying reconciliation."

(SPA-13) (*quoting Haymount*). The trial court is simply wrong, as the provision does not vest substantial discretion in Fora; the provision is explicitly mandatory, and, as described above, contains an explicit 'reasonableness' standard for verifying information provided by the merchant. (A-80 § 1.3). As for the trial court's hypothetical speculation, that a process involving receipt of financial information so as to perform required financial calculations, could be used as a "procedural pretext for denying reconciliation" (SPA-13), there is nothing to support the proposition that such speculation can somehow turn a receivables purchase agreement into a loan; it is certainly not sufficient support for ignoring New York's state usury law that have found that the provisions of *this* Agreement satisfy New York's three-factor test and, accordingly, *this* Agreement is not a loan.

The trial court's usury analysis proceeds by pointing to the allegation that "Fora also allegedly violated the reconciliation provision ...." (SPA-13). This encapsulates well a fundamental error in reasoning of the trial court's usury analysis: the trial court has mistaken allegations which could potentially form the basis for a breach of contract claim for allegations that establish that an agreement is usurious

where it is plainly not, on its face. (SPA-13) ("While Fora claims that the contract facially complies with the three-factor test, 'the actual operation of the contract[] muddies this picture.' *Haymount*, 609 F. Supp. 3d at 248.").[24] Indeed, this premise of the trial court's decision – which appears to rest in part on the assertion that alleged non-compliance with a reconciliation provision can retroactively convert a transaction into a loan – is a fundamental conceptual error that the Western District of New York, Eastern District of New York, and New York state courts, have noted. *See OriginClear Inc. v. GTR Source, LLC,* 2021 U.S. Dist. LEXIS 239013, at *17 (W.D.N.Y. Dec. 14, 2021 ("Such allegations may be sufficient to show that Defendants breached the terms of the agreements, but the Court does not find that such conduct rendered the [reconciliation] provisions illusory."); *see also Pearl Delta Funding, LLC v Illinois Collection Serv., Inc.,* 2023 U.S. Dist. LEXIS 206803, at *5 (E.D.N.Y. 2023) ("Defendants point to no authority to show that the improper exercise of a Reconciliation Clause means that the clause was 'bogus'," rejecting

---

[24] N.B. The trial court's reliance, like the Appellee's reliance below, on *Haymount Urgent Care PC v. GoFund Advance*, 2022 WL 2297768 (S.D.N.Y. 2022) is misplaced. There, tellingly, the Southern District cited for support a *dissent* from *Plymouth Venture Partners, II, L.P. v. GTR Source, LLC*, 163 N.Y.S.3d 467 (2021), a relevant New York State Court of Appeals decision upholding a similar agreement as not usurious, and *Davis v. Richmond Capital Grp.*, 150 N.Y.S.3d 2, 4 (1st Dept. 201)*,* an outlier New York appellate division decision, which is not followed by the great majority of courts in this state. The *Haymount* Court thus ignored the great mass of binding New York State precedent on the relevant usury analysis. Notable, also, in *Davis* the reconciliation provision was discretionary, where here it is mandatory, thus further removing this case from the ambit of these outlier decisions. *See, e.g., Singh v. LCF Grp., Inc.,* 2023 NY Slip Op 33014(U), ¶ 13 (Sup. Ct.) (distinguishing *Davis* on this basis). Suffice to say that *Haymount* suffers from the same conceptual error outlined above, and is thus doubly unpersuasive.

argument that the "actions of the Plaintiff post-exercise [of the Reconciliation Clause] show that the [RPA] is usurious"); *see also FCI Enters. Inc. v Richmond Capital Group, LLC*, 2019 NY Slip Op 30711[U] (Sup. Ct. Kings 2019) (explaining that "[t]he mere fact the complaint alleges the defendants failed to honor the reconciliation provisions of the agreement does not thereby render the debt as unenforceable under the RICO statute. If the agreement was not usurious at the outset no subsequent conduct can ab initio render the agreement usurious.").

The trial court's analysis of the bankruptcy factor was similarly infirm:

> Fora also argues that it has no recourse in bankruptcy. But that is not what the agreement says. Rather, the agreement states only that Division 5's "going bankrupt or going out of business, *in and of itself*, does not constitute a breach of this Agreement." (ECF No. 19-2 § 1.1(d) (emphasis added).) The agreement goes on to contemplate Fora's "enforcement of its rights . . . in connection with any bankruptcy proceeding." (Id. § 6.2.) It does not, then, clearly grant Division 5 an escape mechanism in bankruptcy.

(SPA-14) (emphasis in original). The trial court does not explain why it chose to emphasize 'in and of itself', but it is, perhaps, best characterized as yet another strawman, akin to that attacked in connection with the agreement's reconciliation provision. Consider two scenarios: if a merchant goes bankrupt in the ordinary course, there is no default under the agreement, as the Agreement so provides (*see* A-82 – A-83, § 6.1, Events of Default, not listing bankruptcy); but if the merchant diverts all its assets to a new business, and puts the original business into bankruptcy,

that, of course, would not relieve the merchant of its obligations. Which is to say –
any suggestion by the trial court that there is something nefarious lurking in the
phrase "in and of itself" is both unsupported, and nonsensical. Thereafter, the trial
court's misleading interpretation of § 6.2 (SPA-14) misses the mark, as well; section
6.2 (A-83) is addressed to the funder's rights ***upon a default*** – as such, it does not
speak to whether bankruptcy in the ordinary course excuses performance.[25]

Notably, recent decisions of New York courts have declined to follow the line
of federal cases with which the trial court's decision apparently seeks to align itself.
For instance, in *National Risk Experts, LLC et al. v. GHI Funding, et al.,* the Court
expressly declined to follow the Southern District's decision in *Fleetwood Services,
LLC v. RAM Capital Funding, LLC, et al.,* Case No. 20-cv-5120 (S.D.N.Y), stating
to the plaintiffs "I know you cited from a Southern District case which you believe
helps to keep the case alive. This Court's view is that the binding precedents of this
state indicate otherwise." 2022 N.Y. Misc. LEXIS 4478, at *4 (Sup. Ct. 2022).[26]

---

[25] The trial court cited to "§ 6.2" of the Agreement. Section 6.2 is "Purchaser's Rights Upon Any
Event of Default." (SPA-14). The subsection that the trial court was quoting from, without
providing a full quote or the necessary context, was specifically § 6.2(d) ("Purchaser may charge
and recover from Seller the additional fees, including [various fees and costs] incurred by
Purchaser in connection with the defense, protection or enforcement of its rights under this
Agreement (including, without limitation, in connection with any bankruptcy proceeding) and any
other fees that may be due and owing…"). (A-83).

[26] *Fleetwood* would provide no help to Appellee here, either. Unlike the contractual provisions at
issue in *Fleetwood Servs., LLC v. Ram Capital Funding, LLC*, here bankruptcy in the ordinary
course is not a default, and here, unlike in *Fleetwood*, if there were no receivables generated and
collected, the Plaintiff had no payment obligation or liability, and, consequently, Fora bore risk of
loss. *See Fleetwood,* 2022 U.S. Dist. LEXIS 100837 (S.D.N.Y. June 6, 2022) (*Fleetwood*), at *39

The Court further explained that "the transaction at issue is not a loan. It is a merchant cash advance, **which the courts of our state have continually held is not a loan**." *Id.* (emphasis added).

Another decision from the New York Supreme Court, Commercial Division, serves to put the issue in stark relief. In *Singh v LCF Group, Inc*., the Court rejected usury arguments relying on the federal decisions that Appellee has relied on in this action, and with which the trial court's decision aligns itself. The Court explained that the federal decisions added a heightened scrutiny that was contrary to controlling appellate authority in New York:

> The Court also notes that several recent federal cases—many of them cited by Plaintiff—have applied what appears to be a heightened level of scrutiny to merchant cash advance agreements. But that is not the law of this state.
>
> Accordingly, unless and until binding precedent provides additional guidance in determining if and when merchant cash advance agreements are disguised loans, the Court must apply controlling New York State case law. Similarly, the Court will follow the weight of the authority of the trial courts—which, as evidenced by Defendants' footnote listing over seventy supporting state court decisions, has largely declined to find agreements for the purchase of future receivables to be loans. As set forth above, the Court has closely considered the transactions in their totality and weighed the LG Funding factors in

---

(S.D.N.Y. June 6, 2022) ("The Agreement contains provisions that provide recourse for Richmond against Fleetwood and its guarantors in the case of Fleetwood declaring bankruptcy. In the Fleetwood Agreement, Fleetwood's written admission of its inability to pay debts or its bankruptcy or insolvency each constitutes an 'Event of Default'…").

> determining that the monies advanced by LCF were not absolutely repayable.

*Singh v LCF Group, Inc*., 2023 NY Slip Op 33014[U], \*30 (Sup. Ct. Nassau Cnty. 2023). In fact, in *Fleetwood Servs., LLC v. Richmond Capital Grp., LLC*, 2023 U.S. App. LEXIS 14241 (2d Cir. 2023)[27], this Court rejected *sub silencio* the same analysis that the trial court adopted in favor of the three factor test that Fora relies upon herein.

The trial court's decision – by ignoring the multitude of decisions from New York state courts holding that *this* very Fora Agreement is not a loan *as a matter of law*, and ignoring the binding appellate precedent that has held that agreements with materially identical terms are not loans, as a matter of law – runs afoul of these precepts. In doing so, the trial court committed reversible error.

---

[27] That case involved a contract that failed the three-factor test on its face because the reconciliation provision explicitly provided that it would be in "Richmond's 'sole discretion'" and that Richmond had full recourse even in bankruptcy.

## CONCLUSION

The trial court's holding that Appellee had established irreparable harm was a clear error of law requiring reversal, because the trial court rested its Decision on two conclusory paragraphs in a self-serving affidavit, without the Appellee having proffered any actual evidence whatsoever to substantiate its claims as to an irreparable threat to its business. The trial court's holding that there exists a serious question as to the merits of Appellee's claim for a declaratory judgment, which seeks a declaration that Appellant's UCC Notices are void because the Agreement is a usurious loan, is a clear error of law requiring reversal, because (1) it is contrary to black-letter law of the State of New York which holds that parties cannot bring affirmative claims based on usury allegations, and (2) under controlling New York law, the underlying Agreement is not a loan as a matter of law. Accordingly, the Court should reverse the Opinion and Order of the District Court granting the preliminary injunction.

Dated:      February 14, 2025

> /s/ Christopher R. Murray
> Christopher R. Murray, Esq.
> Murray Legal, PLLC
> Attorney for Appellant
> Fora Financial Advance, LLC
> 170 Old Country Rd., Suite 608
> Mineola, New York 11501
> Tel: (516) 260-7367
> E-mail:
> cmurray@murraylegalpllc.com

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume of Fed. R. App. R. P. 32(a)(7)(B)(i) because this brief contains 12,986 words, excluding the parts of the brief exempted by Fed. R. App. R. 32(a)(7)(B)(iii). 2, This brief complies with the typeface requirements of Fed. R. App. R. P. 32(a)(5) and the type style requirements of Fed. R. App. R. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word 2010 in Times New Roman 14-point font.

Dated:        February 14, 2025

<div style="margin-left: 50%">

/s/ Christopher R. Murray
Christopher R. Murray, Esq.
Murray Legal, PLLC
Attorney for Appellant
Fora Financial Advance, LLC
170 Old Country Rd., Suite 608
Mineola, New York 11501
Tel: (516) 260-7367
E-mail:
cmurray@murraylegalpllc.com

</div>

**SPECIAL APPENDIX**

i

## TABLE OF CONTENTS

**Page**

Order of the Honorable J. Paul Oetken, dated
    October 11, 2024, Appealed From ........................ SPA-1

Opinion and Order of the Honorable J. Paul Oetken,
    dated November 4, 2024, Appealed From ............. SPA-2

SPA-1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DIVISION 5, LLC,

               Plaintiff,

       -v-

FORA FINANCIAL ADVANCE LLC,

               Defendant.

24-CV-6870 (JPO)

ORDER

J. PAUL OETKEN, District Judge:

For reasons to be stated in a forthcoming opinion, Plaintiff's motion for a preliminary

injunction (ECF No. 5) is GRANTED. During the pendency of this action, or any arbitration

proceedings, Defendant is enjoined from issuing any UCC lien letters to any of Plaintiffs

customers or to any other third party that might be holding assets belonging to or owed to

Plaintiff, and Defendant is directed to withdraw any lien letter previously sent, any such lien

letter being null and void. Defendant is likewise enjoined from employing any methods of

enforcement or collection of any debt allegedly owed by Plaintiff to Defendant, including but not

limited to UCC liens. Should the parties proceed in this action through binding arbitration, a

duly appointed arbitrator or arbitral panel shall have the authority to modify or dissolve this

injunction. This injunction is subject to modification by subsequent court order on a showing of

good cause.

As discussed in the telephone conference on October 11, 2024, Plaintiff's counsel is

directed to promptly alert the Court via letter should Plaintiff's business cease operating.

SO ORDERED.

Dated: October 11, 2024
      New York, New York

                                J. PAUL OETKEN
                         United States District Judge

SPA-2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DIVISION 5, LLC,<br><br>                          Plaintiff,<br><br>             -v-<br><br>FORA FINANCIAL ADVANCE, LLC,<br>                          Defendant. | 24-CV-6870 (JPO)<br><br><u>OPINION AND ORDER</u> |

J. PAUL OETKEN, District Judge:

On October 11, 2024, the Court granted a motion for a preliminary injunction filed by

Plaintiff Division 5, LLC ("Division 5") against Defendant Fora Financial, LLC ("Fora") barring

Fora from collecting on a debt owed to it by Division 5 under a Merchant Cash Advance

("MCA") agreement.  (ECF No. 27.)  Division 5 argued that the contract violates New York

usury laws and is therefore unenforceable, that Fora breached the contract, and that Fora

fraudulently induced Division 5 to sign the contract.  In its order issuing the preliminary

injunction, the Court stated that its reasons would be explained in a forthcoming opinion.  This is

that opinion.

## I.    Background

The following facts are taken from the parties' sworn declarations and are uncontradicted

unless otherwise indicated.  This case concerns a dispute over what is commonly called a

"Merchant Cash Advance" agreement, in which a company receives a short-term, lump-sum

payment in exchange for a promise to deliver a fixed percentage of its future accounts receivable.

Plaintiff Division 5, a business specializing in "structural steel and miscellaneous metals

fabrications and installation for general contractors and construction managers" (ECF No. 5-2

("Barker Dec.") ¶ 2), executed such an agreement with Defendant Fora Financial Advance, LLC

on June 29, 2023 (Headley Dec. ¶¶ 4, 6).  Division 5 is owned by Conrad Barker, based in Connecticut, and has been in business for 11 years.  (*Id.* ¶¶ 1-2.)

In April 2023, Barker began receiving unsolicited emails from Victor Dweck "wanting to speak with [him] about providing a loan" to Division 5.  (*Id.* ¶ 3.)  In his initial email, Dweck informed Barker that "when his company loans, they never file UCC liens against the business." (*Id.*; *see also* ECF No. 5-4 at 2-3.)  Barker, following Dweck's guidance, submitted an application and supporting documentation, after which Dweck informed Barker that he "was approved for a $350,000 loan with a term of 15½ months, and that [he] would be receiving a call from [Fora]."  (Barker Dec. ¶ 5.)  Barker spoke with a representative of Fora and, while on the phone with the representative, signed an electronic contract through DocuSign.  (*Id.*)  While Barker declares that Fora "did not give [him] the opportunity to review the contract" and "just told [him] to click in all of the DocuSign boxes," a transcript of the call provided by Fora shows that Barker acknowledged having "read and understood the terms and conditions of the purchase and sale of future receivables agreement," and that he signed the agreement before joining the call.  (ECF No. 19-5 at 3.)  Barker claims that, on the call, Fora referred to the transaction as a "loan of $354,200 with a payback of 12% of the principal, and that [Barker] would have to make initial weekly payments of $8,112.33."  (Barker Dec. ¶ 5.)  The call transcript shows that Fora described the transaction as "purchasing $502,964 of [Division 5's] future receivables for a purchase price of $354,200," and explained that "[t]he purchase percentage of this agreement is 12 percent of your future receivables."  (ECF No. 19-5 at 4.)  Fora stated that "[t]he remittance amount is going to be $8,112.33 and this is going to be remitted weekly."  (*Id.*)

Following the call, Fora wired $343,574—the purchase price less a fee disclosed to Barker on the call—to Division 5.  (ECF 19-1 ("Headley Dec.") ¶ 6.)  Fora then began debiting

weekly payments from Division 5's bank account (Barker Dec. ¶ 7), ultimately totaling $312,741.51 before Division 5 stopped paying. (Headley Dec. ¶ 8.) In the latter half of 2023, Division 5's business began to slow and, in October, Barker requested a reduction in his weekly payments, also called a "reconciliation." (Barker Dec. ¶ 7.) Following a second request in November 2023, Fora reduced Division 5's weekly payments to $4,877.64. (*Id.* ¶ 8; *see also* ECF No. 19-4 ("Transaction History") at 2.) In February 2024, Fora raised Division 5's payments back to $8,112.33. (Transaction History at 2.) In April, Barker again requested a reconciliation, and Fora reduced the payments to $2,201.93. (*Id.*) In May, Fora raised the payments again, first to $5,631.08, and then back to the original amount of $8,112.33. (*Id.* at 3.) Neither party in their declarations contends that Fora formally requested a reconciliation when it raised Barker's weekly payments.

Starting in July, Fora's weekly debits from Division 5's accounts began bouncing due to lack of funds, causing Barker to incur bank fees. (*Id.* ¶ 10.) Barker "continued to call and leave messages for [Fora], all of which were ignored." (*Id.*) In August, Barker closed Division 5's bank account because he "was concerned that the bank would initiate some sort of fraud inquiry." (*Id.*) Fora then contacted Barker informing him that he was in breach of contract and demanding information for an alternate bank account. (*Id.* ¶ 11.) When Barker did not provide one, Fora mailed UCC lien notices to several of his customers. (*Id.* ¶ 11; *see also* ECF No. 13 ("TRO Trans.") at 4.) The liens covered approximately $90,000 in unpaid revenue and allegedly placed Division 5 at risk of an immediate shutdown. (Barker Dec. ¶¶ 12-13.)

On September 11, 2024, Division 5 filed a Complaint alleging a violation of New York's criminal usury laws, breach of contract, and common-law fraudulent inducement, invoking this Court's diversity jurisdiction. (ECF No. 1 ("Compl.").) On the same day, it filed an emergency

motion for a temporary restraining order ("TRO") and preliminary injunction (ECF No. 5),

which Fora opposed via letter on September 12 (ECF No. 9).  The Court granted the TRO

request.  (ECF No. 10.)  Fora then filed a motion to compel arbitration and dismiss the complaint

on September 20 (ECF No. 15), as well as a memorandum of law opposing the extension of the

TRO into a preliminary injunction on October 1 (ECF No. 19 ("PI Opp.")).  Division 5 replied in

support of its request for a preliminary injunction on October 8 (ECF No. 24), and opposed the

motion to compel arbitration and dismiss the complaint on October 11 (ECF No. 26).  Fora

replied in support of its motion to compel arbitration and dismiss the complaint on October 25.

(ECF No. 30.)  After a telephonic hearing on October 11, 2024, the Court granted Division 5's

request for a preliminary injunction barring Fora from attempting to collect on its UCC liens,

declaring the liens null and void, and enjoining Fora from using any alternate methods to collect

on the debt owed by Division 5.  (ECF No. 27.)  This opinion explains the reasoning for that

injunction.

**II.    Legal Standard**

A party seeking a preliminary injunction must show "(1) irreparable harm; (2) either a

likelihood of success on the merits or both serious questions on the merits and a balance of

hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the

public interest."  *RiseandShine Corp. v. PepsiCo, Inc.*, 41 F.4th 112, 119 (2d Cir. 2022) (quoting

*N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018)).

**III.   Discussion**

The Court rests its decision to issue a preliminary injunction on Division 5's usury claim

and therefore does not address its contract and fraud claims at this time.

4

SPA-6

### A.     Irreparable Harm

"Irreparable harm is 'the single most important prerequisite for the issuance of a preliminary injunction.'"  *Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 233-34 (2d Cir. 1999) (quoting *Bell & Howell: Mamiya Co. v. Masel Supply Co.*, 719 F.2d 42, 45 (2d Cir. 1983)).  "The movant must demonstrate an injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages."  *Id.* (quoting *Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 332 (2d Cir. 1995)).

Division 5 argues, based on its owner's sworn declaration, that it faces imminent collapse of its business if Fora is permitted to enforce its UCC liens.  (Barker Dec. ¶¶ 13-14.)  Fora responds that this claim is "conclusory," as it is unaccompanied by financial documentation and does not show why the $90,000 covered by the liens is essential to Division 5's solvency.  (PI Opp. at 10.)  To the extent Fora is suggesting that the Court cannot consider Plaintiff's sworn declarations, it is wrong.  *See, e.g.*, *Lost Lake Holdings LLC v. Town of Forestburgh*, No. 22-CV-10656, 2023 WL 8947154, at *1 n.1 (S.D.N.Y. Dec. 28, 2023) (rejecting the same argument).  While Fora might have a persuasive objection at trial, "a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits."  *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981).  Barker's declaration provides sufficient details of the business's circumstances to convince the Court at this stage.  It states that Division 5's customers received lien notices and stopped paying, provides an amount of outstanding revenue, and states a timeframe for the business' shutdown.  (Barker Dec. ¶¶ 11-13; .)  Division 5 also paid weekly debits for nearly a year, only stopping once the payments began bouncing for lack of funds.  (*Id.* ¶¶ 7-10.)  Due to the bounces, Division 5 incurred bank fees that further harmed its business.  (*Id.* ¶ 10.)  The amount ostensibly owed to Fora—over $190,000—is also more than double the $90,000 that was

covered by its UCC lien notices.  (Headey Dec. ¶ 8.)  Were Fora aware of additional customers whose payments Division 5 could use to sustain operations, it is doubtful that Fora would have voluntarily refrained from sending lien notices to those customers.

Numerous "courts in this district have found that asset freezes imposed by defendants in MCA cases which threaten a plaintiff's business with collapse show irreparable harm."  *Stellar Beach Rentals, LLC v. Redstone Advance, Inc.*, No. 23-CV-955, 2023 WL 4421809, at *3 (S.D.N.Y. July 8, 2023) (collecting cases); *see also PrecisionWorks MFG, LLC v. Union Funding Source, Inc.*, No. 22-CV-8290, 2022 WL 16857360, at *1 (S.D.N.Y. Oct. 25, 2022) (granting a TRO).  This "aligns with the broader principle that 'when the potential economic loss is so great as to threaten the existence of the moving party's business, then a preliminary injunction may be granted, even though the amount of direct financial harm is readily ascertainable.'"  *Stellar Beach Rentals*, 2023 WL 4421809, at *3 (quoting 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948.1, p. 157 (3rd ed. 2013)).

Because the facts in Barker's declaration, particularly the lack of any incoming revenue while the lien notices were valid, establish a risk of collapse, Division 5 has adequately shown a risk of irreparable harm.

### B.    Serious Questions / Balance of Hardships

Division 5 must next show *either* a likelihood of success on the merits *or* a combination of a favorable balance of hardships and serious questions worth litigating.  *RiseandShine Corp.*, 41 F.4th at 119.  Here, the balance of hardships decidedly favors the movant.  Division 5 faces a complete collapse of its business due to its inability to make payroll, purchase supplies, and pay employee health insurance and other essential expenses.  (Barker Dec. ¶ 13; ECF No. 13 at 3:2-20.)  Fora, on the other hand, faces only a delay in the payment of Division 5's debt—an injury most appropriately remedied with money damages.  *See Conn. Mun. Elec. Energy Coop. v. Nat'l*

*Union Fire Ins. Co. of Pittsburgh*, No. 19-CV-839, 2022 WL 3716445, at *5 (D. Conn. Aug. 29,

2022) ("Absent some . . . harm beyond the mere delay in payment, [non-movant] has failed to

establish that its injury cannot be compensated by monetary damages." (emphasis in original));

*see also Quantum Corp. Funding, Ltd. v. Assist You Home Health Care Servs. of VA.*, 144 F.

Supp. 2d 241, 249 (S.D.N.Y. 2001) (freezing the defendant's assets where "the injunction would

ensure that [plaintiff] would be paid in the future should it prevail, but it would not shut down

[the defendant's] corporations").  Division 5 is also a much smaller business than Fora, which

weighs in Division 5's favor.  *See Shred-It, USA, Inc. v. Mobile Data Shred, Inc.*, 202 F. Supp.

2d 228, 234 (S.D.N.Y. 2002) (comparing the risk of harm to a "relatively small business" and a

"large international business").  And Fora provides no evidence that Division 5 will become

insolvent or dissipate its funds if allowed to keep receiving payments from its customers—rather,

it is Fora's lien notices that are allegedly threatening Division 5 with collapse.  Accordingly,

Division 5 need only prove that it has raised serious legal questions.  It has met that burden.

New York's civil usury prohibitions are contained in General Obligations Law §§ 5–501,

5–511, and 5–521, and Banking Law § 14–a (1).  Its criminal usury prohibition is contained in

Penal Law § 190.40.  The criminal prohibition makes it a "class E felony when, without other

legal authorization, the lender, 'knowingly charges, takes or receives any money or other

property as interest on the loan or forbearance of any money or other property, at a rate

exceeding 25% per annum or the equivalent rate for a longer or shorter period'."  *Adar Bays,*

*LLC v. GeneSYS ID, Inc.*, 37 N.Y.3d 320, 326 (2021) (quoting N.Y. Penal Law § 190.40)

(brackets omitted).  "[I]f [a] borrower establishes the defense of usury in a civil action, the

usurious loan transaction is deemed void and unenforceable," and the "same result obtains when

the 25% interest rate cap set forth in Penal Law § 190.40 . . . applies to a loan to a corporation

and the interest charged on the loan exceeds that cap." *Id.* "Without doubt, New York's voiding

of usurious contracts can be harsh . . . but the penalty reflects the legislature's consistent

condemnation of the evils of usury." *Id.* at 332 (quotation marks omitted).

Here, Division 5 has alleged, and Fora does not deny, that the effective interest rate in the

MCA agreement exceeds the 25% cap.  Defendant argues, however, that there is no usury

because the agreement is not a loan.  *See LG Funding, LLC v. United Senior Props. of Olathe,*

*LLC*, 122 N.Y.S.3d 309, 312 (2d Dep't 2020) ("[W]here there is no loan, there can be no usury,

however unconscionable the contract may be.").  New York courts have adopted a holistic,

totality-of-circumstances test to determine "whether a transaction constitutes a usurious loan."

*Id.*  The crux is whether the putative lender "is absolutely entitled to repayment under all

circumstances"—in which case the transaction is a loan—or whether repayment is contingent.

*Id*. (quoting *K9 Bytes, Inc. v. Arch Cap. Funding, LLC*, 57 N.Y.S.3d 625, 632 (Sup. Ct.

Westchester Cnty. 2017)).  Courts typically "weigh three factors when determining whether

repayment is absolute or contingent: (1) whether there is a reconciliation provision[1] in the

agreement; (2) whether the agreement has a finite term; and (3) whether there is any recourse

should the merchant declare bankruptcy," but the transaction "must be 'considered in its totality

and judged by its real character, rather than by the name, color, or form which the parties have

seen fit to give it.'"  *Id.* (quoting *Abir v. Malky, Inc.*, 873 N.Y.S.2d 350, 354 (2d Dep't 2009)).

The Second Circuit has emphasized that "'substance—not form—controls' when a court

determines whether a transaction is a loan."  *Fleetwood Servs., LLC v. Richmond Cap. Grp. LLC*,

No. 22-1885, 2023 WL 3882697, at *2 (2d Cir. June 8, 2023) (quoting *Adar Bays*, 37 N.Y.3d at

---

[1] Reconciliation is a consensual modification of scheduled payments, typically based on changes in receivables.  *See K9 Bytes, Inc. v. Arch Cap. Funding, LLC*, 57 N.Y.S.3d 625, 632 (N.Y. Sup. Ct. 2017).

334) (citing *O'Donovan v. Galinski*, 878 N.Y.S.2d 443, 444–45 (2d Dep't 2009) ("In

determining whether a transaction is usurious, the law looks not to its form, but its substance, or

real character." (quotation marks omitted)).

While many state trial courts have found that MCA agreements like the one in this case

are not loans, *see, e.g.*, *Fora Financial Funding, LLC v. Nathan's Realty, LLC*, 2024 N.Y. Misc.

LEXIS 3005, at *2 (Sup. Ct. Nassau Co. 2024),[2] a number of federal courts have reached the

opposite conclusion, including several in this district.  *See, e.g.*, *Inventory Generation Inc. v.*

*Proventure Cap. Funding LLC*, No. 22-CV-10529, 2023 WL 2609344, at *5-6 (S.D.N.Y. Mar.

23, 2023) (granting a preliminary injunction where plaintiff challenged an MCA agreement as

"criminally usurious, fraudulently induced, unconscionable, and illegal"); *Stellar Beach Rentals*,

2023 WL 4421809, at *1 (granting a preliminary injunction where "[t]he gravamen of the

allegations in Plaintiffs' complaint is that Defendants offer MCA contracts that

are . . . effectively usurious loans"); *PrecisionWorks*, No. 22-CV-8290, ECF No. 29 (granting a

TRO based on similar allegations).

Fora raises two objections to the reasoning in these cases.  First, it argues that

corporations can raise criminal usury as a defense only in a legal action to collect a debt.  (PI

Opp. at 12.)  Second, it argues that the agreement here is not a loan.  (*Id.* at 13.)  The Court

addresses each in turn.

Although Penal Code § 190.40 permits "a corporation [to] interpose an affirmative

defense of usury and, if successful, obtain a declaration that invalidates the debt instrument <u>ab</u>

---

[2] Nearly all of the cases Defendant cites are from the Nassau County Supreme Court.
(*See* PI Opp. at 14 (collecting cases).)  Their reasoning is largely the same—that the challenged
agreements formally comply with the three factors announced in *LG Funding*, 122 N.Y.S.3d at
312, and that they must therefore be loans.  The cases do not engage in a substantive analysis of
how the agreements work in practice.

initio," "New York courts have uniformly construed this statute as limited to the affirmative

defense, and they have prohibited corporations from bringing affirmative claims or

counterclaims alleging criminal usury and seeking to invalidate an agreement." *Haymount*

*Urgent Care PC v. GoFund Advance, LLC*, 609 F. Supp. 3d 237, 254 (S.D.N.Y. 2022); *see also*

*Collins v. MCA Receivables, LLC*, No. 23-CV-353, 2024 WL 246111, at *4 (S.D.N.Y. Jan. 23,

2024) (same); *Streamlined Consultants, Inc. v. EBF Holdings LLC*, No. 21-CV-9528, 2022 WL

4368114, at *3 (S.D.N.Y. Sept. 20, 2022) (same); *accord Paycation Travel, Inc. v. Glob. Merch.*

*Cash, Inc.*, 192 A.D.3d 1040, 1041 (2021).  This is because it would be improper for a

corporation to "use a shield created by the Legislat[ure] as a sword." *Scantek Med., Inc. v.*

*Sabella*, 582 F. Supp. 2d 472, 474 (S.D.N.Y. 2008) (quoting *Zoo Holdings, LLC v. Clinton*, 814

N.Y.S.2d 893, 893 (Sup. Ct. 2006)); *see also Lloyd Cap. Corp. v. Pat Henchar, Inc.*, 80 N.Y.2d

124, 128 (1992) ("[F]orfeitures by operation of law are disfavored, particularly where a

defaulting party seeks to raise illegality [of a contract] as a sword for personal gain rather than a

shield for the public good." (quotation marks omitted)).  Accordingly, when plaintiffs have

sought to vacate previous judgments based on allegedly usurious loans, *see, e.g.*, *Paycation*, 192

A.D.3d at 1040, or declaratory judgments that such agreements are void, *see, e.g.*, *Collins*, 2024

WL 246111, at *4, state and federal courts have sided with defendants.

Here, however, Division 5 does not seek a declaratory judgment invalidating the

agreement, but rather a judgment invalidating Fora's UCC liens.  (Compl. ¶ 150.)  As far as the

Court is aware, such a request is a matter of first impression in both the state and federal courts,

and the parties were unable to locate any directly apposite case at the hearing held on October

11, 2024.  Looking at the history and purpose[3] of New York's usury laws, the Court is persuaded that Division 5 has at least raised a substantial question of whether they may be used in this way. Before 1965, "corporations were prohibited from interposing the defense of usury in any action." *Hammelburger v. Foursome Inn Corp.*, 54 N.Y.2d 580, 589 (1981) (quotation marks omitted). The exception allowing corporations to assert the defense of criminal usury was then added as a practical means of "curbing the loan-shark racket" and preventing lenders from circumventing the criminal usury law by "mak[ing] it a policy to loan to corporations" or forcing "individual borrowers . . . to incorporate before being granted a usurious loan." *Id.* at 589-90 (quoting N.Y. Legis. Ann., 1965, pp. 46–50).  Similarly, where a corporation is formed artificially in order to force an individual borrower to waive an otherwise valid usury defense, the New York Court of Appeals has held that the corporation may raise even the civil usury laws.  *Schneider v. Phelps*, 41 N.Y.2d 238, 239, 242 (1977).  In doing so, it expressly elevated substance over form, explaining that "[i]f form were to control, the creation of a corporation would, for all practical purposes, result in a waiver of the right to assert the usury defense," and "[t]he salut[a]ry commercial purpose of the corporation exemption would be a shield for the loan shark."  *Id.* at 242-43.

―――――――――――――――――――

[3] Notably, the text of the laws does not bar Plaintiff's strategy.  The underlying prohibition on the use of usury laws by corporations states that "[n]o corporation shall hereafter *interpose the defense* of usury in any action."  N.Y. Gen. Oblig. Law § 5–521(1) (emphasis added).  General Obligations Law § 5–521(3) then exempts the criminal usury prohibition contained in Penal Law § 190.40 from this bar, stating that subdivision (1) "shall not apply to any action in which a corporation interposes a defense of criminal usury."  As written, both the bar *and* the exception apply only to defenses, meaning that the plain text permits corporations to assert usury as an affirmative claim.  As a matter of common law, however, New York courts have barred corporations from doing so based on "the principle that a party may not accomplish by indirection what is directly forbidden to it."  *Intima-Eighteen, Inc. v. A.H. Schreiber Co.*, 172 A.D.2d 456, 457 (1st Dep't 1991).  Defendant may not, then, use the plain text of the statute to prove that the criminal usury prohibition cannot be extended in the way that Plaintiff suggests.

Allowing Division 5 to use the criminal usury law to void Fora's UCC liens fits well with this statutory scheme. Division 5 has not sought to invalidate the underlying MCA agreement or to recover already-paid interest. Rather, it wants to protect itself from future efforts to collect an illegal debt through the statutory mechanism of UCC lien letters. While, strictly speaking, a UCC lien is not a legal action, it accomplishes the same end while allowing the issuer to bypass the courts. To condone such practices would create the very kind of loophole that the New York legislature sought to eliminate. Division 5 has therefore at least raised a legitimate question as to whether the Court can issue its requested declaratory judgment.

Next, Fora argues that the MCA agreement is not a loan because it contains a reconciliation provision and lacks a fixed term, and because Division 5 need not pay if it declares bankruptcy. (PI Opp. at 14.) Fora also cites a string of Nassau County Supreme Court cases holding that Fora's standard contract is not a loan. (*Id.*) Such authority is not binding on this Court, and in any event conflicts with the limited precedent available from the Second Circuit and New York appellate courts. As both have made clear, the substance, not the form, of a contract determines whether it is a loan. *Fleetwood Servs.,* 2023 WL 3882697, at *2; *Abir*, 873 N.Y.S.2d at 354. While Fora claims that the contract facially complies with the three-factor test, "the actual operation of the contract[] muddies this picture." *Haymount*, 609 F. Supp. 3d at 248. The reconciliation provision "vests substantial discretion" in the lender, including the ability "to obtain from the merchant further documentation as a procedural pretext for denying reconciliation." *Id.* at 249. Fora also allegedly violated the reconciliation provision by ignoring timely requests and then reverting payments to a higher weekly sum without requesting further reconciliations of its own. (Barker Dec. ¶¶ 7-10.) Moreover, "the daily remittance amounts described in the MCA agreements and alleged to have been negotiated are fixed dollar amounts,

12

and the Complaint adequately alleges that these amounts appear not to be good faith estimates of

the merchant's receivables." *Haymount*, 609 F. Supp. 3d at 249.  This is reinforced by the fact

that Fora repeatedly returned Division 5's weekly payments to the exact same number at which

they started—unlikely the result of a true reconciliation based on actual estimates of receivables.

(*See* Transaction History at 2.)  Fora also argues that it has no recourse in bankruptcy.  But that is

not what the agreement says.  Rather, the agreement states only that Division 5's "going

bankrupt or going out of business, *in and of itself*, does not constitute a breach of this

Agreement."  (ECF No. 19-2 § 1.1(d) (emphasis added).)  The agreement goes on to contemplate

Fora's "enforcement of its rights . . . in connection with any bankruptcy proceeding."  (*Id.* § 6.2.)

It does not, then, clearly grant Division 5 an escape mechanism in bankruptcy.  Finally, looking

beyond the three factors, there are other indicia that the agreement operates as a loan.  Indeed,

the agreement even refers to itself as a loan on the first page.  (*Id.* at 1 ("Payment is due on the

first Tuesday after the Loan Disbursement Amount is disbursed to you.").)

  The Court therefore concludes that Division 5 has raised serious questions on the merits.

  **C.    Public Interest**

  Fora does not address the public interest in its opposition brief.  In any event, "the public

interest is clearly served by enforcing statutes designed to protect the public . . . ."  *Stellar Beach*,

2023 WL 4421809, at *3 (quoting by *Google LLC v. Starovikov*, No. 21-CV-10260, 2021 WL

6754263, at *4 (S.D.N.Y. Dec. 16, 2021)).  As explained above, New York's usury laws fall into

this category.  *See supra* § III.B.  The public interest factor therefore weighs in Plaintiff's favor.

  **D.    Arbitrability**

  As a final objection, Fora notes that the MCA agreement requires the parties to submit to

arbitration, arguing that this counsels against entering a preliminary injunction.  But it is well

settled in this circuit that "[w]here the parties have agreed to arbitrate a dispute, a district court

13

SPA-15

has jurisdiction to issue a preliminary injunction to preserve the status quo pending arbitration. *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 894-95 (2d Cir. 2015). "Were the Court to decline to consider [the plaintiff's] preliminary-injunction motion pending arbitration, much of the damage that [the plaintiff] seeks to prevent would occur in the time it takes for the arbitrator to be appointed, consider the issues, and deliver a final ruling . . . render[ing] arbitration a hollow formality." *Vortexa Inc. v. Cacioppo*, No. 24-CV-02065, 2024 WL 2979313, at *5 (S.D.N.Y. June 12, 2024) (quotation marks omitted). That said, in the interests of facilitating the arbitration process, should one commence, the preliminary injunction here is subject to later modification or dissolution by a duly appointed arbitrator. (ECF No. 27.)

### E.    Overall Weighing

Because Division 5 has demonstrated irreparable harm, shown serious questions going to the merits and a favorable balance of hardships, and because a preliminary injunction would serve the public interest, the Court grants Division 5's request. The Court will dispose of Fora's parallel motion to compel arbitration and/or dismiss the complaint (ECF No. 15) in due course.

## IV.    Conclusion

For the foregoing reasons, Plaintiff's motion for a preliminary injunction is GRANTED, as set forth at ECF No. 27.

SO ORDERED.

Dated: November 4, 2024
     New York, New York

_____
J. PAUL OETKEN
United States District Judge

14