**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**

Thurgood Marshall U.S. Courthouse  40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

**MOTION INFORMATION STATEMENT**

Docket Number(s): 24-2918

Caption [use short title]

Motion for: dismiss/stay appeal

Division 5, LLC v. Fora Financial Advance LLC

Set forth below precise, complete statement of relief sought:

Appellee moves to dismiss or stay the appeal

because Appellant moved to compel arbitration

which has been granted by the district court.

Appellant also seeks an extension of time to file

its reply brief, if necessary, until 2 days after a

decision on this motion.

MOVING PARTY: Division 5, LLC                OPPOSING PARTY: Fora Financial Advance LLC

☐ Plaintiff          ☐ Defendant

☐ Appellant/Petitioner          ☒ Appellee/Respondent

MOVING ATTORNEY: Jonathan E. Neuman, Esq.          OPPOSING ATTORNEY: Christopher R. Murray, Esq.

[name of attorney, with firm, address, phone number and e-mail]

Law Offices of Jonathan E. Neuman, Esq.,          Murray Legal PLLC

176-25 Union Turnpike, Suite 230, Fresh Meadows,          170 Old Country Road, Ste 608, Mineola, NY 11501

NY 11366, (347) 450-6710, jnesq@jenesqlaw.com          (516) 260-7367, cmurray@murraylegalpllc.com

Court- Judge/ Agency appealed from: S.D.N.Y. - Hon. J. Paul Oetken, U.S.D.J.

Please check appropriate boxes:

Has movant notified opposing counsel (required by Local Rule 27.1):
☒ Yes  ☐ No (explain):_____

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUCTIONS PENDING APPEAL:**

Has this request for relief been made below?  ☐ Yes ☒ No
Has this relief been previously sought in this court?  ☐ Yes ☒ No

Requested return date and explanation of emergency: _____

Opposing counsel's position on motion:
☐ Unopposed ☐ Opposed ☒ Don't Know
Does opposing counsel intend to file a response:
☐ Yes ☐ No ☒ Don't Know

Is the oral argument on motion requested?  ☐ Yes ☒ No (requests for oral argument will not necessarily be granted)

Has the appeal argument date been set?  ☐ Yes ☒ No  If yes, enter date:_____

Signature of Moving Attorney:

_____  Date: 6/6/25          Service : ☒ Electronic  ☐ Other [Attach proof of service]

Form T-1080 (rev. 10-23)

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**
-------------------------------------------------------------------X

DIVISION 5, LLC,                                   **DECLARATION IN**
                                                    **SUPPORT**

                Plaintiff-Appellee,

           -vs-                     Case Number: 24-2918

FORA FINANCIAL ADVANCE LLC;

                Defendant-Appellant.
-------------------------------------------------------------------X

       Jonathan E. Neuman, declares and affirms the following under penalty of

perjury:

       1.     I am the attorney for Plaintiff-Appellee ("Plaintiff") in the above-

captioned matter.  I submit this declaration in support of Plaintiff-Appellee's motion

to dismiss and/or stay this appeal.

       2.     On October 11, 2024, the District Court granted Plaintiff a preliminary

injunction, which is the subject of this appeal.  However, because Defendant-

Appellant ("Defendant") had a motion to compel arbitration pending, the District

Court explicitly ruled that "Should the parties proceed in this action through binding

arbitration, a duly appointed arbitrator or arbitral panel shall have the authority to

modify or dissolve this injunction."  A copy of the Court's Order is annexed hereto

as **EXHIBIT 1**.  The parties' contract likewise granted the arbitrator the authority to

determine matters of injunctive relief.  *See* Section 21 of **EXHIBIT 2** annexed

hereto.

3.      Thereafter, on May 30, 2025, the District Court granted Defendant's motion to compel arbitration and stayed this case.  A copy of the District Court's Order is annexed hereto as **<u>EXHIBIT 3</u>**.

4.      Meanwhile, on May 29, 2025, Defendant (the Claimant in the arbitration) moved before the Arbitrator to vacate/dissolve the injunction.  On May 30, 2025, the AAA informed the parties that the Arbitrator had determined that she would rule on the motion at the final hearing on the merits, which is scheduled to begin on July 29, 2025.  A copy of the email notifying the parties of this ruling by the Arbitrator is annexed hereto as **<u>EXHIBIT 4</u>**.

5.      In light of these developments, on June 4, 2025, I reached out to Defendant's counsel and asked "With respect to the appeal, now that arbitration has been compelled and you moved before the arbitrator to vacate and she denied for the time being, will you be withdrawing your appeal?"  Defendant's counsel ignored my email.

6.      Accordingly, in accordance with Local Rule 27.1(b), on June 5, 2025, I informed Defendant's counsel that I intended to move to dismiss or stay the appeal in light of arbitration being compelled and Defendant's concurrent motion to the arbitrator to dissolve the injunction.  I twice asked Defendant's counsel whether Defendant opposed the motion and whether Defendant intended to put in opposition papers.  Defendant's counsel ignored me both times.

7.      According to this Court's ACMS system, Plaintiff's opposition brief is due today.  However, because arbitration has been compelled for this matter and this matter has been stayed by the District Court, Plaintiff cannot submit its opposition.

8.      For the reasons discussed in the accompanying Memorandum of Law, it is respectfully submitted that the Court dismiss the appeal or stay the appeal pending the outcome of the arbitration, and that in the event the appeal remains necessary following the conclusion of the arbitration, that Plaintiff be given two days to submit its opposition brief following the lifting of the stay.


Dated: Fresh Meadows, New York
        June 6, 2025

                                         /Jonathan E. Neuman/
                                        JONATHAN E. NEUMAN, ESQ.
                                        *Attorney for Plaintiff-Appellee*
                                        176-25 Union Turnpike, Suite 230
                                        Fresh Meadows, New York 11366
                                        (347) 450-6710
                                        (718) 228-3689 (fax)
                                        jnesq@jenesqlaw.com

## MEMORANDUM OF LAW IN SUPPORT

Plaintiff-Appellee (hereinafter "Plaintiff") respectfully submits this Memorandum of Law in support of Plaintiff-Appellee's motion to dismiss and/or stay this appeal.

## PRELIMINARY STATEMENT AND RELEVANT FACTS

As is relevant to this motion, this is a case regarding a usurious merchant cash advance loan. After Defendant-Appellant (hereinafter "Defendant") served several UCC lien notices upon Plaintiff's customers, thereby freezing Plaintiff's revenues and imperiling the viability and very existence of the business, Plaintiff filed the instant suit asserting causes of action to declare that the lien notices were void based on the usurious nature of the underlying transaction, and additionally for breach of contract and fraudulent inducement. Plaintiff moved for a temporary restraining order and preliminary injunction, which was granted by the District Court. At the same time, Defendant moved to dismiss or compel arbitration, and Defendant also filed an arbitration against Plaintiff before obtaining any ruling on its motion to compel. The District Court explicitly stated in its order granting the preliminary injunction that any duly-appointed arbitrator would have the authority to modify or vacate the injunction.

Defendant thereafter filed this appeal. A week ago, the District Court granted the motion to compel arbitration and stayed this case. Separately, in the arbitration, the Defendant moved the arbitrator to vacate the injunction. The arbitrator issued a ruling that the application to vacate the injunction would be considered at the final hearing on the merits, which is scheduled to begin in less than 2 months on July 29, 2025.

Accordingly, it is respectfully submitted that this appeal should be dismissed, or at the very least stayed, since the issues involved have been compelled by motion of Defendant to be decided in arbitration, and moreover Defendant has already, in fact, submitted a motion to vacate the preliminary injunction to the arbitrator, who has already issued a decision in that regard deferring the motion to the final hearing on the merits.

## ARGUMENT

It is respectfully submitted that this appeal should be dismissed or stayed because arbitration of the case has been compelled by motion of Defendant, the District Court has explicitly left authority regarding the injunction to the arbitrator, and Defendant has in fact moved before the arbitrator to vacate the injunction. As such, it is respectfully submitted that Defendant has waived its right to appeal the lower court's grant of the injunction. *Compare Commerce & Indus. Ins. Co. v. Nester*, 90 N.Y.2d 255, 264, 660 N.Y.S.2d 366, 370, 682 N.E.2d 967, 971 (1997)

("Thus, we hold that a party forgoes its opportunity for appellate review of a denial of an application to stay arbitration when it proceeds to the arbitration without seeking temporary judicial relief pending the determination of the appeal, even if it believes that its request for such an interim stay will result in summary denial.") Because Defendant did not wait for a ruling from this Court on its appeal, but rather instead sought a determination from the arbitrator, Defendant has forgone its opportunity for appellate review. Since this matter has now been compelled to mandatory arbitration, and under the parties' agreement the arbitrator has the right to determine matters of injunctive relief, at this point any decision by this Court would be an advisory opinion. The Supreme Court has long understood the Constitution to "prevent[] the federal courts from issuing advisory opinions." *Carney v. Adams*, 592 U.S. 53, 58, 141 S. Ct. 493, 498 (2020).

Moreover, as this Court has ruled, under the FAA, a stay of all proceedings is now mandatory. *See, e.g.*, *Katz v. Cellco P'ship*, 794 F.3d 341, 345-46 (2d Cir. 2015):

> II. The Federal Arbitration Act Requires a Stay
>
> We join those Circuits that consider a stay of proceedings necessary after all claims have been referred to arbitration and a stay requested. The FAA's text, structure, and underlying policy command this result. Section 3 of the FAA provides:
>
>> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the

court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, *shall* on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis added). The plain language specifies that the court "shall" stay proceedings pending arbitration, provided an application is made and certain conditions are met. It is axiomatic that the mandatory term "shall" typically "creates an obligation impervious to judicial discretion." *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35, 118 S. Ct. 956, 140 L. Ed. 2d 62 (1998). Congress's "use of a mandatory 'shall' . . . impose[s] discretionless obligations." *Lopez v. Davis*, 531 U.S. 230, 241, 121 S. Ct. 714, 148 L. Ed. 2d 635 (2001). Nowhere does the FAA abrogate this directive or render it discretionary. And though courts may disregard a statute's plain meaning where it begets absurdity, *see Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296, 126 S. Ct. 2455, 165 L. Ed. 2d 526 (2006), that is manifestly not the case here.

Far from it. A mandatory stay comports with the FAA's statutory scheme and pro-arbitration policy. The statute's appellate structure, for example, "permits immediate appeal of orders hostile to arbitration . . . but bars appeal of interlocutory orders favorable to arbitration." *Green Tree*, 531 U.S. at 86. The FAA authorizes immediate interlocutory review of an order refusing to compel arbitration or denying a stay of proceedings; it would make little sense to receive a conclusive arbitrability ruling only after a party has already litigated the underlying controversy. *See* 9 U.S.C. § 16(a)(1)(A)-(B) ("An appeal may be taken from . . . an order . . . refusing a stay of any action under section 3 . . . [or from an order] denying a petition under section 4 . . . to order arbitration to proceed."). By contrast, the FAA explicitly denies the right to an immediate appeal from an interlocutory order that compels arbitration or stays proceedings. *See id.* § 16(b)(1)-(2) ("[A]n appeal may not be taken from an interlocutory order . . .

granting a stay of any action under section 3 . . . [or] directing arbitration to proceed under section 4."). The dismissal of an arbitrable matter that properly should have been stayed effectively converts an otherwise-unappealable interlocutory stay order into an appealable final dismissal order. Affording judges such discretion would empower them to confer appellate rights expressly proscribed by Congress.

For similar reasons, a mandatory stay is consistent with the FAA's underlying policy "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983). A stay enables parties to proceed to arbitration directly, unencumbered by the uncertainty and expense of additional litigation, and generally precludes judicial interference until there is a final award.

Here, Defendant moved to compel arbitration of all issues. That motion has now been granted by the District Court. As such, the FAA demands a stay of all proceedings, which would include this appeal, particularly since the issue of the injunction too has been explicitly referred to the arbitrator. Accordingly, were this Court to now rule on this appeal, the Court would be ruling on a matter that is no longer pending in the courts, and which instead has been referred to mandatory arbitration under the contract, as found by the District Court. As such, it is respectfully submitted that this appeal must be dismissed, because the issue will be moot by the time the arbitration is decided and the stay is lifted so that the matter can come back to the courts, because Defendant has explicitly made a motion to the arbitrator to vacate the injunction and the arbitrator has indicated that she will rule on such motion as

part of the hearing on the merits that will be taking place shortly. Since matters involving injunctive relief have been explicitly granted to the arbitrator under the parties' contract, and arbitration has been compelled by motion of the Defendant, there is no longer jurisdiction in the courts to determine matters relating to the injunction, which has now been explicitly referred to the arbitrator.

As such, the appeal must be dismissed. (At a bare minimum, however, the appeal should be stayed pending the conclusion of the arbitration, at which point, if necessary, it is respectfully submitted that Plaintiff should be granted two days to file its opposition brief, assuming that the matter is not then moot and advisory.)

## CONCLUSION

For all of the above reasons, it is respectfully submitted that Plaintiff's motion be granted in its entirety.

**WHEREFORE**, Plaintiff-Appellee respectfully requests that this Honorable Court grant Plaintiff-Appellee's motion in its entirety, together with such other, further, and different relief as to this Court may be just and proper.

Dated: Fresh Meadows, New York
       June 6, 2025

     /Jonathan E. Neuman/

JONATHAN E. NEUMAN, ESQ.
*Attorney for Plaintiff-Appellee*
176-25 Union Turnpike, Suite 230
Fresh Meadows, New York 11366
(347) 450-6710
(718) 228-3689 (fax)
jnesq@jenesqlaw.com

## CERTIFICATE OF COMPLIANCE

This memorandum contains 1,543 words, excluding the parts of the memorandum exempted by Rule 27(a)(2)(B). The accompanying declaration contains 471 words, excluding the parts of the declaration exempted by Rule 27(a)(2)(B). This memorandum complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it was prepared in a proportionally spaced font in 14-point Times New Roman type.

Dated: Fresh Meadows, NY
      June 6, 2025

                  /s/ Jonathan E. Neuman
                  JONATHAN E. NEUMAN, ESQ.

# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DIVISION 5, LLC,

Plaintiff,

-v-

FORA FINANCIAL ADVANCE LLC,

Defendant.

24-CV-6870 (JPO)

ORDER

J. PAUL OETKEN, District Judge:

For reasons to be stated in a forthcoming opinion, Plaintiff's motion for a preliminary

injunction (ECF No. 5) is GRANTED. During the pendency of this action, or any arbitration

proceedings, Defendant is enjoined from issuing any UCC lien letters to any of Plaintiffs

customers or to any other third party that might be holding assets belonging to or owed to

Plaintiff, and Defendant is directed to withdraw any lien letter previously sent, any such lien

letter being null and void. Defendant is likewise enjoined from employing any methods of

enforcement or collection of any debt allegedly owed by Plaintiff to Defendant, including but not

limited to UCC liens. Should the parties proceed in this action through binding arbitration, a

duly appointed arbitrator or arbitral panel shall have the authority to modify or dissolve this

injunction. This injunction is subject to modification by subsequent court order on a showing of

good cause.

As discussed in the telephone conference on October 11, 2024, Plaintiff's counsel is

directed to promptly alert the Court via letter should Plaintiff's business cease operating.

SO ORDERED.

Dated: October 11, 2024
       New York, New York

J. PAUL OETKEN
United States District Judge

# EXHIBIT 2

# Fora Financial Advance, LLC
### A member of Fora Financial™

Fora Financial Advance, LLC
1385 Broadway, 15th Floor
New York, NY, 10018

## Purchase and Sale of Future Receivables Agreement (Revenue Advance)

| Seller: | DIVISION 5, LLC  dba Division 5, LLC |
|---|---|

| Purchaser: | Fora Financial Advance, LLC |
|---|---|

### PURCHASE AND SALE OF FUTURE RECEIVABLES

Fora Financial Advance, LLC (together with its successors and/or assigns, the "Purchaser") hereby purchases from the merchant set forth above (the "Seller"), a percentage, as specified below (the "Purchased Percentage"), of the proceeds of each future sale by Seller whether the proceeds are paid by cash, check, ACH and other electronic transfers, credit card, debit card, bank card, charge card (each such card shall be referred to herein as a "Credit Card") and/or other means (collectively "Future Sale Proceeds") until Purchaser has received the amount specified below (the "Purchased Amount") for the purchase price ("Purchase Price") set forth below:

| | |
|---|---|
| **Purchase Price:** | $354,200.00 |
| **Purchased Percentage:** | 12.00 %   % |
| **Purchased Amount:** | $502,964.00 |
| **Initial Remittance Amount:** | $8,112.33   (Section 1.3 explains how to request a reconciliation to change this amount to reflect Seller's actual Future Sale Proceeds) |
| **Remittance Frequency:** | week   Payment is due on the first Tuesday after the Loan Disbursement Amount is disbursed to you (*unless the funds are disbursed on a Tuesday or that day is a bank holiday, then payments will start on the next business day), and will continue weekly, on the same day each week, until the final payment is made. |
| **Disbursement Amount:** (Purchase Price Less Processing Fee) | $343,574.00 |

| **Fees:** | | |
|---|---|---|
| | Processing Fee: | $10,626.00 |
| | Insufficient Funds Fee: | $35.00 |
| | Wire Transfer Fee: | $50.00 |

*If you elect to receive your funds via wire transfer, a separate fee may be deducted directly from your bank account in the amount indicated above.

**There is no interest rate or payment schedule and no time period during which the Purchased Amount must be collected by Purchaser. Seller going bankrupt or going out of business, in and of itself, does not constitute a breach of this Agreement. Purchaser is entering into this Agreement knowing the risks that Seller's business may slow down or fail, and Purchaser assumes these risks based on Seller's representations, warranties and covenants in this Agreement, which are designed to give Purchaser a reasonable and fair opportunity to receive the benefit of its bargain.**

Initial Here: #1     #2     #3     #4

Doc ID: bc46ff58d3a35aed21878aa8b6f1772fb8b04707

## Seller's Information

| | |
|---|---|
| DBA: Division 5, LLC | Legal Entity: Limited Liability Company (LLC) |

Business Legal Name: DIVISION 5, LLC

| | | | |
|---|---|---|---|
| Address: 99 Cooper Lane | City: Stafford Springs | State: CT | Zip: 06076 |

| | |
|---|---|
| Business Phone: (860) 752-4127 | Fax #: |
| Federal State # (Tax ID): ███████ | Mobile #: |
| Website: https://www.division5ct.com/ | Email: conrad@division5ct.com |

Initial Here: #1 — DocID bc46ff58d3a35aed21878aa8b61772fb8b04797   #2   #3   #4

## Performance Guaranty

In Consideration of Purchaser entering into this Agreement, and to induce Purchaser to enter into this Agreement, the undersigned principal(s) of Seller (the "Guarantors") hereby personally and unconditionally guarantees the performance by Seller of all of its obligations hereunder and further guarantees the accuracy, truthfulness and completeness of all representations, warranties and covenants made by Seller herein as more specifically set forth in this Agreement. The foregoing guaranties shall be continuing and irrevocable and Guarantor hereby waives demand of payment, notice and presentment and agrees that Purchaser may proceed directly against Guarantor without first proceeding against Seller. Guarantor further guarantees payment of all costs, expenses and attorney fees which may be incurred as a result of Seller's default in the performance of its obligations or as a result of Guarantor's default under this guaranty. Guarantor authorizes Purchaser and its agents and representatives and any and all credit reporting agency employed by Purchaser to investigate any references given or any other statements of data obtained from or about Guarantor and to order, receive and review consumer or business credit reports at any time now or in the future on Guarantor.



**GUARANTOR 1**

By signing below, I agree to the terms of this Agreement including the Performance Guaranty above. I have read this Agreement and acknowledge that this Agreement contains Waiver of Jury Trial, Arbitration and Class Action clauses. I agree to be bound by the Waiver of Jury Trial, Arbitration and Class Action clauses.

Name (Print): Conrad Barker
Name (Sign):
SS #:
% Owned:
Home Address: 110. Franklin Woods Dr
City: Somers   State: CT   Zip: 06071
Phone #: (860) 752-4127   Mobile #:
Date Signed: 06 / 29 / 2023

**GUARANTOR 3**

By signing below, I agree to the terms of this Agreement including the Performance Guaranty above. I have read this Agreement and acknowledge that this Agreement contains Waiver of Jury Trial, Arbitration and Class Action clauses. I agree to be bound by the Waiver of Jury Trial, Arbitration and Class Action clauses.

Name (Print):
Name (Sign):
SS #:   % Owned:
Home Address:
City:   State:   Zip:
Phone #:   Mobile #:
Date Signed:

**GUARANTOR 2**

By signing below, I agree to the terms of this Agreement including the Performance Guaranty above. I have read this Agreement and acknowledge that this Agreement contains Waiver of Jury Trial, Arbitration and Class Action clauses. I agree to be bound by the Waiver of Jury Trial, Arbitration and Class Action clauses.

Name (Print):
Name (Sign):
SS #   % Owned:
Home Address:
City:   State:   Zip:
Phone #:   Mobile #:
Date Signed:

**GUARANTOR 4**

By signing below, I agree to the terms of the Agreement including Performance Guaranty above. I have read this Agreement and acknowledge that this Agreement contains Waiver of Jury Trial, Arbitration and Class Action clauses. I agree to be bound by the Waiver of Jury Trial, Arbitration and Class Action clauses.

Name (Print):
Name (Sign):
SS #   % Owned:
Home Address:
City:   State:   Zip:
Phone #:   Mobile #:
Date Signed:

Initial Here: #1        #2        #3        #4

Doc ID: bc46ff58d3a35aed21878aa8b6f1772fb8b04797

## SELLER 1

By signing below, I agree to the terms of this Agreement. I have read this Agreement and acknowledge that this Agreement contains Waiver of Jury Trial, Arbitration and Class Action clauses. I agree to be bound by the Waiver of Jury Trial, Arbitration and Class Action clauses.

Name (Print): Conrad Barker

Name (Sign):

Title:     Date Signed: 06 / 29 / 2023

## SELLER 3

By signing below, I agree to the terms of this Agreement. I have read this Agreement and acknowledge that this Agreement contains Waiver of Jury Trial, Arbitration and Class Action clauses. I agree to be bound by the Waiver of Jury Trial, Arbitration and Class Action clauses.

Name (Print):

Name (Sign):

Title:     Date Signed:

## SELLER 2

By signing below, I agree to the terms of this Agreement. I have read this Agreement and acknowledge that this Agreement contains Waiver of Jury Trial, Arbitration and Class Action clauses. I agree to be bound by the Waiver of Jury Trial, Arbitration and Class Action clauses.

Name (Print):

Name (Sign):

Title:     Date Signed:

## SELLER 4

By signing below, I agree to the terms of this Agreement. I have read this Agreement and acknowledge that this Agreement contains Waiver of Jury Trial, Arbitration and Class Action clauses. I agree to be bound by the Waiver of Jury Trial, Arbitration and Class Action clauses.

Name (Print):

Name (Sign):

Title:     Date Signed:

**NOTICE OF CONSENT TO ELECTRONIC COMMUNICATIONS**: Seller and each Guarantor hereby consents and authorizes Purchaser and its affiliates to contact Seller and Guarantor(s) at any telephone number or email address they provide, using any means of communication associated with the telephone number or email address, including, but not limited to, text messages via an automatic telephone dialing system. All automated communications systems will have an opt-out procedure in adherence to applicable law.

By initialing here Seller and each Guarantor affirms that they have read the Notice of Consent to Electronic Communications:

#1       #2       #3       #4

To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institut ions to obtain, verify, and record information that identifies every customer. What this means to you: At the time of application and during our relationship, we will request your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.



Initial Here: #1       #2       #3       #4

Doc ID: b646ff58d3e35aed1878aa8b6f1772b9b04797

## 1. TERMS AND CONDITIONS OF PURCHASE AND SALE OF FUTURE SALE PROCEEDS

Section 1.1 (a) In exchange for the foregoing, Seller hereby agrees (i) to deposit all Future Sale Proceeds into the Bank Account(s) identified in Exhibit A attached hereto ("the Bank Account") (ii) to identify for Purchaser in Exhibit A all other existing Bank Accounts and to provide updated information regarding future Bank Accounts maintained or used by Seller; (iii) not to deposit any funds into the Bank Account other than Future Sale Proceeds, or, if any such deposits are made, to notify Seller as soon as practicable; (iv) to enter into a Credit Card processing agreement reasonably acceptable to and approved by the Purchaser with a Credit Card Processor (the "Credit Card Processor," who shall serve as Seller's sole Credit Card Processor), in order to obtain Credit Card processing services, and instruct the Credit Card Processor to deposit all Credit Card receipts of Seller into the Bank Account. At Seller's request, Purchaser may review any Credit Card processing agreement that Seller has entered into before the date of this Agreement, and Purchaser may approve any Credit Card processing agreement at Purchaser's sole discretion. The obligations of Purchaser under this Agreement will not be effective unless and until Purchaser has completed its review of the Seller and has accepted this Agreement by delivering the Purchase Price.

(b) Seller shall maintain the Bank Account until all obligations are satisfied under this Agreement. Additionally, Seller will ensure that all funds arising from Future Sale Proceeds are deposited in, or otherwise credited to, the Bank Account.

(c) **Seller and Purchaser acknowledge and agree that the Purchase Price paid by Purchaser in exchange for the Purchased Amount of Future Sale Proceeds is a purchase of the Purchased Amount and is not intended to be, nor shall it be construed as, a loan from Purchaser to Seller. Each Future Sale Proceeds purchased by Purchaser hereunder represents a bona fide sale by Seller to a customer. Future Sale Proceeds purchased by Purchaser shall be owned by Seller free and clear of all encumbrances.**

(d) **There is no interest rate or payment schedule and no time period during which the Purchased Amount must be collected by Purchaser. Seller going bankrupt or going out of business, in and of itself, does not constitute a breach of this Agreement. Purchaser is entering into this Agreement knowing the risks that Seller's business may slow down or fail, and Purchaser assumes these risks based on Seller's representations, warranties and covenants in this Agreement, which are designed to give Purchaser a reasonable and fair opportunity to receive the benefit of its bargain.**

Section 1.2 Seller authorizes Purchaser and its agents to initiate electronic checks or ACH transfers in amounts as specified in Section 1.3 and authorizes the bank holding the Bank Account (the "Bank") and all applicable third parties to provide to Purchaser and its agents all information necessary to permit them to determine the amount to be delivered to Purchaser and initiate such electronic check or ACH transfers. Fora will debit the Remittance Amount according to the Remittance Frequency. If the Remittance Frequency is daily (Monday - Friday), and a scheduled debit would occur on a day on which the bank was not open to process ACH transactions or if the bank was unable to process ACH transactions due to a disruption of the ACH payment network, Purchaser will debit the Bank Account for an amount equal to the sum of; (i) the Remittance Amount due on that day, plus (ii) the Remittance Amount due on the preceding day when the bank was not open or could not process ACH transactions. If the Remittance Frequency is weekly, Purchaser may change the Remittance Frequency to daily if Seller's weekly remittance is rejected for insufficient funds two or more times during the course of this Agreement.

Section 1.3 Changes to the Remittance Amount (IMPORTANT PROTECTION FOR SELLER).

(a) The Initial Remittance Amount is intended to represent the Purchased Percentage of Seller's Future Sale Proceeds. Once each calendar month, either Purchaser or Seller may request a reconciliation to adjust the Remittance Amount to more closely reflect Seller's actual Future Sale Proceeds times the Purchased Percentage (a "Reconciliation").

    i. Request from Seller: To request a Reconciliation call (855) 326-8523 or e-mail CustomerService@ForaFinancial.com.

    ii. Request from Purchaser: Purchaser may request a Reconciliation by first class mail sent to Seller's Business Address or email address shown in this Agreement, unless Seller notifies Purchaser of an alternative mail or email address.

(b) Seller agrees to provide Purchaser any information requested by Purchaser to assist in a Reconciliation ("Reconciliation Information") within five days after a request. Within five days after Purchaser's reasonable verification of the Reconciliation Information, Purchaser shall adjust the Remittance Amount on a going-forward basis to more closely reflect the Seller's actual Future Sales Proceeds times the Purchased Percentage. Purchaser shall notify Seller prior to any such adjustment. After each adjustment made pursuant to this paragraph, the new dollar amount shall be deemed the Remittance Amount until any later adjustment.

Initial Here: #1   #2   #3   #4

(c) If Seller fails to timely provide Reconciliation Information after 5 days' notice to Seller, Purchaser may adjust the Remittance Amount to the Initial Remittance Amount until any later adjustment.

Section 1.4 If at any time Seller informs Purchaser or Purchaser learns that a deposit has been made into the Bank Account that represents something other than Future Sale Proceeds, and Purchaser has removed the Purchased Percentage from such deposit, Purchaser shall either, at its option, return such amount to the Bank Deposit or deduct such amount from its next withdrawal of the Purchased Percentage of Future Sale Proceeds.

Section 1.5 Seller will pay Purchaser a processing fee as stated above at the time Seller signs this Agreement, or Purchaser may deduct the processing fee from the Purchase Price.

Section 1.6

(a) The Future Sale Proceeds sold by Seller to Purchaser pursuant to this Agreement are "accounts" or "payment intangibles" as those terms are defined in the Uniform Commercial Code as in effect in the state in which the Seller is located (the "UCC") and such sale shall constitute and shall be construed and treated for all purposes as a true and complete sale, conveying good title to the Future Sale Proceeds free and clear of any liens and encumbrances, from Seller to Purchaser. To the extent the Future Sale Proceeds are "accounts" or "payment intangibles" then (i) the sale of the Future Sale Proceeds creates a security interest as defined in the UCC; (ii) this Agreement constitutes a "security agreement" under the UCC; and (iii) Purchaser has all the rights of a secured party under the UCC with respect to such Future Sale Proceeds. Seller further agrees that, with or without an Event of Default, Purchaser may notify account debtors, or other persons obligated on the Future Sale Proceeds, or holding the Future Sale Proceeds, of Seller's sale of the Future Sale Proceeds and may instruct them to make payment or otherwise render performance to or for the benefit of Purchaser.

(b) Seller authorizes Purchaser to file one or more UCC-1 forms consistent with the UCC to give notice that the Purchased Amount of Future Sale Proceeds is the sole property of Purchaser. The UCC filing may state that such sale is intended to be a sale and not an assignment for security and may state that the Seller is prohibited from obtaining any financing that impairs the value of the Future Sale Proceeds or Purchaser's right to collect same.

Section 1.7 Seller may cancel this transaction at any time within three (3) business days after Purchaser forwards any or all of the Purchase Price to Seller. However, in order to cancel the transaction, Seller must return to Purchaser the entire amount of the Purchase Price received by Seller within that same three (3) day period. Notwithstanding the foregoing, the Processing Fee and Wire Fee(s) (if any) are non-cancellable and nonrefundable.

## 2. RECEIVABLES

Section 2.1 As provided herein, the Purchased Percentage (as specified on Page 1) of each Future Sale Proceeds shall be collected by Purchaser from electronic check or ACH transfers initiated by Purchaser or its agents from the Bank Account. In the event that Seller changes or permits the change of the Bank Account or the Credit Card Processor or adds an additional Bank Account or Credit Card Processor, Purchaser shall have the right, without waiving any of its other rights and remedies hereunder and without notice to Seller, to notify the new or additional Bank or Credit Card Processor of the sale of Future Sale Proceeds hereunder and to collect from such new or additional Bank or Credit Card Processor all or any portion of the amounts received by such Bank or Credit Card Processor. Seller, by execution of this Agreement, hereby grants to Purchaser an irrevocable Power of Attorney, which Power of Attorney shall be coupled with an interest, and hereby appoints Purchaser or any of Purchaser's representatives as Seller's Attorney-in-Fact, to take any and all action necessary to direct such new or additional Bank or Credit Card Processor to deliver the Future Sale Proceeds to Purchaser as contemplated by this Section 2.

Section 2.2 This Agreement shall be in full force and effect until such time as the Purchased Amount of Future Sale Proceeds has been received by Purchaser from Seller.

## 3. STATEMENTS AND REPORTS

Section 3.1 Seller acknowledges and agrees that in connection with the execution of this Agreement an investigative or consumer report may be made by Purchaser. Accordingly, Seller authorizes Purchaser and its agents and representatives and any and all credit reporting agency employed or retained by Purchaser to investigate any references given or any other statements of data obtained from or about Seller for the purpose of this Agreement and to order, receive and review credit reports at any time now or in the future on Seller.

Initial Here: #1    DocuID  bc46ff58d3a35aed21878aa8b61772fb8b04797  #2    #3    #4

## 4. ACH AUTHORIZATION AND CREDIT CARD PROCESSING AGREEMENT

Section 4.1 Simultaneously with the execution hereof, Seller authorizes Purchaser and its agents to initiate electronic check or ACH transfers equal to the Purchased Percentage of all Future Sale Proceeds of Seller which authorization shall continue until Purchaser has received an amount equal to the Purchased Amount and all fees and charges (including legal fees) due under this Agreement or Seller's obligations under this Agreement are otherwise terminated pursuant to Section 1.1(d). Seller further authorizes the Bank and its Credit Card Processor and all third parties (if applicable) to provide to Purchaser and its agents all information reasonably necessary to permit Purchaser to ascertain the amount to be delivered to Purchaser and initiate such electronic check or ACH transfers from the Bank Account. This authorization shall only be revoked with the prior written consent of Purchaser. Seller agrees to pay an insufficient funds fee as stated above if any electronic check or ACH transfer is rejected or dishonored.

Additionally, the Bank Account may not be closed and Seller's agreement with the Credit Card Processor cannot be amended or terminated without the prior written consent of Purchaser. In the event that Purchaser determines, in its sole discretion, that the Bank or the authorized Credit Card Processor utilized by Seller is no longer acceptable, Seller shall, upon receipt of written notice from Purchaser, have five (5) business days to terminate its relationship with the Bank or its Credit Card Processor and to open a new Bank Account or enter into a similar Processing Agreement with a new bank or Credit Card Processor. Seller agrees to execute any and all documents and/or agreement(s) in order to satisfy the foregoing.

Section 4.2 Purchaser is neither responsible nor shall it be liable for any actions undertaken by the Bank or the Seller's Credit Card Processor which are not contemplated or authorized by this Agreement or the Processing Agreement to be entered into by and between Seller and the Credit Card Processor. Seller, by execution of this Agreement, hereby agrees to indemnify and hold Purchaser harmless from any and all actions of the Bank or the Credit Card Processor.

Section 4.3 Purchaser and Seller understand that the Bank and the Credit Card Processor may charge a fee or commission to Seller for processing electronic checks, ACH transfers and receipts representing Future Sale Proceeds. Both parties further understand that the amounts due to Purchaser hereunder shall be based solely upon the net amount due to Seller from the Future Sale Proceeds after deducting the Bank and Credit Card Processor's fee or commission from the Future Sale Proceeds.

Section 4.4 During the entire time period that this Agreement shall be in force and effect, Seller hereby authorizes Purchaser to contact any bank or Credit Card Processor used by Seller (current or prior) in order to obtain whatever information Purchaser deems it may require regarding Seller's transactions with any such bank or Credit Card Processor. Such information shall include, but is not limited to, information Purchaser deems necessary to verify the amount of Future Sale Proceeds previously received or processed on behalf of Seller and any and all fees which may have been charged to Seller by the bank or Credit Card Processor. Seller further authorizes Purchaser to contact any bank or Credit Card Processor of Seller (current or prior) in order to confirm that Seller is exclusively using the Bank Account and the Credit Card Processor.

## 5. BINDING ACCEPTANCE

Section 5.1 Upon execution hereof, each of the parties hereto shall be obligated hereunder and shall be subject to all of the terms and conditions stated herein ("Agreement"). The person executing this Agreement on behalf of Seller warrants and represents that he/ she is authorized to bind Seller to all of the terms and conditions set forth in this Agreement and that all of the information provided herein is true and accurate in all respects at the time the information was provided. Purchaser's payment of the Purchase Price shall be deemed Purchaser's acceptance of this Agreement, notwithstanding Purchaser's failure to execute this Agreement.

## 6. EVENTS OF DEFAULT, PURCHASER'S RIGHTS UPON DEFAULT, SELLER'S REPRESENTATIONS AND WARRANTIES

Section 6.1 Subject to applicable law, Purchaser may declare Seller to be in default under this Agreement if any one or more of the following events occurs and is continuing (each an "Event of Default"):

(a) Seller fails to maintain the Bank Accounts or open a new bank account to deposit Future Sale Proceeds without first obtaining Purchaser's consent;
(b) Seller fails to provide copies of all documents and requested information related to Seller's financial or banking affairs within five (5) days after a request by Purchaser;
(c) Seller uses any portion of the Purchase Price for personal, family or household purposes or to fund a dividend or other distribution to Business owners;
(d) Seller breaches any representation, warranty, agreement, promise or covenant set forth in this Agreement, or Seller or any of Seller's employees or agents provide Purchaser with any false or misleading information;



Doc ID: bc46ff58d3a35aed21878aa8b6f1772fb8b04797

(e) Seller makes any act or omission for the purpose of interfering with or circumventing, the remittance to Purchaser of any amount owed under this Agreement, including, but not limited to: (i) conducting business under an alternative name; (ii) depositing Future Sale Proceeds into any bank accounts other than the Bank Account; (iii) encouraging customers to make payments by cash that Seller fails to deposit into the Bank Account; or (iv) manipulating the use and form of business entities for the purpose of avoiding Seller's obligations under this Agreement;

(f) Seller fails to permit Purchaser or its agent  to conduct a site inspection of Seller's business at any reasonable time during the of this Agreement;

(g) Without Purchaser's prior express written consent, Seller enters into any credit, cash advance or other financing arrangement requiring daily or weekly payments or remittances. Purchaser may  share information regarding this Agreement with any third party in order to determine whether Seller is in compliance with this provision;

(h) Without Purchaser's prior express written consent, Seller sells any of Seller's assets outside of the ordinary course of business;

(i) Without Purchaser's prior express written consent, Seller sells any of Seller's Future Sale Proceeds while Seller owes any amount under this Agreement;

(j) Without Purchaser's prior express written consent, Seller undertakes or permits a change of control of Seller's business;

(k) Seller defaults on any other agreement that Seller has with  Purchaser or any of its affiliates.

Section 6.2 Purchaser's Rights Upon any Event of Default:

(a) All amounts of the Purchased Amount that have not yet been delivered to Purchaser and any assessed fees shall be immediately due and payable, including all Receivables or Future Sale Proceeds, until the entire balance, fees and deficiencies are paid in full;

(b)  The Purchased Percentage will equal 100% of Future Sale Proceeds;

(c)  Purchaser may commence an action against Seller and Seller's Business to collect all amounts owed in connection with this Agreement;

(d) Purchaser may charge and recover from Seller the additional fees, including if applicable, all of Purchaser's out-of-pocket costs and expenses, including reasonable attorneys' fees, arbitration costs, and/or court costs incurred by Purchaser in connection with the defense, protection or enforcement of its rights under this Agreement (including, without limitation, in connection with any bankruptcy proceeding) and any other fees that may be due and owing (collectively, "Costs of Collection");

(e) Purchaser may withdraw funds from any of Seller's Bank Accounts by ACH debit, up to the amount due following default as provided in Section 6.2(a) (including the fees as set forth in this Agreement and any Costs of Collection);

(f)  Purchaser may exercise any and all rights or remedies available to a secured creditor under Article 9 of the Uniform Commercial Code or analogous state laws. Subject to arbitration as provided in Section 21, all rights available to Purchaser are cumulative and not exclusive of any other right or remedy available to Purchaser in law or equity.

Section 6.3 Seller and any individual signing this Agreement as a Guarantor represents and warrants to Purchaser, as of the date hereof and, unless expressly stated otherwise, each day the Purchased Amount remains undelivered and any assessed fees remain unpaid, as follows:

(a)  The Future Sale Proceeds are not subject to any claims, charges, liens, restrictions, encumbrances or security interest of any nature whatsoever not disclosed to Purchaser prior to executing this Agreement;

(b) As of the date the Purchase Price is paid to Seller, Seller and Seller's business are not the subject of a bankruptcy or reorganization proceeding that has not been discharged or dismissed, do not have a plan to make a bankruptcy filing and have not met with a bankruptcy attorney within the past six (6) months;

(c) Seller acknowledges that the information (financial and other) provided by Seller has been relied upon by Purchaser  in connection with its decision to purchase the Future Sale Proceeds. All information that Seller has provided to Purchaser is true, correct and accurately reflects Seller's financial condition and business operations at the time the information is provided;

(d) Seller has all required permits, licenses, approval, consents and authorizations necessary to conduct its business;

(e) Seller and Seller's business are in compliance with all laws, regulations and requirements that affect its business;

(f) Seller and each Guarantor has full power and authority to enter into and perform its obligations under this Agreement;

(g) Seller's Business has the legal right and ability to execute this Agreement and perform all of its obligations under this Agreement without violating any other agreement, obligation, promise, court order, administrative order or decree, law or regulation to which it is subject;

(h)      Seller's Business is duly qualified, licensed and in good standing in each state in which it is doing business;

(i) Seller's Business's papers and all amendments thereto have been duly filed and are in proper order, and any capital stock, member interest or other equity issued and outstanding was and is properly issued;

(j) Seller's Business's books and records are accurate and up-to-date and accessible to Purchaser;

(k) Seller's Business's legal name is exactly as shown on this Agreement;

(l)   All of the Bank Accounts are maintained at U.S. financial institutions and all of the Bank Accounts were established and are used solely for business purposes and not for personal, family or household purposes.

Initial Here: #1  #2  #3  #4

Doc ID: bc46ff58d3a35aed21878aa8b6f1772fb8b04797

(m)    Seller understands that the Bank Account is the sole and exclusive location where it will deposit all Future Sale Proceeds and that the services of the Credit Card Processor are the sole and exclusive means by which Seller shall process its Credit Card transaction(s).

(n) Seller shall endeavor to continue to conduct its business consistent with past practice and shall comply with all of the terms and conditions of its deposit account agreement with the Bank and its Processing Agreement with the Credit Card Processor. As of the date the Purchase Price is paid to Seller, Seller has no present intention of closing its business or ceasing to operate business, either permanently or temporarily, during the twelve (12) month period after the date hereof and Seller hereby acknowledges that Purchaser shall rely on this representation in its decision to enter into this Agreement.

## 7. OTHER REMEDIES

Section 7.1 In the event of any breach or inaccuracy of any representation or warranty made by Seller in this Agreement or in any certificate or other document delivered by or on behalf of Seller pursuant hereto; or any breach or default in the performance by Seller of any covenant or agreement contained in this Agreement or in any certificate or other document delivered by or on behalf of Seller pursuant hereto (any of the foregoing a "Breach"), Purchaser shall be entitled to all remedies available hereunder, under Article 9 of the Uniform Commercial Code or other applicable law, subject to arbitration as provided in Section 21.

Section 7.3 In the event that Seller breaches any of the covenants in Section 6, Seller agrees that Purchaser will be entitled to, among other things, damages equal to the amount by which the cash attributable to the Purchased Amount of Future Sale Proceeds exceeds the amount of cash received from the Future Sale Proceeds that have previously been received by the Purchaser under this Agreement.

Section 7.4 Seller hereby agrees that Purchaser may automatically debit any such damages from any of Seller's Bank Accounts via ACH, electronic check or wire transfer, and/or may notify the Credit Card Processor to remit to Purchaser any and all amounts received by the Credit Card Processor up to the amount due following default as provided in Section 6.2(a). In addition, and to the extent not prohibited by applicable law and any agreements between Seller's Credit Card Processor and the applicable Credit Card association, Purchaser and Seller's Credit Card Processor shall be authorized to place Seller on any "terminated merchant file" list with any applicable Credit Card association in the event of a breach by Seller of Section 6 hereof. Further, Purchaser shall be entitled to collect all Indemnified amounts from Seller in accordance with Section 14 hereof.

Section 7.5 No remedy of the parties hereunder shall be exclusive of any other remedy herein or provided by law, but each shall be cumulative and in addition to each and every other remedy, subject to arbitration as provided in Section 21. Waiver of a default shall not be a waiver of any other or subsequent default.

## 8. NO RIGHT TO REPURCHASE

Seller acknowledges that it has no right to repurchase the Future Sale Proceeds from Purchaser.

## 9. NOTICES

Except for Reconciliation requests as provided in Section 1.3, all notices which may be given under any provisions of this Agreement shall be in writing and deemed to have been duly given when served personally or mailed by an express mail or courier service first class mail, postage prepaid and properly addressed to the parties at their addresses written on Page 1 or to such other address as each of the parties may designate in writing to the other parties in the manner provided in this Section 9, together with copies as follows:

In case of Notice        Fora Financial Advance, LLC
to Purchaser:            1385 Broadway, 15th Floor
                         New York, NY, 10018

        Attn: Legal Department

Notices to Seller may be sent to Seller via e-mail to any e-mail address provided by Seller or by first class mail to the Business Address provided, unless Seller notifies Purchaser of an alternative address in writing. Seller must provide Purchaser with updated contact information on an ongoing basis.

## 10. MODIFICATIONS; AMENDMENTS

This Agreement is the entire agreement between the parties and supersedes any and all prior oral and/or written agreements and understanding by and among the parties with respect to the subject matter hereof and this Agreement may not be changed, modified or terminated orally, and no changes, modifications, termination or attempted waiver shall be valid unless in writing signed by the parties against whom the same is sought to be enforced.

Initial Here: #1  CB   #2    #3    #4

## 11. BINDING EFFECT

This Agreement shall be binding upon and inure to the benefit of Seller, Purchaser and their respective successors and assigns, except that Seller shall not have the right to assign its rights hereunder or any interest herein without the prior written consent of Purchaser, which consent may be withheld in Purchaser's sole discretion. Purchaser reserves the right to assign this Agreement with or without prior written notice to Seller.

## 12. APPLICABLE LAW; CONSTRUCTION

This Agreement shall be construed and enforced in accordance with the internal laws and not the conflict of laws of the State of New York applicable to agreements made and to be performed in such state. The parties hereto have participated jointly in the drafting of this Agreement and the documents to be delivered in connection therewith. In the event of ambiguity or questions of intent or interpretation, this Agreement and the documents to be delivered in connection therewith shall be construed as if drafted jointly by the parties hereto and no presumption or burden of proof shall arise favoring or disfavoring any party by virtue of the authorship of any of the provisions of this Agreement.

## 13. WAIVER

Waiver by any party of any breach of this Agreement or failure to exercise any right hereunder shall not be deemed to be a waiver of any other or subsequent default, breach or right. The failure of any party to take action by reason of any such breach or to exercise any such right shall not deprive such party of the right to take action at any time while such breach or condition giving rise to such right continues.

## 14. LIMITATION OF LIABILITY AND INDEMNITY

(a) With respect to any claims Seller may have against Purcha ser, Seller's sole remedy will be actual money damages that shall not exceed the amount of any funds delivered to Purchaser. In no event shall Purchaser be liable to seller for consequential, incidental, punitive, exemplary, special or indirect damages or losses, or lost profits, relating to this Agreement, in tort, contract, or otherwise, including any negligence.

(b) Seller shall assume liability for and does hereby agree to indemnify, protect, save and keep harmless Purchaser and its agents and servants, from and against any and all liabilities, claims, losses, obligations, damages, penalties, actions, and suits of whatsoever kind and nature imposed on, incurred by or asserted by third parties against Purchaser or its agents and servants, in any way relating to or growing out of such breach (collectively "Indemnified Amounts"), including, without limitation, the payment of all costs and expenses of every kind for the enforcement of Purchaser's rights and remedies hereunder, including attorneys' fees and costs in any Trial Court or Appellate Court proceeding, any administrative proceeding, any arbitration or mediation, or any negotiations or consultations in connection with this Agreement. Such Indemnified Amounts shall bear interest at the highest rate of interest allowed by applicable law until paid.

## 15. JURISDICTION AND VENUE

In the event of a controversy arising out of the interpretation, construction, performance or breach of this Agreement, the parties hereby agree and consent to the sole and exclusive jurisdiction and venue of the federal and state courts in the State of New York, to resolve any and all claims arising out of, relating to or in connection with this agreement or the relationship between the parties; and further agree and consent that personal service of process outside of the State of New York in any such action or proceeding shall be tantamount to service in person within New York State.

## 16. ENTIRE AGREEMENT

This Agreement, together with any Credit Card processing agreement, contains the entire agreement and understanding between Seller and Purchaser and supersedes all prior agreements and understandings relating to the subject matter hereof unless otherwise provided herein.

## 17. SURVIVAL OF REPRESENTATIONS, ETC.

All representations, warranties and covenants herein shall survive the execution and delivery of this Agreement and shall continue in full force and effect until all obligations under this Agreement shall have been satisfied in full and this Agreement shall have terminated.

## 18. DISCLAIMER OF WARRANTIES

No representations, warranties or promises pertaining to this Agreement or the transactions contemplated thereby have been made by or shall be binding on any party hereto except as expressly stated in this Agreement.

Doc ID: bc46ff58d3a35aed21878aa8b6f1772fb8b04797

## 19. MERGER; DISCLAIMERS

All understandings and agreements heretofore made between the parties hereto are merged in this Agreement. In the making and execution of this Agreement, neither Seller nor Purchaser have relied upon or been induced by any statements or representations, other than those expressly set forth in this Agreement. Seller and Purchaser have relied solely on the representations expressly made herein and on such investigations, examinations and inspections, financial or otherwise, as Seller and Purchaser have respectively chosen to make or have made.

## 20. JURY TRIAL

PURCHASER, SELLER AND GUARANTOR HEREBY WAIVE TRIAL BY JURY IN ANY COURT PRESIDING OVER ANY SUIT, ACTION OR PROCEEDING ON ANY MATTER ARISING OUT OF OR IN CONNECTION WITH OR IN ANY WAY RELATED TO THE TRANSACTIONS OF WHICH THIS AGREEMENT IS A PART OF THE ENFORCEMENT HEREOF, UNLESS SUCH WAIVER IS PROHIBITED BY LAW OR DEEMED BY A COURT OF LAW TO BE AGAINST PUBLIC POLICY. PURCHASER, SELLER AND GUARANTOR HERETO ACKNOWLEDGE THAT EACH MAKES THIS WAIVER KNOWINGLY, WILLINGLY AND VOLUNTARILY AND WITHOUT DURESS. PURCHASER, SELLER AND GUARANTOR HAVE BEEN GIVEN AMPLE TIME AND OPPORTUNITY TO SEEK ADVICE OF COUNSEL PRIOR TO THE EXECUTION OF THIS AGREEMENT.

## 21. ARBITRATION

By signing this Agreement, you agree to the terms of this Arbitration clause ("Clause"). **Read the terms of this Clause carefully, as it substantially affects your rights.**

**Background**. In arbitration, a third party ("Arbitrator") resolves Disputes in a hearing ("hearing"). The Parties waive the right to go to court. The Parties waive jury trials. The arbitration hearing is private and less formal than court. Arbitrators may limit pre-hearing fact finding, called "discovery." The decision of the Arbitrator is final.

**Scope**. This Clause governs the Purchaser, Seller(s), and any Guarantor(s) (together, the "Parties"), their heirs, successors, assigns, and third parties related to any Dispute. In this Clause, the word "Disputes" has the broadest possible meaning. This Clause governs all "Disputes" involving the Parties to this Agreement and/or Purchaser's servicers, assignees, and agents. This includes all claims even indirectly related to your application and agreement(s) with us. This includes claims related to information you previously gave us. It includes all past agreements. It includes extensions, renewals, refinancing, or payment plans. It includes claims related to collections, privacy, and customer information. It includes disputes based upon contract, tort, fraud and other intentional torts, constitution, statute, regulation, ordinance, common law and equity and claims for monetary damages and injunctive or declaratory relief. It includes claims related to setting aside this Clause. It includes claims about the Clause's validity and scope. It includes claims about whether to arbitrate.

**Waiver. You ( Seller(s) and any Guarantor(s)) and we (Purchaser) waive the right to: (1) Have juries resolve Disputes; (2) Have courts, other than small-claims courts, resolve Disputes; (3) Serve as a private attorney general or in a representative capacity; and (4) Participate in a class action. UNDER THIS CLAUSE, COURTS AND ARBITRATORS CANNOT ALLOW CLASS ACTIONS. You and we waive the right to participate in a class action as a representative and as a member. Only individual arbitration or small-claims courts will resolve Disputes. You and we waive the right to have representative claims. For Sellers and any Guarantors in California, the foregoing prohibition against class actions shall not apply.**

**Severability.** If any portion of this Arbitration Clause cannot be enforced, the unenforceable portion will be severed and the rest of this Arbitration Clause will continue to apply, except that: (i) unless reversed on appeal, if a court invalidates the class action waiver in this Clause, the entire Clause except for this sentence will be void; (ii) if you bring a claim in court for public injunctive relief and/or as a private attorney general and a court determines that we or a related third party may not enforce arbitration of that claim in accordance with the terms of this Clause (and that determination becomes final after all appeals have been exhausted), then the claim for public injunctive relief and/or as a private attorney general will be determined in court and any claim seeking monetary relief of any kind whatsoever (including claims for restitution or disgorgement) will be arbitrated. In such case, you agree that the court will stay the claim for public injunctive relief and/or as a private attorney general pending completion of arbitration of all other claims and entry of a final order or judgment with respect to confirmation of the resulting arbitral award.

**Governing Law**. This transaction involves interstate commerce, so the Federal Arbitration Act ("FAA") governs this Clause. The Arbitrator must apply substantive law consistent with the FAA. The Arbitrator must follow statutes of limitation and privilege claims.

**Arbitration Notice**. Before a Party may begin an arbitration proceeding, the Party must send a notice of intent to arbitrate to the other Parties. If the Parties cannot resolve the Dispute within 30 days of the notice, the Party demanding arbitration may start an arbitration proceeding.

Doc ID: bc46ff58d3a35aed21878aa8b6f1772fb8b04797

**How to Start Arbitration**. If a Dispute arises, you may be required to arbitrate it. Either party may start arbitration, including after a lawsuit is filed. To start arbitration, contact an arbitrator affiliated with a national arbitration organization listed below. No Party will disclose settlement proposals to the Arbitrator during arbitration. To contact us, send mail to: Fora Financial Advance, LLC, 1385 Broadway, 15th Floor, New York, NY, 10018 , Attn: Legal Department via certified U.S. mail to confirm receipt.

**Arbitration Process**. Any Party may mail the other(s) a demand to arbitrate, even if a lawsuit has been filed. The notice should describe the Dispute and relief sought. The receiving Party must send a response via certified U.S. mail within 20 days. If you mail the demand, you may choose one of the national arbitration groups listed in this paragraph. Or, your demand may state that you want the Parties to choose a local Arbitrator affiliated with a national arbitration organization. If we or related third parties mail the demand, you must respond within 20 days. Your response must choose an arbitration group or propose a local Arbitrator affiliated with a national arbitration organization. If you don't timely respond or your response does not choose an arbitration group or a local Arbitrator affiliated with a national arbitration organization, we may choose the arbitration group. You may select the American Arbitration Association ("AAA") (1-800-778-7879) http://www.adr.org or JAMS (1-800-352-5267) **********.jamsadr.com. The Parties to a Dispute may also agree in a writing signed by all Parties to use a local attorney, retired judge, or local Arbitrator. The Arbitrator must arbitrate under AAA or JAMS rules. You may get a copy of these rules from such group. Any rules that conflict with any of our agreements with you don't apply. If these options aren't available, and the parties can't agree on another, a court may choose the Arbitrator. Such Arbitrator must enforce your agreement(s) with us as written. The Arbitrator will order the hearing at a location that is reasonably convenient to you. Any Party may attend the hearing by phone. The Arbitrator's decision will be final. A Party may file the Arbitrator's award with the proper court and seek judicial enforcement of it. Arbitration will be the sole method of resolving appeals of a small-claims court judgment. If the amount in controversy exceeds $10,000.00, a party may appeal the Arbitrator's finding. Such appeal will be to a three-Arbitrator panel from the same arbitration group. The appeal will be <u>de novo</u> and resolved by majority vote. The appealing party bears appeal costs, despite the outcome.

**Small-Claims Court**. Each Party has the right to arbitrate or to go to small-claims court if the small-claims court has the power to hear the Dispute. Arbitration will resolve all Disputes that the small-claims court does not have the power to hear. If there is an appeal from small-claims court, or if a Dispute changes so that the small-claims court loses the power to hear it, then the Dispute will be heard only by an Arbitrator.

**Effectiveness of this Clause**. The Clause will remain effective unless all Parties agree otherwise in a writing signed by each Party. The Clause governs if you rescind the transaction. It governs if you default, renew, or satisfy all obligations under this Agreement. It governs if this Agreement, the obligations set forth herein, or amendments to this Agreement are discharged through bankruptcy. The Clause will remain effective, despite this Agreement's and/or a transaction's termination, amendment, expiration, or performance.

**Arbitration Fees and Awards**. We will advance your "Arbitration Fees" to the Arbitrator if you ask us to in writing sent to us via certified U.S. mail prior to arbitration. This includes filing, administrative, hearing, and Arbitrator's fees. You are responsible for paying your attorney fees and other expenses. The Arbitrator may award the same damages as a court. Arbitrators may award reasonable attorney fees, and expenses, if allowed by law. If the Arbitrator awards you funds, you will not have to reimburse us the Arbitration Fees. If the Arbitrator doesn't award you funds, then you must repay the Arbitration Fees we paid on your behalf. If you must pay Arbitration Fees, the amount won't exceed state court costs. If you are successful in arbitration you may receive an Arbitrator's award. A party may request details from the Arbitrator within 14 days of the ruling. Upon such request, the Arbitrator must explain the ruling in writing.

**Other Options**. If you don't want to arbitrate, you have the following options before arbitration commences:
   a. Informal Dispute Resolution. Contact us and attempt to settle any Disputes;
   b. Small-Claims Court. Seek to resolve Disputes in small-claims court, within state law limits; and/or
   c. Opt Out of Arbitration. Sign the Agreement and timely opt out of arbitration.

**How to Opt Out**. If you want to opt out of this Arbitration Clause, send us written notice via email to [INSERT EMAIL ADDRESS] or certified U.S. mail to Fora Financial Advance, LLC, 1385 Broadway, 15th Floor, New York, NY, 10018, Attn: Legal Department of your intent to opt-out of the Arbitration Clause of this Agreement within thirty (30) calendar days of signing this Agreement. State your name, address, account number and date. State that you "opt out." If you opt out, your opt out will only apply to this Agreement.

## 22. CLASS ACTION WAIVER
Seller, Purchaser and each Guarantor acknowledge and agree that the amount at issue in this transaction and any disputes that arise between them are large enough to justify dispute resolution on an individual basis. EACH PARTY HERETO WAIVES ANY RIGHT TO ASSERT ANY CLAIMS AGAINST ANY OTHER PARTY AS A REPRESENTATIVE OR MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION.

Initial Here: #1 [initials] #2 #3 #4

Doc ID: bc46ff58d3a35aed21878aa8b6f1772fb8b04797

## 23. HEADINGS

The headings in this Agreement are for the purpose of reference only and shall not limit or otherwise affect any of the terms and provisions hereof.

## 24. COUNTERPARTS

This Agreement shall be executed in counterparts each of which so executed shall be deemed an original and constitute one and the same Agreement.

## 25. INVALIDITY

If any of the provisions of this Agreement are held invalid, such invalidity shall not affect the other provisions hereof, which can be given effect without the invalid provisions, and for this end the provisions of this Agreement are intended to be and shall be deemed severable.

## 26. CELL PHONE, E-MAIL AND ELECTRONIC TRANSACTIONS

Seller authorizes Purchaser and Purchaser's affiliates, agents and independent contractors to contact Seller at any telephone number Seller provides to Purchaser, using any means of communication, including but not limited to calls or text messages to mobile, cellular, wireless or similar devices or calls or text messages using an automated telephone dialing system and/or artificial voices or prerecorded messages, even if Seller incurs charges for receiving such communications. Purchaser and Purchaser's affiliates, agents and independent contractors, may use any other medium not prohibited by law including, but not limited to, mail, e-mail and facsimile to contact Seller. Seller expressly consents to conduct business by electronic means.

Seller may opt-out of receiving auto dialed or prerecorded calls or texts on Seller's cellular telephone by contacting customer service via phone at (855) 326-8523 or e-mail via CustomerService@ForaFinancial.com. Even if Seller opts out of receiving automated calls or texts on acellular telephone, we may still continue to communicate with Seller by other means.

## 27. ELECTRONIC SIGNATURES

Seller agrees to use electronic records and electronic signatures to document this Agreement. Seller's electronic signatures on electronic records will have the same effect as signatures on paper documents. Purchaser may designate one authoritative copy of this Agreement. If Purchaser does so, the authoritative copy will be the electronic copy in a document management system Purchaser designates for storing authoritative copies. Purchaser may convert the authoritative copy to a paper original, designating as such.

## 28. PAYMENTS TO INDEPENDENT SALES ORGANIZATIONS ("ISOs")

Seller understands that some transactions funded by Purchaser may be originated by third-party ISOs who act as brokers. Purchaser compensates ISOs based on the amount of the advance a referred merchant obtains from Purchaser and, in some cases, the amount paid by the merchant.

Initial Here: #1   #2   #3   #4

Doc ID: bc46ff58d3a35aed21878aa8b6f1772fb8b04797

# EXHIBIT 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DIVISION 5, LLC,

       Plaintiff,

   -v-

FORA FINANCIAL ADVANCE LLC,

       Defendant.

24-CV-6870 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

  Plaintiff Division 5, LLC ("Division 5") brought the present action to enjoin a collection of payments due to Defendant Fora Financial Advance LLC ("Fora") under an allegedly unlawful Merchant Cash Advance ("MCA") contract (the "Agreement"). The Court previously granted a temporary restraining order and preliminary injunction preventing enforcement of the Agreement. *See Div. 5, LLC v. Fora Fin. Advance, LLC*, No. 24-CV-6870, 2024 WL 4663042, at *7 (S.D.N.Y. Nov. 4, 2024). Before the Court now is Fora's motion to compel arbitration and dismiss the complaint. For the reasons that follow, the motion to compel arbitration is granted and the case is stayed pending arbitration.

## I. Background

### A. Factual Background

  This case concerns the enforcement of an MCA agreement executed by Fora and Division 5 in June 2023. The details of the solicitation and negotiation of that agreement, the process of executing it, and Fora's efforts to enforce repayment under it are recounted in the Court's Opinion and Order from November 4, 2024. *See Div. 5*, 2024 WL 4663042, at *1. The parties have not altered their accounts of the underlying facts since the issuance of that Opinion.

Thus, rather than review those facts in depth here, the Court reproduces them as necessary in

Section III below.

The Court's previous Opinion did not, however, discuss the Agreement's arbitration

provisions.  In addition to setting forth the terms and conditions of Division 5's MCA, the

Agreement also contains an arbitration clause that Fora now seeks to enforce.  In relevant part,

that clause reads:

> **<u>Read the terms of this Clause carefully, as it substantially affects your</u>
> <u>rights</u>**. . . . This Clause governs the Purchaser, Seller(s), and any
> Guarantor(s) . . . and third parties related to any Dispute. In this Clause, the word
> "Disputes" has the broadest possible meaning. . . . **You . . . waive the right to:**
> **(1) Have juries resolve Disputes; (2) Have courts, other than small-claims**
> **courts, resolve Disputes; (3) Serve as a private attorney general or in a**
> **representative capacity; and (4) Participate in a class action. UNDER THIS**
> **CLAUSE, COURTS AND ARBITRATORS <u>CANNOT ALLOW CLASS</u>**
> **<u>ACTIONS</u>. You and we <u>waive</u> the right to participate in a <u>class action</u> as a**
> **representative and as a member. Only individual arbitration or small-claims**
> **courts will resolve Disputes. You and we waive the right to have**
> **representative claims. For Sellers and any Guarantors in California, the**
> **foregoing prohibition against class actions shall not apply**. . . . If any portion
> of this Arbitration Clause cannot be enforced, the unenforceable portion will be
> severed and the rest of this Arbitration Clause will continue to apply . . . .

(ECF No. 17-2 ("Agreement") at 11 (emphasis in original).)  The arbitration clause then

continues for another page, outlining additional information about the arbitration process, the

tribunal to be used, and the fees to be levied.  (*Id.* at 11-12.)  In other sections of the Agreement,

there are frequent references to "arbitration as provided in Section 21."  (*See*, *id.* at 8 (§ 6.2(f)), 9

(§§ 7.1, 7.5).)  The Agreement's signature blocks also contain an "acknowledge[ment] that this

Agreement contains Waiver of Jury Trial, Arbitration and Class Action clauses," and that the

signatories "agree to be bound by the Waiver of Jury Trial, Arbitration and Class Action

clauses."  (*Id.* at 3-4.)

In addition to the arbitration provisions in Section 21 of the Agreement, Section 15, entitled "Jurisdiction and Venue," states:

> In the event of a controversy arising out of the interpretation, construction, performance or breach of this Agreement, the parties hereby agree and consent to the sole and exclusive jurisdiction and venue of the federal and state courts in the State of New York, to resolve any and all claims arising out of, relating to or in connection with this agreement or the relationship between the parties . . . .

(*Id.* at 10 (§ 15).)

### B.  Procedural History

Division 5 filed the complaint in this action on September 11, 2024.  (ECF No. 1 ("Compl.").)  On the same day, it filed an emergency motion for a temporary restraining order ("TRO") and preliminary injunction (ECF No. 5), which Fora opposed via letter on September 12 (ECF No. 9).  The Court granted the TRO request (ECF No. 10), and converted its TRO into a preliminary injunction on October 11, 2024 (ECF Nos. 27, 31).

Fora moved to compel arbitration and dismiss the complaint on September 20, 2024 (ECF No. 15), and filed a supporting memorandum of law (ECF No. 16 ("Mem.)).  Division 5 opposed the motion on October 11 (ECF No. 26 ("Opp.")), and Fora replied in support of the motion on October 25 (ECF No. 30 ("Reply")).  On March 5, 2025, the parties each filed a letter reporting on the status of arbitration proceedings that had been commenced by Fora, allegedly without Division 5's consent.  (ECF Nos. 33, 34.)

## II.  Legal Standard

"The FAA provides that an agreement to arbitrate is 'valid, irrevocable, and enforceable.'"  *Arciniaga v. Gen. Motors Corp.*, 460 F.3d 231, 235 (2d Cir. 2006) (quoting 9 U.S.C. § 2.)  "This provision establishes 'liberal federal policy favoring arbitration agreements,'" and "requires courts to enforce agreements to arbitrate according to their terms, . . . even when the claims at issue are federal statutory claims."  *CompuCredit Corp. v. Greenwood*, 565 U.S. 95,

98 (2012). "Having made the bargain to arbitrate, the party should be held to it . . . ." *Arciniaga*,
460 F.3d at 235 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S.
614, 628 (1985)).

     "The threshold question facing any court considering a motion to compel arbitration is
therefore whether the parties have indeed agreed to arbitrate," *Schnabel v. Trilegiant Corp.*, 697
F.3d 110, 118 (2d Cir. 2012), which "is determined by state contract law," *Meyer v. Uber Techs.*,
*Inc.*, 868 F.3d 66, 73 (2d Cir. 2017). If the parties have so agreed, then arbitration is mandatory
unless the "party attempting to avoid arbitration . . . show[s] that Congress intended to preclude a
waiver of a judicial forum." *Arciniaga*, 460 F.3d at 235 (quoting *Gilmer v. Interstate/Johnson
Lane Corp.*, 500 U.S. 20, 24 (1991)).

     If a valid arbitration agreement exists, the "next inquiry is related to the question of
arbitrability, or, in other words, whether an arbitration agreement covers a specific issue."
*Davitashvili v. Grubhub Inc.*, 131 F.4th 109, 117 (2d Cir. 2025). This inquiry proceeds in two
steps. First, the court must ask "whether the court or the arbitrator should be the decision-maker
on the question of arbitrability." *Id.* Second, "if it is for the court to make that determination,"
the court must ask "whether the issues are within the scope of the arbitration agreement and if
the agreement is enforceable." *Id.* While "[t]he FAA provides that the issue of arbitrability
should presumptively be resolved by the courts, . . . [w]hen the parties' contract delegates the
arbitrability question to an arbitrator, the courts must respect the parties' decision . . . unless [the
non-movant] challenged the delegation provision *specifically*." *Id.* at 117-18 (quoting *Henry
Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019) and *Rent-A-Center, W., Inc. v.
Jackson*, 561 U.S. 63, 72 (2010)). Ordinarily arbitration provisions are "severable" from the
remainder of a contract such that unconscionability challenges to the entire agreement go to the

arbitrator, but "where a challenge applies equally to the whole contract and to an arbitration or delegation provision, a court must address that challenge." *Coinbase, Inc. v. Suski*, 602 U.S. 143, 151 (2024) (quotation marks omitted).

Unless the parties consent to dismissal, "the FAA mandate[s] a stay of proceedings when all of the claims in an action have been referred to arbitration." *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015).

## III.    Discussion

In response to Fora's motion to compel arbitration, Division 5 argues that the Arbitration Clause is unenforceable because it conflicts with the forum-selection provision in the same contract.[1] According to Division 5, Section 15 of the Agreement states that "the parties hereby agree and consent to sole and exclusive jurisdiction and venue of the federal and state courts in the State of New York," which contradicts the Agreement's mandate to arbitrate. (*Compare* Agreement at 10 *with* Agreement at 11-12.)  Division 5 argues that this contradiction generates an ambiguity, which must be construed against Fora, the drafter of the Agreement. (Opp. at 10.) Fora responds that Section 15 applies only if the parties voluntarily agree to litigate in court or with respect to litigation ancillary to arbitration, and does not preclude arbitration. (Reply at 9-10.)  Fora also argues that, in any event, "ambiguities as to the scope of the provision would be

---

[1] Division 5 also argues that the motion to compel arbitration is "premature" because it was filed within thirty days of Fora's transmittal of Notice of Intent to Arbitrate, and because Fora had allegedly not tried to first resolve the dispute through good-faith negotiations. (Opp. at 11.)  By now, well over thirty days have passed since Division 5 received Fora's Notice of Intent to Arbitrate, so that first objection is moot.  As to Division 5's argument about "good faith," Fora responds that the Agreement contains no such requirement. (Reply at 11.)  The Court agrees. The phrase "good faith" appears nowhere in the Agreement, and the notice provision in Section 21 of the Agreement requires only that the parties wait thirty days before proceeding to arbitration. (Agreement at 11 (§ 21).)  The only condition precedent is that "the Parties cannot resolve the Dispute within 30 days" (*id.*), not that either party must submit a "good faith offer" to the other (*cf.* Opp. at 11).

properly resolved in favor of arbitration." (Mem. at 4 (quoting *PricewaterhouseCoopers LLP v. Rutlen*, 284 A.D.2d 200, 200 (1st Dept. 2001).)

"General canons of contract construction require that where two seemingly conflicting contract provisions reasonably can be reconciled, a court is required to do so and to give both effect." *Seabury Const. Corp. v. Jeffrey Chain Corp.*, 289 F.3d 63, 69 (2d Cir. 2002) (quotation marks omitted); *see also Israel v. Chabra*, 601 F.3d 57, 62 (2d Cir. 2010) ("[W]hen a . . . clause purportedly conflicts with another clause in a contract, every attempt should be made to harmonize the two provisions using common-law tools of contract interpretation." (quoting *Israel v. Chabra*, 12 N.Y.3d 158, 167 (2009)); *Spinelli v. Nat'l Football League*, 903 F.3d 185, 200 (2d Cir. 2018) (same); *Adstra, LLC v. Kinesso, LLC*, No. 24-CV-2639, 2025 WL 552050, at *12 (S.D.N.Y. Feb. 19, 2025) ("The court must also avoid an interpretation that 'sets up two clauses in conflict with one another.'" (quoting *CITGO Asphalt Ref. Co. v. Frescati Shipping Co., Ltd.*, 589 U.S. 348, 362 (2020)) (ellipsis omitted)). However, "[w]here a contractual term is clear and unambiguous, a court may [not] rewrite the term under the guise of interpretation." *Flack v. Friends of Queen Catherine Inc.*, 139 F. Supp. 2d 526, 536 (S.D.N.Y. 2001).

Here, the Court agrees with Fora that there is a reasonable interpretation of the two clauses that gives them both effect. The Court begins with the Agreement's text. Section 13 locates "sole and exclusive jurisdiction and venue" in "the federal and state courts" of New York. (Agreement at 10.) The relevant question, then, is not whether arbitral forums are courts—they are not—but instead whether locating "jurisdiction" and "venue" in the courts of a particular state precludes the parties from recourse to arbitration. Fora argues that this language guides the choice of particular courts as opposed to other courts, not the selection of courts as opposed to arbitrators. The Court agrees. The relevant entry in the twelfth edition of Black's

Law Dictionary defines "jurisdiction" as "[a] *court's* power to decide a case or issue a decree." *Jurisdiction*, Black's Law Dictionary (12th ed. 2024) (emphasis added).[2]  It defines "venue" as "[t]he proper or a possible *place* for a lawsuit to proceed."  *Venue*, Black's Law Dictionary (12th ed. 2024) (emphasis added).[3]  If jurisdiction is understood as a property of courts, and venue is understood as a reference to geographic place rather than a particular institution or forum, then Section 13 may be interpreted as imposing limitations on the *courts* in which claims arising from the Agreement may be heard—namely, that those courts be in New York.  Nothing about Section 13, so interpreted, prevents the parties from resolving their claims before non-court entities, like an arbitral tribunal.

In practical terms, this interpretation gives meaningful effect to both clauses.  The arbitration clause has effect insofar as it compels adjudication in the first instance before arbitrators.  The venue-selection clause, meanwhile, has effect because "no matter how broad the arbitration clause, it may be necessary to file an action in court to enforce an arbitration agreement, or to obtain a judgment enforcing an arbitration award, and the parties may need to invoke the jurisdiction of a court to obtain other remedies."  *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016) (cleaned up); *cf. Vaden v. Discover Bank*, 556 U.S. 49, 53

---

[2] *See also Jurisdiction,* American Heritage Dictionary (5th ed. 2011) ("The right of a court to hear a particular case, based on the scope of its authority over the type of case and the parties to the case."); *but see Jurisdiction*, Webster's Third New International Dictionary of the English Language Unabridged (3d ed. 2002) (defining "jurisdiction" without reference to courts: "the legal power, right, or authority to hear and determine a cause considered either in general or with reference to a particular matter").

[3] *See also Venue*, American Heritage Dictionary (5th ed. 2011) ("The court where a lawsuit may or should be tried, usually because the cause of action arose in that locality." (first legal definition)); *Venue,* Webster's Third New International Dictionary of the English Language Unabridged (3d ed. 2002) ("(1): a place (as a county) in which alleged events from which a legal action arises take place (2): the place from which the jury is drawn and in which trial is held in such an action" (legal definition)).

(2009) (discussing when petitions to compel arbitration may be brought in district courts).

Considering a similar situation, the Ninth Circuit reached the same conclusion. *Mohamed*, 848

F.3d at 1209. As in that case, it is at least reasonable to believe "that the venue provision here

was intended for these purposes, and to identify the venue for any other claims that were not

covered by the arbitration agreement. That does not conflict with or undermine the agreement's

unambiguous statement identifying arbitrable claims and arguments." *Id.*[4] A number of lower

courts have similarly reconciled broad forum-selection clauses with mandatory arbitration

clauses. *See Mumin v. Uber Techs., Inc.*, 239 F. Supp. 3d 507, 523 (E.D.N.Y. 2017) ("[T]he

court . . . agree[s] with the Ninth Circuit that the Arbitration Provision is consistent with the

'exclusive jurisdiction' language of the forum selection clause."); *Sena v. Uber Techs. Inc.*, No.

CV-15-2418, 2016 WL 1376445, at *4 (D. Ariz. Apr. 7, 2016) (similar); *Rimel v. Uber Techs.,*

*Inc.*, 246 F. Supp. 3d 1317, 1325 (M.D. Fla. 2017) ("Courts examining identical or substantially

similar Service Agreements have consistently reached the same conclusion.").[5]

---

[4] Because Uber at one point drafted contracts with similar forum-selection clauses, there has been extensive litigation in courts around the country concerning this issue, though most of the cases have arisen in California.

[5] Other courts have reached similar conclusions via slightly different reasoning. For example, some courts have distinguished clauses based on the fact that they use narrower words like "legal suit, action, or proceeding" instead of broader words like "dispute, controversy, or claim." *See, e.g.*, *Roma Mikha, Inc. v. S. Glazer's Wine & Spirits, LLC*, No. 22-CV-1187, 2023 WL 3150076, at *6 (C.D. Cal. Mar. 30, 2023). That approach is inapplicable here, as both the forum-selection clause and arbitration clause use equally broad terminology to define their respective scopes. Other courts have relied on the existence of an opt-out provision within the arbitration clause, *see, e.g.*, *Micheletti v. Uber Techs., Inc.*, 213 F. Supp. 3d 839, 846 (W.D. Tex. 2016), or have construed forum-selection clauses instead as personal jurisdiction waivers, *see, e.g., Child Dimensions Ins. Co. v. Lexington Ins. Co.*, No. 09-CV-670, 2009 WL 10688226, at *2-3 (N.D. Ohio July 16, 2009). The common thread is that these courts have construed forum-selection clauses as limited when accompanied in the same contract by a broad, exclusive, mandatory arbitration provision.

Division 5's arguments to the contrary are unavailing.  First, Division 5 points out that the forum-selection clause here uses broad language in defining its scope.  (Opp. at 7-8.)  The clause applies to all "controvers[ies] arising out of . . . [the] Agreement," and to "any and all claims arising out of . . . [the] [A]greement or the relationship between the parties."  (Agreement at 10.)  This is irrelevant, though, because the clause only imposes limits on "jurisdiction" and "venue" with respect to those controversies and claims.  As explained above, it is reasonable to interpret this language as allowing arbitration.

Second, Division 5 invokes a line of cases in which courts have declined to compel arbitration based on subsequently executed forum-selection clauses.  *See, e.g.*, *Applied Energetics, Inc. v. NewOak Cap. Mkts., LLC*, 645 F.3d 522, 526 (2d Cir. 2011); *see also Suski v. Coinbase, Inc.*, 55 F.4th 1227, 1231 (9th Cir. 2022), *aff'd on other grounds*, 602 U.S. 143 (2024); *Goldman, Sachs & Co. v. Golden Empire Schs. Fin. Auth.*, 764 F.3d 210, 217 (2d Cir. 2014) (conflict between a contract and FINRA rules); *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 743 (9th Cir. 2014) (same).  *But see UBS Fin. Servs., Inc. v. Carilion Clinic*, 706 F.3d 319, 329 (4th Cir. 2013) (interpreting the conflict with FINRA rules as a matter of waiver and finding none); *Reading Health Sys. v. Bear Stearns & Co.*, 900 F.3d 87, 102-3 (3d Cir. 2018) (same).

Crucially, these cases all involved multiple contracts, with the forum-selection provisions executed later in time than the arbitration provisions.  They did not involve putatively conflicting provisions in the same contract.  In multiple-contract cases, courts have applied the principle that the later-in-time contract "supersedes the [earlier-in-time] arbitration clause," rather than attempting to harmonize apparently conflicting terms so as to give them all effect.  *See Suski*, 55 F.4th at 1231 (distinguishing a multiple-contracts case from *Mohamed*, 848 F.3d at 1209).  Were

there two separate contracts here, the Court would be free to choose the best interpretation of each, even if the result were to nullify aspects of the earlier-in-time contract. Where there is only one contract, however, reasonable efforts must be made to reconcile conflicting provisions.

Most of the cases invalidating earlier-in-time arbitration provisions also involved forum selection clauses that, unlike the one here, "specifically preclude[d] arbitration." *Applied Energetics*, 645 F.3d at 526 (quotation marks omitted). For example, the forum-selection clause in *Applied Energetics* stated that disputes "shall be adjudicated in the Supreme Court, New York County or in the federal district court for the Southern District of New York," while the arbitration agreement stated that "any dispute . . . shall be resolved through binding arbitration." *Id.* at 523. The court therefore determined that "[b]oth provisions are all-inclusive, both are mandatory, and neither admits the possibility of the other." *Id.* at 525. In doing so, the court relied on the mandatory nature of "shall" and the fact that "adjudicated" "is a clear and unmistakable reference to judicial action." *Id.* at 525. Neither of those words is present in the contract here. Most of the other, similar cases involve similarly unambiguous language. *See, e.g.*, *Golden Empire Schs. Fin. Auth.*, 764 F.3d at 211 ("all actions and proceedings . . . shall be brought in the United States District Court in the County of New York"); *UBS Fin. Servs*, 706 F.3d at 328 (same "shall be brought" language); *City of Reno*, 747 F.3d at 736 (same "shall be brought" language).[6]

---

[6] A notable outlier is *Suski*, in which the Ninth Circuit invalidated an earlier-in-time arbitration clause based on "exclusive jurisdiction" language similar to the language here. *Suski*, 55 F.4th at 1231. However, *Suski* still did not involve a singular contract. *Id.* Thus, while *Suski* may be persuasive as to the *best* interpretation of the language in this case, it does not rule out other, reasonable interpretations. To the contrary, the Ninth Circuit did enforce an arbitration provision in *Mohamed* based on the fact that the purportedly conflicting provisions were contained in the same contract. *See Mohamed*, 848 F.3d at 1209.

The Court agrees with Division 5 that the forum-selection clause here is unlike the one in *Bank Julius*, which explicitly allowed the parties' "to bring an[] action or proceeding . . . in the courts of other jurisdictions," and was therefore not preclusive of arbitration. *Cf. Bank Julius Baer & Co. v. Waxfield Ltd.*, 424 F.3d 278, 282 (2d Cir. 2005). However, the forum-selection clause here need not be as permissive as that one for the Court to reconcile it with the arbitration provision, given that they are in the same contract.

Finally, Fora argues that the Court should apply an overarching presumption in favor of arbitration pursuant to the FAA. The Second Circuit rejected precisely that argument in *Applied Energetics*, explaining that such a presumption applies only "where a validly formed and enforceable arbitration agreement is ambiguous about whether it covers the dispute at hand." 645 F.3d at 526 (quoting *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287 (2010)); *see also Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022) ("[T]he FAA's 'policy favoring arbitration' does not authorize federal courts to invent special, arbitration-preferring procedural rules."). "[W]hile doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration, the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made." *Applied Energetics*, 645 F.3d at 526. In any event, as explained above, the Court need not rely on a presumption in favor of arbitration in order to reconcile the forum-selection and arbitration clauses here.

Because the Court is compelling arbitration of Division 5's claims, it does not reach Fora's substantive arguments in favor of dismissal. The Court's previously ordered preliminary injunction shall remain in effect until such a time as it is modified or vacated by this Court or by a duly appointed arbitrator.

IV.     **Conclusion**

For the foregoing reasons, Fora's motion to compel arbitration is GRANTED.  This

action is hereby STAYED pending arbitration.

The Clerk of Court is directed to close the motion at Docket Number 15 and to mark this

case as stayed.

SO ORDERED.

Dated:  May 30, 2025
       New York, New York

_____
                        J. PAUL OETKEN
                  United States District Judge

# EXHIBIT 4

**jnesq@jenesqlaw.com**

---

| | |
|---|---|
| **From:** | AAA Dina Pariseau <DinaPariseau@adr.org> |
| **Sent:** | Friday, May 30, 2025 4:43 PM |
| **To:** | cmurray@murraylegalpllc.com; jnesq@jenesqlaw.com |
| **Subject:** | Fora Financial Warehouse, LLC v. Division 5, LLC and Conrad Barker - Case 01-24-0008-1982 |

Good afternoon Counsel,
Please see the below from Arbitrator Luttati, received this afternoon:

*"1.    Claimants' Request to Vacate/ Dissolve the Preliminary Injunction and any comments Respondents may submit in response thereto by June 6, 2025 will be decided as part of the Award following the hearings in this matter.*

*2.    No other motions are to be filed in this matter without my permission that do not comply with paragraph 6 of the Preliminary Hearing & Scheduling Order #1."*

Thank you,
*Dina*




**AAA Dina Pariseau**
Case Administrator III

American Arbitration Association
1301 Atwood Ave, Suite 211N, Johnston, RI 02919
**T:** 401 406 2293 **E:** DinaPariseau@adr.org
adr.org | icdr.org | aaaicdrfoundation.org

The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, discl distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immedia reply email and destroy all copies of the transmittal. Thank you.